

1   MATLOCK LAW GROUP, PC
2   Anne-Leith Matlock (SBN 244351)
    50 California St. Suite 1500
3   San Francisco, CA 94111
    Telephone: (415)-277-5499
4            (925) 944-7131
    Facsimile:  (925) 938-4625
5
    Attorneys for Plaintiff:
6   THE TONYTAIL COMPANY, INC.

7

8
                **UNITED STATES DISTRICT COURT**
9
                **NORTHERN DISTRICT OF CALIFORNIA**
10

11

12  THE TONYTAIL COMPANY, INC.          **CASE NO.**
    a Delaware Corporation,
13                                       **COMPLAINT FOR:**
                   Plaintiff,
14                                       1. **PATENT INFRINGEMENT OF 'D693**
            v.                           2. **PATENT INFRINGEMENT OF 'D239**
15                                       3. **INDUCED PATENT INFRINGEMENT**
                                         4. **TRADEMARK INFRINGEMENT**
16  CONAIR, a Delaware Corporation;      5. **VIOLATION OF FEDERAL LANHAM**
    SCUNCI INTL., Ltd., a Delaware          **ACT, FALSE DESIGNATION OF**
17  Corporation; RITE AID, a Delaware       **ORIGIN**
    Corporation; L&N Sales & Marketing,  6. **UNFAIR BUSINESS PRACTICES**
18  Inc., a Pennsylvania Corporation and    **CA B&P §§ 17200 *et. seq.***
    DOES 1-10, inclusive,                7. **UNFAIR BUSINESS COMPETITION**
19                                       8. **INJURY TO BUSINESS REPUTATION**
                                         9. **COMMON LAW TRADE MARK**
20                                          **DILUTION**
                   Defendants.
21                                       **DEMAND FOR JURY TRIAL**

22

23

24
        Plaintiff THE TONYTAIL COMPANY, INC (hereinafter "Plaintiff") by its attorneys,
25
    as and for their Complaint against Defendants CONAIR, SCUNCI INTL., LTD., RITE AID,
26
    L&N SALES & MARKETING, and DOES 1-10 (hereinafter "Defendants") allege as follows:
27

28
                                            1
    COMPLAINT FOR PATENT INFRINGEMENT                              CASE NO.

1

**JURISDICTION AND VENUE**

2    1.    This is a complaint for Patent Infringement, Induced Patent Infringement,

3    Violation of Federal Lanham Act Trademark Infringement and False Designation of Origin.

4    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §

5    1338(a) and 15 U.S.C. § 1121. This Court has related claim jurisdiction over the state law claim

6    pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

7    2.    This is a complaint for Unfair Competition (B & P §§17200 et. seq.), Unfair

8    Business Competition (common law), Injury to Business Reputation, and Common Law

9    Trademark Dilution.

10    3.    This Court has personal jurisdiction over the defendant corporations, because

11    the defendants reside in, have a principal place of business in, and/or engage in commercial

12    transactions sufficient to constitute minimum contacts within the State of California.

13    4.    This Court has original subject matter jurisdiction over this action pursuant to 28

14    U.S.C. § 1338(a) and 15 U.S.C. § 1121. This Court has related claim jurisdiction over the state

15    law claim pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

16    5.    Venue is proper in this district under 28 U.S.C. § 1391(c) because a substantial

17    part of the events or omissions giving rise to the claims occurred in this district, a substantial

18    part of the property that is the subject of the action is situated in this district, and the defendants

19    otherwise have sufficient contacts within this district.

20

21

**PARTIES**

22    6.    Plaintiff is a Delaware corporation with a principal place of business in San

23    Ramon, County of Contra Costa, and State of California.

24    7.    Defendant Rite Aid, is a Delaware corporation with its principal place of

25    business in Camp Hill, Pennsylvania. Rite Aid is registered to conduct business in the State of

26    California, with multiple places of business within the Northern District of California.

27

28

2

8.      Defendant ConAir Corporation is a Delaware corporation licensed to do business in California. In March 2005 it bought or otherwise acquired the assets and liabilities of Scunci, the "Hair Accessories" Division of L & N Sales and Marketing, Inc.

9.      Defendant L & N Sales and Marketing, Inc. was, at all relevant times, a Pennsylvania corporation having its principal place of business at 2200 Byberry Road, Hatboro, Pennsylvania 19040 (hereinafter "L&N").

10.     Scunci International, Ltd., is a domestic entity incorporated in Delaware since July 22, 1994. It was a subsidiary of L&N until it was acquired by Conair in March 2005. Currently, Scunci is a division of Defendant Conair. The owners and/or principals of Scunci, the "Hair Accessories" Division of L&N are and continue to be the current owners and/or principals, agents or employees of Scunci, a division of Conair.

11.     Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive. Plaintiff will amend this complaint to substitute their true names and capacities when ascertained. Plaintiff is informed and believes that at all times referred to herein, each of the fictitiously named Defendants was the agent and/or employee of one of the remaining Defendants and was, in doing the things herein alleged, acting within the scope of said agency or employment.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     In or about the fall of 1997, Mia Minnelli founded The Tonytail Company, Inc. and its hair product accessory line. Minnelli, is the sole shareholder of The Tonytail Company, Inc., being one of the few female CEOs in a male-dominated industry with a mainly female target consumer group.

13.     On or about May 27, 1998, Plaintiff filed an application for a United States Patent, Application No. 29/088,568.

14. On or about September 7, 1999, a United States Patent was issued on the above-mentioned application, bearing the designation Des. 413,693, described as "Hair Ponytail Band." (See Exhibit "A" attached hereto.)

15. On or about January 30, 2001, Plaintiff filed an application for a United States Patent, Application No. 29/136,364.

16. On or about January 29, 2002, a United States Patent was issued, bearing the designation U.S. D453,239 S, described as "Ponytail Holder." (See Exhibit "B" attached hereto.)

17. On July 24, 2001, U.S. Patent No. 6,263,884 B1 was duly and legally issued by the United States Patent and Trademark Office after having been examined according to law. (See Exhibit C, attached hereto.)

18. At various times after January 29, 2002, principals, agents, and/or employees of defendant L & N through sources such as Plaintiff's website, came into possession of information regarding the design and construction of at least one of Plaintiff's devices, resulting in the manufacture by defendant L&N of products substantially similar to plaintiff's patented device.

19. On September 17, 2002, Plaintiff obtained a trademark with the trademark registration number 2,621,904 for its word mark "Tonytail". Plaintiff's fictitious business name was registered with the Secretary of State of California.

20. On or about March 31, 2003, defendant L&N Sales and Marketing, Inc. (dba Scunci, "L&N", "Scunci"), agreed to cease and desist from making and selling the above mentioned products and signed an agreement to that effect. Thus, Defendants had notice and knowledge of Plaintiff's Patent No. U.S. 6,263,884 B1, U.S. Design Patent No. D453,239, U.S. Design Patent No. D453,053, registered trademark "Tonytail®", unregistered product trade dress and trademark from at least March 31, 2003.

21. At some time after March 31, 2003, Defendant Scunci produced other ponytail holders for sale at various retail locations.

4

1    22.    The Scunci Ponytail Holder, for example item 28398-A", is substantially similar
2    to Plaintiff's ponytail holder device, which is the subject of U.S. Patent No. D453,239 and No.
3    Des. 413,693 because it includes ornamental features that would induce a consumer to purchase
4    Defendant's products believing them to be Plaintiff's patented design.  The manufacture, sale,
5    offer for sale, and use of the Scunci ponytailers and ponytail holders also induce infringement
6    of one or more claims of Plaintiff's U.S. Patent No. U.S. 6,263,884 B1 that includes each and
7    every limitation found in the one or more claims of Plaintiff's '884 patent.

8    23.    At various times after March 31, 2003, and continuing to the present,
9    Defendants manufactured and sold additional products such as the "Scunci Ponytail Holder",
10   and these devices were displayed and sold by defendant Rite Aid in one or more of its multiple
11   retail outlets in California, and specifically in the Northern District of California.

12   24.    At the National Association of Chain Drug Stores (NACDS) tradeshow in June
13   2004, where The Tonytail Company, Inc. presented these products, Mia Minnelli met with
14   other mass chain retailers who expressed high interest in the Tonytail product.    Also
15   immediately after this June 2004 NACDS tradeshow, The Tonytail Company, Inc. entered into
16   an oral supply agreement with Rite Aid.

17   25.    The Scunci infringing products were offered at Rite Aid stores commingled on
18   shelves and other forms of display with Tonytail and other Scunci products. The hooks bore the
19   Scunci name displaying Tonytail products and vice versa.

20   26.    ConAir/Scunci influenced other potential commercial consumers to abandon
21   their negotiations with Tonytail. ConAir/Scunci knowingly and intentionally influenced buyers
22   to sell defendants' infringing products, and also to not do business with Plaintiff in order to
23   preserve Defendant's predominance in these retail stores. Defendant knew or should have
24   known that retailers would reject Tonytail's competing product. At meetings with multiple
25   potential customers Tonytail was then, in fact, turned down.

26
27
28

1

## FIRST CAUSE OF ACTION

2

### (Patent Infringement as to U.S. Patent D 413,693 -- Title 35 U.S.C. §281)

3

4

Plaintiff hereby incorporates the allegations of paragraphs 1 through 26 above if fully set forth herein.

5

6

7

8

27.    Upon information and belief, in violation of 35 U.S.C. §§ 281, 282, and/or 284 Defendants have infringed directly and/or indirectly and still continue to infringe,U.S. Patent D 413,693 (hereinafter "the 'D693 patent") by practicing the claim of the 'D693 in manufacture, use, offering or sale, and/or importation and exportation of the "Hair Ponytail Band."

9

10

11

12

13

28.    On September 7, 1999, Patent No. D 413,693 was duly and legally issued by the United States Patent and Trademark Office after having been examined according to law. Said patent was issued for the ornamental design for a hair ponytail band, as shown and described. A true and correct copy of the patent is attached hereto as Exhibit "A" and incorporated by reference.

14

29.    Plaintiff is the owner by assignment of the 'D693 patent.

15

16

17

18

30.    During the term of the D413,693 patent, Defendants have had notice of the D413,693 patent and thus became aware of the patent and its direct application to the Scunci Ponytailer infringing product line, but failed to comply with the duty of care to avoid infringement.

19

31.    The "Hair Ponytail Band" is Plaintiff's product that embodies the 'D693 Patent.

20

21

22

23

32.    Upon information and belief, Defendants have sold and/or offered to sell infringing devices falling within the scope of the claim of the 'D693 Patent in violation of Plaintiff's rights, thereby infringing the 'D693 Patent. Such infringing products include devices being sold by the defendants using the mark "Scunci" and such as the "Ponytailer" product line.

24

25

26

27

33.    Upon information and belief, Defendants and their successors in interest have had and continue to have notice of the existence of the 'D693 Patent due to its previously executed 2003 settlement and license agreement with Plaintiff, and despite such notice continue to willfully, wantonly and deliberately engage in acts of infringement as that term is defined in

28

6

COMPLAINT FOR PATENT INFRINGEMENT                                                                    CASE NO.

1  Title 35 U.S.C. §281, without regard to the 'D693, and will continue to do so unless otherwise
2  enjoined by this court.

3      34.    Plaintiff has been and will continue to be damaged by the infringing conduct of
4  Defendants in an amount to be established upon proper proof at trial.

5      35.    Upon information and belief, Defendants have, since at least as early as 2007,
6  used, offered for sale and sold a ponytail holder infringing product covered by the claims of the
7  'D693 Patent under 35 U.S.C. §281.

8      36.    Upon information and belief, the defendants have used, offered for sale and sold
9  a ponytail holder infringing product substantially similar in ornamental appearance and
10 misappropriating the 'D693 Patent's point of novelty.

11     37.    Upon information and belief, the infringing devices were manufactured in whole
12 or in part by Scunci, Intl., Ltd., a corporation that was previously controlled and wholly owned
13 by defendant L&N Sales & Marketing, Inc., and presently controlled and wholly owned by
14 Defendant Conair, Inc.

15     38.    Upon information and belief, Scunci's infringing products have been distributed
16 to defendant Rite Aid, by defendants' agents and/or employees or persons or companies with
17 which defendants Conair/Scunci have a contractual relationship for the purpose of distributing
18 the infringing products. Scunci infringing products have been entered into commerce and have
19 been offered for sale and sold by Defendants and/or their affiliates in California and within this
20 judicial district.

21

22                              **SECOND CAUSE OF ACTION**

23      **(Patent Infringement as to U.S. Patent D 453,239 S – Title 35 U.S.C. §281)**

24     39.    Plaintiff hereby incorporates the allegations of paragraphs 1 through 38 above as
25 though fully set forth herein.

26     40.    Upon information and belief, in violation of 35 U.S.C. §281, Defendants have
27 infringed directly and/or indirectly and still continue to infringe, U.S. Patent D 452,239 S

28

7

1 (hereinafter "the 'D239 patent") by practicing the claims of the 'D239 in manufacture, use,

2 offering for sale, sale and/or importation and exportation of the "Ponytail Holder."

3     41.     On January 29, 2002, Patent No. D453, 239 S was duly and legally issued by the

4 United States Patent and Trademark Office after having been examined according to law. Said

5 patent was issued for the ornamental design for a hair ponytail band, as shown and described.

6 A true and correct copy of 'D239 the patent is attached hereto as Exhibit B and incorporated by

7 reference.

8     42.     "Hair Ponytail Holder" is Plaintiff's device that embodies the 'D239 Patent.

9     43.     Upon information and belief, Defendants have sold and/or offered to sell

10 infringing devices falling within the scope of the claims of the 'D239 Patent in violation of

11 Plaintiff's rights, thereby infringing the 'D239 Patent. Such infringing devices include

12 infringing devices being sold by the defendants using the mark "Scunci" and such as

13 "Ponytailer" product line.

14     44.     Upon information and belief, Defendants have had and continue to have notice

15 of the existence of the 'D239 Patent and despite such notice continue to willfully, wantonly and

16 deliberately engage in acts of infringement as that term is defined in Title 35 U.S.C. §271 (a),

17 271(b), and/or 271(c), without regard to the 'D239, and will continue to do so unless otherwise

18 enjoined by this court.

19     45.     Plaintiff has been and will continue to be damaged by the infringing conduct of

20 Defendants in an amount to be established upon proper proof at trial.

21     46.     Upon information and belief, Defendants have, since at least as early as 2007,

22 used, offered for sale and sold a ponytail holder infringing product covered by the claim of the

23 'D239 Patent under 35 U.S.C. §281.

24     47.     Upon information and belief, the defendants have used, offered for sale and sold

25 a ponytail holder infringing products substantially similar in ornamental appearance and with

26 features that misappropriate the 'D239 Patent's point of novelty.

27

28

1    48.    Upon information and belief, the infringing product was manufactured in whole

2    or in part by Scunci, Intl., Ltd., a corporation that was previously controlled and wholly owned

3    by defendant L&N Sales & Marketing, Inc, and presently controlled and wholly owned by

4    Defendant Conair, Inc.

5    49.    Upon information and belief, the Scunci infringing device has been distributed

6    to defendant Rite Aid by defendants' agents and/or employees or persons or companies with

7    which defendants Conair and Scunci have a contractual relationship for the purposes of

8    infringing device distribution. The Scunci infringing device has been entered into commerce

9    and has been offered for sale and sold by Defendants and/or their affiliates in California and

10    within this judicial district.

11    **THIRD CAUSE OF ACTION**

12    **(Induced Patent Infringement Under 35 U.S.C. § 271)**

13    50. Plaintiff incorporates the allegations of paragraphs 1 through 49 above as though

14    fully set forth herein.

15    51.    Upon information and belief, in violation of 35 U.S.C. §§271(a), 271(b), and/or

16    271(c), Defendant DOES 1-10 have infringed directly and continue to infringe the U.S. Patent

17    No. 6,263,884 B1 (hereinafter the '884 patent) by practicing one or more of the claims of the

18    '884 patent in consumer use of infringing product Ponytailer product line, including but not

19    limited to the "Scunci Ponytailer."

20    52.    Upon information and belief, in violation of 35 U.S.C. §§271 (a), 271(b), and/or

21    271(c), Defendants have infringed directly and/or indirectly and continue to infringe, the '884

22    utility patent by practicing one or more of the claims of the '884 patent in manufacture, use,

23    offering or sale, and/or importation and exportation of the infringing product Ponytailer product

24    line, including but not limited to the "Scunci Ponytailer."

25    53.    Upon information and belief and in violation of 35 U.S.C. §271, Defendants

26    have infringed and are continuing to infringe the '884 utility patent by actively inducing the

27    infringement by others of the '884 patent through the manufacture, use, offering for sale, sale

28

9

1   and/or importation and exportation of the infringing product Ponytailer product line, including

2   but not limited to the "Scunci Ponytailer."

3       54.     Plaintiff is the owner by assignment of the '884 utility patent.

4       55.     Plaintiff's '884 utility patent was duly and validly issued by the United States

5   Patent and Trademark office after having been examined according to law.

6       56.     Upon information and belief, Defendants have willfully infringed the '884

7   utility patent.

8       57.     Upon information and belief, Defendants' acts of infringement of the '884 utility

9   patent will continue after service of this complaint unless enjoined by the court.

10      58.     As a result of Defendants' infringements, Plaintiff has suffered and will suffer

11  damages.

12      59.     Plaintiff is entitled to recover from Defendants the damages sustained by

13  Plaintiff as a result of Defendants' wrongful acts in an amount to prove at trial.

14      60.     Unless Defendant is enjoined by this court from continuing its infringement of

15  the '884 utility patent, Plaintiff will suffer additional harm and impairment of the value of its

16  patent rights. Thus, Plaintiff is entitled to a preliminary and permanent injunction against

17  further infringements.

18      61.     Upon information and belief, Defendants, by their manufacture and sale of the

19  Scunci infringing products, have offered said infringing devices for sale to the general public

20  and into the stream of commerce, for their use in practicing the process patented by Plaintiff,

21  constituting a material part of plaintiff's invention.

22      62.     Upon information and belief, Defendants were not authorized to make, sell or

23  distribute any infringing devices which fall within one or more claims of the '884 utility patent.

24      63.     Upon information and belief, Defendants and its successors in interest have had

25  and continue to have notice of the existence of the '884 Patent due to its previously executed

26  2003 settlement and license agreement with Plaintiff and despite such notice continue to

27  willfully, wantonly and deliberately engage in acts of infringement as that term is defined in

28

1  Title 35 U.S.C. §281, without regard to the '884, and will continue to do so unless otherwise

2  enjoined by this court

3

4  ## FOURTH CAUSE OF ACTION

5  ### (Trademark Infringement)

6  64. Plaintiff hereby incorporates the allegations of paragraphs 1 through 63 above as

7  though fully set forth herein.

8  65.    Plaintiff is the owner of the registered mark "Tonytail®".

9  66.    Upon information and belief, Defendants have displayed for sale its Scunci

10 Ponytail Holder in commerce in a retail display location labeled for Plaintiff's registered mark

11 product, thereby creating consumer confusion with Plaintiff's mark. The use of "Tonytail®"

12 mark  on sales display materials to offer for sale the Scunci "Ponytailer or Ponytail Holder"

13 causes substantial consumer confusion in commerce.

14 67.    The use of the sales display materials labeled "Tonytail®" by defendants in

15 commerce is likely to cause confusion as to the source, origin or sponsorship of the infringing

16 device, inducing consumers to purchase such a device believing it to be Plaintiff's products

17 protected by its registered mark.

18 68     Upon information and belief, Defendants intended to cause confusion as to the

19 source, origin, or sponsorship of the Plaintiff's device by selling its "Ponytailer" marked goods

20 on the same retail hook as Plaintiff's marked goods and unfairly under the same trademark

21 name as Plaintiff's marked goods.

22 69.    Defendants' use in commerce of the name "Tonytail®" infringes Plaintiff's

23 registered trademark "Tonytail" and is in violation of the Title 15, U.S.C. § 1114.

24 ## FIFTH CAUSE OF ACTION

25 ### (Violation of Federal Lanham Act; False Designation of Origin

26 ### Under 15 U.S.C. §1125)

27

28

11

1    70. Plaintiff hereby incorporates the allegations of paragraphs 1 through 69 above as
2  though fully set forth herein.

3    71.    Defendants infringing product designs unfairly originated from Plaintiff's
4  protected trade dress product design.

5    72.    Upon information and belief, Defendants have falsely designated the origin of
6  the Ponytailer infringing product line design to be confusingly similar to Plaintiff's
7  "Tonytail®" protected trade dress device design.

8    73.    Defendants have passed off Plaintiff's design trade dress as its own and
9  misappropriated Plaintiff's intellectual property rights as a result of its sale of the Ponytailer
10  infringing product line design when it had reason to know that such infringing device design
11  was the unregistered design trade dress of Plaintiff. In its efforts to solicit purchasers for the
12  sale of said infringing device design, Defendants have willfully committed a false designation
13  of origin with respect to Plaintiff's intellectual property in the form of Plaintiff's unregistered
14  design trade dress, the Tonytail®, thereby causing substantial consumer confusion.

15    74.    Said false designation of origin was and is without the consent, either explicit or
16  implied, of Plaintiff.

17    75.    The product design trade dress Tonytail® ponytail wrap has been the subject of
18  substantial efforts to acquire and maintain its distinctiveness, including infringing devices
19  design patents D 413,693, D 453,239 and the subsequent infringing device design trade dress
20  embodied in the overall look and appearance of Plaintiff's protected device.

21    76.    The infringing device design of Defendant's Scunci Ponytailer device line and
22  its false designation by Defendants caused by selling Scunci products on the "Tonytail" retail
23  hooks is likely to cause consumer confusion.

24    77.    The product design trade dress Tonytail ponytail wrap has been the subject of
25  substantial efforts to acquire and maintain its distinctive product design, including product
26  design patents 'D693 and 'D239 and the subsequent infringing device design trade dress
27  embodied in the overall look and appearance of Plaintiff's protected device.

28

COMPLAINT FOR PATENT INFRINGEMENT                                              12                                              CASE NO.

78. Defendants' use of the "Tonytail" trade dress device design is in violation of Title 15 U.S.C. § 1125(a).

79. Defendants' misappropriation and unfair use of the protected device design trade dress in interstate commerce was a commercial use of the mark within the meaning of the statute. Further, the Defendants' bad faith use by unfairly passing off its Ponytailer infringing device design to confused consumers prevented them from being able to buy the true "Tonytail". Such use by Defendants was not approved by Plaintiff and as part of Plaintiff's protected product design trade dress, constitutes a false designation of origin for the misappropriation of Plaintiff's rights. As a direct result of Defendants' attempt at passing off Plaintiff's property as its own and therefore is actionable under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants have acted recklessly, willfully and purposefully with the intention of misleading the public into believing that it owned all of the rights to Plaintiff's protected product design trade dress, which has resulted in substantial consumer confusion and significant lost revenue and profits for the Plaintiff.

81. Defendants and their successors in interest have had and continue to have notice of the existence of the device design trade dress due to its previously executed 2003 settlement and license agreement with Plaintiff for its 'D453,239 design patent and despite such notice continue to willfully, wantonly and deliberately engage in acts of infringement as that term is defined under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), without regard to the 'D453,239 protected device design and the corresponding device design trade dress, and will continue to do so unless otherwise enjoined by this court

82. Defendants' misappropriation and false designation of origin of Plaintiff's unregistered device design trade dress intellectual property as Defendants' own was, and is, willful, reckless and outrageous because of Defendants' purposeful motive and reckless indifference to the rights of Plaintiff.

13

1    83.    Plaintiff has been and will continue to be damaged by Defendants' false
2    designation of origin.

3    **PERMANENT INJUNCTION – 35 U.S.C. §283**

4    84.    Plaintiff hereby incorporates the allegations of paragraphs 1 through 83 above as
5    though fully set forth herein.

6    85.    In addition to monetary damages, Plaintiff seeks a permanent injunction to
7    prevent Defendants from continued infringement of Plaintiff's patents, trademark and trade
8    dress product design.

9    86.    Because of Defendants' infringement, Plaintiffs have been, and will continue to
10   suffer irreparable injury, for which the remedies available at law provide inadequate
11   compensation.  Defendants' infringement thus warrants a remedy in equity and such remedy
12   will not disserve public interest.

13   87    Unless enjoined, Defendants will continue to infringe and induce infringement
14   of the 'D693 Patent, 'D239 Patent, '884 Patent, registered trademark "Tonytail" and trade dress
15   product design.

16   88.    Based on the foregoing and on Plaintiff's valid and enforceable patent rights,
17   Plaintiff has a reasonable likelihood of succeeding on the merits.

18   89.    Plaintiff owns all rights to the manufacture, marketing and distribution of
19   products which fall within the scope of its patents.  Therefore, continued infringement will
20   cause irreparable harm to Plaintiff, if a permanent injunction is not granted.

21   90.    Plaintiff's business and business income is predicated on its exclusive rights to
22   manufacture market and distribute products which fall within the scope of its patents. Whereas
23   Defendants' business interests encompass a wider variety of products and/or practices, they
24   have wider sources of income.

25   91.    Based on the foregoing, Plaintiff readily satisfies the burden of a permanent
26   injunction.

27   **SIXTH CAUSE OF ACTION**

28

14

**(Unfair Competition -- B&P §§17200 *et. seq.*)**

92. Plaintiff hereby incorporates the allegations of paragraphs 1 through 91 above as though fully set forth herein.

93.    Defendants Conair/Scunci and Rite Aid knowingly and intentionally produced and marketed hair accessories that unfairly were confusingly similar to Plaintiff's "Tonytail" product design trade dress.

94.    Defendants Conair/Scunci knowingly and intentionally produced and marketed hair accessories that fell within the scope of patent protections secured by Plaintiff. The substantial similarity of the Scunci/Conair infringing products constitutes a violation of Plaintiff's patent rights under Title 35 §271. Due to Defendants alleged patent infringement and other intellectual property law violations of 15 U.S.C. §1114 and 15 U.S.C. §1125, Defendants have acted unlawfully within the meaning of B&P §§17200 *et. seq*.

95.    Defendants continuously engaged in unfair trade practices and unfair competition against Plaintiff. It violated the patent, trademark and trade dress laws and harms competition. Unlawful conduct is an unfair business practice actionable under the UCL, B&P §§17200 *et. seq.*

96.    Scunci's infringing products were offered for sale in Rite Aid stores, commingled on shelves and other forms of display with other Scunci and Tonytail devices. The hooks in the stores bore the Tonytail® mark and designation, and had Scunci infringing devices displayed on them.  The hooks which were labeled as Scunci Ponytailer had Tonytail® devices displayed.  Further, when Defendants provided the Scunci Ponytailer infringing device design in product display locations designated for the Tonytail® device line, it intended to falsely designate the origin of such goods as its own and not that of Plaintiff's, thereby fraudulently designating such origin of the goods. This manner of promotion was deceptive, and had the tendency to mislead the public into believing that Scunci produced the Tonytail, was one and the same company or that Scunci infringing devices were approved by, or otherwise associated with the Plaintiff.

1      97.    Upon information and belief, due to Defendants' unlawful patent, trademark and

2  trade dress infringement, as well as fraudulent sales practices, Defendants' alleged infringing

3  devices were sold in the very location of Plaintiff's patented and trade dress protected devices

4  thereby causing substantial damages and irreparable harm to Plaintiff. Further, consumers were

5  deceived leading to overall consumer confusion in the market for these goods. Plaintiff's

6  ability to compete was thereby significantly impaired and buyers subsequently abandoned

7  negotiations further leading to irreparable harm.

8      98.    Plaintiff has been, and will continue to be irreparably harmed and injured by

9  Defendants' efforts designed to unfairly compete with Plaintiff in violation of Business and

10  Professions Code §§17200 *et. seq*.

11

## SEVENTH CAUSE OF ACTION

12

## (Common Law Unfair Business Practices)

13      99.    Plaintiff hereby incorporates the allegations of paragraphs 1 through 98 above as

14  though fully set forth herein.

15      100.    The Plaintiff Tonytail Company has invested substantial time and money in the

16  development of its proprietary device lines, patented devices, market knowledge, trademarked

17  goods, and trade dress device design of the Tonytail® device line and the Tonytail patents. This

18  property constitutes the basis of Plaintiff's business goodwill and reputation.

19      101.    Defendants Conair/Scunci copied not only protectable elements but the entire

20  invention of the Tonytail®.  Conair/Scunci's infringing products, such as the Ponytailer

21  product line was offered for sale in Rite Aid stores, after the limited 6- month license granted to

22  L&N Sales & Marketing had expired and Conair had subsequently acquired the Scunci

23  infringing devices and name. The alleged imitations are substantially similar, leading to many

24  consumers actually confusing the brands when considering the degree of care and attention

25  likely to be exercised by the purchaser. Nevertheless, the alleged imitations were intentionally

26  offered for sale, commingled on hooks with the Tonytail devices. The hooks in the stores which

27  bore the protected Tonytail marks and device designation actually were unfairly replaced with

28

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.

1    Scunci infringing devices contained on them under the false designation of Plaintiff's protected

2    trademark. Further, the hooks which had the Scunci name had the protected Tonytail

3    trademarked products displayed, leading to substantial consumer confusion. Moreover, the

4    confusingly similar infringing device design of the alleged imitation created further consumer

5    confusion over the source of Plaintiff's protected trade dress device design. These trademark

6    and trade dress violations substantially confuse consumers and cause them to believe that

7    Conair/Scunci are in some way associated with Plaintiff.

8         102. The consuming public was in fact misled, resulting in diminished sales of the

9    Plaintiff's device and finally in the cancellation of the contractual relationship between plaintiff

10   and Rite Aid and plaintiff's sales to Rite Aid. Further, the misleading sales and marketing

11   tactics have led to substantial consumer confusion and irreparable harm to Plaintiff's business

12   reputation.

13        103. Plaintiff has been, and will continue to be irreparably injured by Defendants'

14   efforts designed to unfairly compete with Plaintiff in violation of California common law

15   because it unfairly created consumer confusion and the dilution of Plaintiff's own goodwill and

16   business reputation.

17                              **EIGHTH CAUSE OF ACTION**

18                    **(Injury to Business Reputation and Trade Libel)**

19        104.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 103 above as

20   though fully set forth herein.

21        105. After meeting with Rite Aid at the NACDS Marketplace in June 2004, and Mia

22   Minnelli's first application for Rite Aid vendor status on or about July 8, 2004, Tonytail

23   continuously supplied Defendant with Tonytail devices on the basis of an oral agreement.

24   Furthermore, Tonytail had entered into negotiations with other mass chain retailers that had

25   expressed a high degree of interest in Tonytail® devices.

26        106. Dowell Group on behalf of Rite Aid reassured Tonytail that their business

27   relationship would be enduring. Also the high interest that other buyers expressed at the

28

17

1    NACDS marketplace and the negotiations the potential customers contemplated constituted a

2    solid basis for Tonytail's reasonable expectations of economic gain because no other device

3    designs, ornamental appearances, or functional device features were found in the relevant

4    market for these goods at the time.   Moreover, no competing devices or designs incorporated

5    the patented and protected intellectual property features, as evidenced by the facts that prior art

6    searches and trademark searches were conducted and Plaintiff's devices, designs and marks

7    were found to be novel and distinct when compared to the prior art.

8        107. Defendants Conair/Scunci have not only copied protectable elements but the entire

9    invention of the Tonytail® product.  These infringing devices were offered for sale in Rite Aid

10   stores, commingled on shelves and other forms of display with other Scunci and Tonytail®

11   devices. The hooks in the stores which bore the Tonytail® name and designation had Scunci

12   infringing devices on them, and the hooks which had the Scunci name had Tonytail devices

13   displayed.

14       108. Defendants' manner of promotion was deceptive, and had the tendency to mislead

15   the public into believing that Scunci produced the Tonytail, was one and the same company or

16   that Scunci infringing products were approved by, or otherwise associated with the Plaintiff.

17       109. Regardless of whether the public was in fact misled, Plaintiff has been, and will

18   continue to be irreparably injured by Defendants' efforts designed and/or likely to create injury

19   to Plaintiff's business reputation and dilution of the distinctive quality of Plaintiff's protectable

20   intellectual property. Plaintiff experienced diminished sales of Plaintiff's device which resulted

21   finally in the cancellation of the contractual relationship between plaintiff and Rite Aid and

22   plaintiff's sales to Rite Aid.

23                        **NINTH CAUSE OF ACTION**

24                        **(Common Law Trademark Dilution)**

25       110.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 109 above as

26   though fully set forth herein.

27

28

18

1    111. Tonytail has the exclusive right to use its intellectual property, its highly
2    distinctive trademark and trade name, for identification, sale and advertising. Plaintiff
3    registered its fictitious business name "Tonytail" with the Secretary of State of the State of
4    California and owns the name's registered word mark.

5    112. Defendants' actions as set forth hereinabove have been and are likely to impair the
6    distinctiveness of Plaintiff's protectable mark. Scunci's infringing products were offered for
7    sale in Rite Aid stores, commingled on shelves and other forms of display with other Scunci
8    and Tonytail devices. The hooks in the stores which bore the Tonytail name and designation
9    had Scunci infringing products on them, and the hooks which had the Scunci name had
10   Tonytail devices displayed.

11   113. This manner of promotion was deceptive and had the tendency to mislead the
12   public into believing that Scunci produced the Tonytail, was one and the same company or that
13   Scunci infringing devices were approved by, or otherwise associated with the Plaintiff.

14   114. The likelihood that customers are confused by this sales method is tremendous
15   because of the proximity of the Scunci and the Tonytail merchandise, the actual confusion
16   expressed by customers and store employees, the common marketing channels, the akin type of
17   goods and low degree of care likely to be exercised by the purchaser.

18   115. Defendant's actions as set forth hereinabove have harmed and are likely to harm
19   the reputation of Plaintiff's mark. Plaintiff has been, and will continue to be irreparably injured
20   by Defendant's efforts designed and/or likely to create injury to Plaintiff's business reputation
21   and dilution of the distinctive quality of Plaintiff's protectable intellectual property

22

23   **RELIEF:**

24   WHEREFORE, Plaintiff The Tonytail Company, Inc., respectfully request that the
25   court:

26

27

28

19

(a) Enter judgment that Defendants ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing, infringed the 'D693, 'D239 and '884 Patent in violation of 35 U.S.C. § 271(a);

(b) Enter judgment that Defendants ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing, induced infringement of the 'D693, 'D239 and '884 Patent in violation of 35 U.S.C. § 271(b);

(c) Permanently enjoin Defendants ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing, from further infringement of the 'D693, 'D239 and '884 Patent in violation of 35 U.S.C. § 283;

(d) Award Plaintiff damages in an amount adequate to compensate for ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing infringement pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 117 including an accounting of any and all profits derived by its illegal acts;

(e) Increase damages up to three times for ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing's willful infringement pursuant to 35 U.S.C. § 284;

(f) Award Plaintiffs reasonable attorney's fees for ConAir, Scunci Int'l., Ltd., Rite Aid and L&N Sales & Marketing's willful infringement pursuant to 35 U.S.C. § 285;

(g) Award Plaintiffs the costs and expenses incurred in this action;

(h) Award Plaintiffs pre and post-judgment interest at the maximum allowable rate under the law; and

(i) Grant Plaintiffs other and further relief the court deems proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury.

1    DATED: November 16, 2007                        MATLOCK LAW GROUP, PC

2

3                                              By: _____

4                                                  Anne-Leith Matlock
                                                   Matlock Law Group, PC
5                                                  Attorneys for Plaintiff
                                                   THE TONYTAIL COMPANY, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            21

**EXHIBIT A**



US00D413693S

# United States Patent [19]

## Minnelli

[11] **Patent Number:** **Des. 413,693**

[45] **Date of Patent:** ✷✷ **Sep. 7, 1999**

[54] **HAIR PONYTAIL BAND**

[76] Inventor: **Mia Minnelli,** 1770 Broadway #101, San Francisco, Calif. 94109

[✷✷] Term: **14 Years**

[21] Appl. No.: **29/088,568**

[22] Filed: **May 27, 1998**

[51] **LOC (6) Cl.** ........................................................ **28-03**

[52] **U.S. Cl.** .................................................. **D28/41**

[58] **Field of Search** ...................... D28/39–41; D2/865, D2/875, 877, 894, 895, 610, 625, 637; 132/273, 275; 2/174, 171, 170, 162, 311, 338, 312; D11/3, 4

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 10,265 | 10/1877 | Lang | D11/5 |
| D. 90,780 | 9/1933 | Oulton | D11/4 |
| D. 316,774 | 5/1991 | Falk | D2/875 |
| D. 317,274 | 6/1991 | Redina | D11/4 |
| D. 342,154 | 12/1993 | Capello | D2/875 |
| D. 356,393 | 3/1995 | Revson | D28/41 |
| D. 388,588 | 1/1998 | Gruters et al. | D2/866 |
| 409,001 | 8/1889 | Ashworth | 2/338 |
| 818,031 | 4/1906 | Kislik | 2/338 |
| 1,626,433 | 4/1927 | Siner | 132/273 |
| 1,921,271 | 8/1933 | Lubin | 2/338 |
| 2,595,657 | 5/1952 | Harmon | 132/273 |
| 2,975,788 | 3/1961 | Ardelyan | 132/273 |
| 4,047,400 | 9/1977 | Thorneburg | 2/170 X |
| 4,685,893 | 8/1987 | Perkitny et al. | 446/319 |

| | | | |
|---|---|---|---|
| 4,833,734 | 5/1989 | Der Estephanian | 2/DIG. 11 |
| 5,230,355 | 7/1993 | Weingrod | 132/275 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 90591 | 1/1968 | France | 2/312 |

### OTHER PUBLICATIONS

Hong Kong Enterprise Oct. 1997, p. 1149; top of page—ponytail holder indicated by arrow.

*Primary Examiner*—Ted Shooman
*Assistant Examiner*—C Tuttle
*Attorney, Agent, or Firm*—Goldstein & Canino

[57]  **CLAIM**

The ornamental design for a hair ponytail band, as shown and described.

### DESCRIPTION

FIG. 1 is a diagrammatic perspective view of the hair ponytail band in full lines, the human head shown in broken lines being for illustrative purposes only and forming no part of the claimed invention.

FIG. 2 is a top plan view of the hair ponytail band, the bottom plan view being a mirror image of the top view.

FIG. 3 is a right side elevational view thereof, the left side view being a mirror image of the right side view; and,

FIG. 4 is a front elevational view thereof, the rear elevational view being a mirror image of the front view.

The portions of the band that are not shown in the drawings are not being claimed.

**1 Claim, 2 Drawing Sheets**





FIG.1





FIG.2



FIG.3



FIG.4

**EXHIBIT B**



US00D453239S

(12) **United States Design Patent**
Minelli

(10) Patent No.:    **US D453,239 S**
(45) Date of Patent:    ∗∗    **Jan. 29, 2002**

(54)  **PONYTAIL HOLDER**

(76)  Inventor:  **Mia Minelli,** 1770 Broadway #101, San Francisco, CA (US) 94109

(∗∗)  Term:  **14 Years**

(21)  Appl. No.: **29/136,364**

(22)  Filed:  **Jan. 30, 2001**

(51)  LOC (7) Cl. .................................................... **28-03**

(52)  U.S. Cl. ......................................................... **D28/41**

(58)  Field of Search ....................... D28/39–43; D2/634, D2/637, 625, 869, 871, 874, 875, 877, 881, 894; D11/3, 4; 132/273, 275

(56)  **References Cited**

U.S. PATENT DOCUMENTS

|  |  |  |  |  |
|---|---|---|---|---|
| 38,574 | A | ∗ | 5/1863 | Edwards |
| 1,481,778 | A | ∗ | 1/1924 | Salomons ................... 132/275 |
| 2,016,210 | A | ∗ | 10/1935 | Mann |
| D143,702 | S | ∗ | 2/1946 | Baxter |
| D338,551 | S | ∗ | 8/1993 | Teague ......................... D2/881 |
| 5,899,211 | A | ∗ | 5/1999 | Brown ......................... 132/273 |

| | | | | |
|---|---|---|---|---|
| D413,693 | S | ∗ | 9/1999 | Minelli ...................... D28/41 |
| 6,263,884 | B1 | ∗ | 7/2001 | Minelli ...................... 132/273 |

OTHER PUBLICATIONS

Hong Kong Enterprise, Oct., 1997, p. 1149, hair accessories.∗

∗ cited by examiner

*Primary Examiner*—Lucy Lieberman
(74) *Attorney, Agent, or Firm*—Goldstein Law Offices, P.C.

(57)  **CLAIM**

The ornamental design for a ponytail holder, as shown and described.

**DESCRIPTION**

FIG. 1 is a front view of a ponytail holder, the rear view being a mirror image of the front view.
FIG. 2 is a left side elevational view thereof, the right side elevational view being a mirror image of the left side view.
FIG. 3 is a top plan view thereof; and,
FIG. 4 is a bottom plan view thereof.

**1 Claim, 2 Drawing Sheets**



U.S. Patent     Jan. 29, 2002     Sheet 1 of 2     US D453,239 S



Fig. 1



Fig. 2



# Fig. 3



# Fig. 4

**EXHIBIT C**



US006263884B1

(12) **United States Patent**　　　　(10) **Patent No.:**　　**US 6,263,884 B1**
Minnelli　　　　　　　　　　　　　(45) **Date of Patent:**　　　**Jul. 24, 2001**

(54) **DEVICE FOR BINDING A PONYTAIL HAVING A NATURAL HAIR APPEARANCE**

(76) Inventor: **Mia Minnelli**, 1770 Broadway #101, San Francisco, CA (US) 94109

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/525,601**

(22) Filed: **Mar. 14, 2000**

(51) Int. Cl.[7] ................................ **A41G 3/00; A45D 8/04; A45D 8/12**

(52) **U.S. Cl.** .......................... **132/273;** 132/201; 132/275; 132/53

(58) **Field of Search** ................................ 132/273, 53, 55, 132/201, 275

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 52,258 | * | 8/1918 | Upton ..................... D2/344 |
| D. 59,261 | * | 10/1921 | Muller ..................... D28/41 |
| D. 229,240 | * | 11/1973 | Fox ..................... D2/344 |
| D. 273,341 | * | 4/1984 | Rol ..................... D28/41 |
| D. 273,342 | * | 4/1984 | Rol ..................... D2/344 |
| D. 368,983 | * | 4/1996 | Gruters et al. ..................... D28/41 |
| 1,713,616 | * | 5/1929 | Oppenheim ..................... 132/273 |
| 2,567,119 | * | 9/1951 | Naidor ..................... 132/53 |
| 2,651,310 | * | 9/1953 | Selson ..................... 132/273 |

| | | | |
|---|---|---|---|
| 2,847,016 | * | 8/1958 | Rabinowitz ..................... 132/273 |
| 3,000,384 | * | 9/1961 | Piers ..................... 132/273 |
| 4,600,029 | * | 7/1986 | Ueberschaar ..................... 132/53 |
| 4,830,029 | * | 5/1989 | Bird ..................... 132/54 |
| 5,303,724 | * | 4/1994 | Anzivino ..................... 132/278 |
| 5,465,741 | * | 11/1995 | Dvorak ..................... 132/275 |
| 5,501,239 | * | 3/1996 | Walker ..................... 132/275 |
| 5,551,452 | * | 9/1996 | Barlow ..................... 132/54 |
| 5,899,211 | * | 5/1999 | Brown ..................... 132/201 |

* cited by examiner

*Primary Examiner*—John J. Wilson
*Assistant Examiner*—Robyn Kieu Doan
(74) *Attorney, Agent, or Firm*—Goldstein & Canino

(57) **ABSTRACT**

A ponytail binding system, for use by a person having a ponytail having a ponytail end, using a device comprising synthetic hair fibers joined to an elastic band to form a closed loop. The synthetic hair fibers are joined to the elastic band with a pair of connectors. The ponytail is inserted into the closed loop, and the device is tensioned around the ponytail by twisting the closed loop and inserting the ponytail end into the secondary loop formed thereby. Once the device is suitably tensioned on the ponytail, the synthetic hair fibers are pulled over the elastic band so that the outward appearance of the device is formed solely by the synthetic hair fibers, which are selected so as to blend with the hair of the person.

**5 Claims, 2 Drawing Sheets**



**U.S. Patent**    Jul. 24, 2001    Sheet 1 of 2    US 6,263,884 B1



FIG. 2



FIG. 1



FIG. 3

FIG. 4

**1**

## DEVICE FOR BINDING A PONYTAIL HAVING A NATURAL HAIR APPEARANCE

### BACKGROUND OF THE INVENTION

The invention relates to a device for binding a ponytail having a natural hair appearance. More particularly, the invention relates to a device which securely attaches around a ponytail, but which provides the outward appearance of natural hair.

Certain hair styles dictate that a portion of the hair is gathered and grouped into a "ponytail". The most traditional way to gather and group hair is by tying it with a ribbon. However, tying the hair in the ponytail with a ribbon requires coordination and dexterity. In addition, removing the ribbons can be difficult and tedious as one attempts to blindly undo a knot.

Hair clips and elastic bands are also used to gather and bind groups of hair. Hair clips grab the hair between a pair of jaws which are spring-tensioned against one another. The jaws are flexed apart, placed around the hair grouping, and are released to clamp and hold the hair grouping. Elastic bands are generally in the shape of a ring which is stretched over the hair grouping and released to hold the ponytail in place.

The main drawback of hair clips and elastic bands is their unnatural appearance. Although they are available in a variety of colors, decorated with synthetic and precious stones, and even covered in fabrics, they are always noticeable when in the hair.

U.S. Pat. No. 5,899,211 to Brown discloses an apparatus and method for securing a ponytail. Brown uses a device which employs an elastic loop which can secure around a ponytail, and a length of hair which is attached to the elastic loop at one end, but is free at its opposite end.

While these units may be suitable for the particular purpose employed, or for general use, they would not be as suitable for the purposes of the present invention as disclosed hereafter.

### SUMMARY OF THE INVENTION

It is an object of the invention to produce a device for binding a ponytail which has a natural hair appearance. Accordingly, the device employs fine fibers which simulate natural human hair.

It is a further object of the invention to provide a device which securely binds a ponytail. Accordingly, the device employs an elastic band which can be tensioned to firmly maintain a ponytail. The elastic band is then hidden by the simulated human hair fibers to maintain a natural appearance.

The invention is a ponytail binding system, for use by a person having a ponytail having a ponytail end, using a device comprising synthetic hair fibers joined to an elastic band to form a closed loop. The synthetic hair fibers are joined to the elastic band with a pair of connectors. The ponytail is inserted into the closed loop, and the device is tensioned around the ponytail by twisting the closed loop and inserting the ponytail end into the secondary loop formed thereby. Once the device is suitably tensioned on the ponytail, the synthetic hair fibers are pulled over the elastic band so that the outward appearance of the device is formed solely by the synthetic hair fibers, which are selected so as to blend with the hair of the person.

To the accomplishment of the above and related objects the invention may be embodied in the form illustrated in the

**2**

accompanying drawings. Attention is called to the fact, however, that the drawings are illustrative only. Variations are contemplated as being part of the invention, limited only by the scope of the claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like elements are depicted by like reference numerals. The drawings are briefly described as follows.

FIG. 1 is a diagrammatic perspective view, illustrating the invention, per se.

FIG. 2 is a cross sectional view with parts broken away, illustrating one of the two connectors according to the present invention.

FIG. 3 is a side elevational view, illustrating the invention in use, being used to gather and hold a ponytail.

FIG. 4 is a side elevational view, illustrating the invention in use, wherein the ponytail has been gathered, and wherein the elastic band is concealed with the synthetic hair fibers.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 illustrates a device for binding a ponytail **10**, comprising an elastic band **12**, and a group of synthetic hair fibers **14**. The elastic band **12** has a pair of elastic band ends **12E**. The synthetic hair fibers **14** are all of substantially the same length, and collectively have a pair of synthetic hair fiber ends **14E**. A pair of connectors **16** are used to permanently join each one of the elastic band ends **12E** to one of the hair fiber ends **14E**. Accordingly, the synthetic hair fibers **14** and elastic band **12S** together form a closed loop.

The synthetic hair fibers **14** are made of a material which greatly resembles human hair. Suitable materials are commonly used in wigs, hair extensions, and hair pieces. However, typically these materials resist tensile deformation. In other words, they typically cannot be stretched without breaking.

The elastic band **12** is made of a stretchable material, such as rubber, or the like. The elastic band **12** thus provides the binding device **10** with the necessary elasticity so that it can stretch around a group of hair, and then exert a constricting tension against that group of hair to hold it in place.

Referring to FIG. 1, each connector **16** is a sleeve having a pair of connector open ends **18**. One of the elastic band ends **12E** is inserted into one of the connector open ends **18**, and one of the synthetic hair fiber ends **14E** is inserted into the other connector open end **18E**. Once inside the connector, the synthetic hair fibers and elastic band are fused therein using heat, adhesives, chemicals, mechanical friction, or any other suitable means. The fibers and elastic band need not be directly fused to one another, since the connector **16** joins them indirectly. As seen in FIG. 1, using two connectors **16** completes the closed loop to form the binding device **10**.

FIG. 3 illustrates the binding device **10** in use binding the hair of a person **50**, having a ponytail **52** having a ponytail end **54**. The binding device **10** has been placed over the ponytail **52** by inserting the ponytail end **54** through the closed loop of the binding device **10** so that the binding device **10** fully encircles the ponytail **52**. At this point, the closed loop fits loosely over the ponytail **52**.

In order to make the binding device **10** fit tightly over the ponytail **52**, the binding device **10** is twisted to form a secondary loop **30**. Then, the ponytail end **54** is inserted through the secondary loop **30**. This doubling up of the

US 6,263,884 B1

**3**

binding device **10** causes a tighter fit around the ponytail **52**, and is repeated until numerous loops are formed around the ponytail **52** and the binding device **10** fits tightly around the ponytail **52**.

When the binding device **10** has been looped around the ponytail **52** numerous times, the elastic band portion thereof becomes stretched and thus tensioned. Since the elastic band portion forms a continuous loop with the less stretchable synthetic hair fibers, the tensioned elastic band acts to pull the synthetic hair fibers tightly around the ponytail **52**.

Referring now to FIG. 4, once the binding device **10** has been looped or wrapped around the ponytail **52** numerous times, some of the loops consist of the elastic band, and several of which should consist entirely of the synthetic hair fibers **14**. Accordingly, the synthetic hair fibers **14** may be pulled over the elastic band to conceal the elastic band and the connectors, so that the outward appearance of the binding device **10** is provided solely by the synthetic hair fibers, as seen in FIG. 4. Accordingly, if the synthetic hair fibers are suitably matched to the hair of the person, the binding device **10** then appears to be part of that person's natural hair.

In conclusion, herein is presented a binding device suitable for maintaining a ponytail, which provides the outward appearance of natural human hair, while tightly binding and maintaining the ponytail.

What is claimed is:

1. A hair binding device, for binding and maintaining a ponytail, comprising:

an elastic band, having a pair of elastic band ends;

synthetic hair fibers, collectively having a pair of synthetic hair fiber ends; and

wherein one of the elastic band ends is permanently joined with one of the synthetic hair fiber ends and the

**4**

other of the elastic band ends is permanently joined with the other of the synthetic fiber ends so that the elastic bands and synthetic hair fibers together form a closed loop.

2. The hair binding device as recited in claim 1, further comprising a pair of connectors, wherein each of the elastic band ends is joined with one of the synthetic hair fiber ends with one of the connectors.

3. The hair binding device as recited in claim 2, wherein each of the connectors comprises a sleeve and has two connector ends, wherein for each connector one of the elastic band ends is secured in one of its connector ends and one of the synthetic hair fiber ends is secured in the other of its connector ends.

4. A hair binding method, for use by a person having a ponytail having a ponytail end, for securing said ponytail, using a device comprising an elastic band having a pair of elastic band ends, synthetic hair fibers having an appearance similar to the ponytail and having a pair of synthetic hair fiber ends, the synthetic hair fiber ends joined to the elastic band ends to form a closed loop, comprising the steps of:

encircling the ponytail with the device by inserting the ponytail end through the closed loop of said device;

tensioning the device around the ponytail by doubling up the device; and

covering the elastic band with the synthetic hair fibers so that the outward appearance of the device is formed solely by the synthetic hair fibers.

5. The hair binding method as recited in claim 4, wherein the step of doubling up the device further comprises repeatedly:

twisting the closed loop to form a secondary loop; and

inserting the ponytail end through the secondary loop.

*  *  *  *  *