1  Anne-Leith W. Matlock (SBN: 244351)
   Matlock Law Group, A Professional Corporation
2  961 Ygnacio Valley Road
3  Walnut Creek, CA 94596
   Telephone: 925.944.7131
4  Facsimile: 925.938.4625

5  Attorneys for Plaintiff,
   THE TONYTAIL COMPANY, INC.
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF CONTRA COSTA**

10                        **UNLIMITED CIVIL DIVISION**

11

| | |
|---|---|
| 12  THE TONYTAIL COMPANY, INC., a Delaware Corporation | **CASE NO.** |
| 13 | |
| 14             Plaintiff, | CV 07 5895 |
| 15      v. | |
| 16  RITE AID, a Delaware Corporation, L&N SALES AND MARKETING, Inc., a Pennsylvania Corporation, NEAL MENAGED and LEWIS M. HENDLER, officers of L&N Sales and Marketing, Inc., CONAIR, INC, a Delaware Corporation, SCUNCI INTERNATIONAL, INC., a Delaware Corporation owned by CONAIR, DOWELL GROUP, a New York Corporation, INGENUITY, a Florida Corporation, and DOES, 1 through 100, inclusive, | **DECLARATION OF ANNE-LEITH W. MATLOCK IN SUPPORT OF COMPLAINT FOR DAMAGES** |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24            Defendants, | |
| 25 | |

26
27     I, ANNE-LEITH W. MATLOCK, declare:
28
                                    Page 1

1. I, ANNE-LEITH W. MATLOCK, am an attorney at law licensed to practice before all courts of the State of California and before the Eastern and Northern Districts of California. I am a partner with the law firm Matlock Law Group, attorneys of record for Plaintiff THE TONYTAIL COMPANY, INC.

2. Attached hereto as Exhibit "A" is the Declaration of Mia Minnelli, President and CEO of Plaintiff, THE TONYTAIL COMPANY, INC., which I hereby incorporate by reference.

3. In August 2007, Mia Minnelli contacted me for legal advice regarding the facts underlying the Complaint in this matter. She presented to me facts substantially similar to those set forth in her declaration.

4. I have personally reviewed the facts set forth in the complaint and conclude that they provide the basis for the causes of action set forth in the Complaint for Damages.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. If called upon to testify, I could or would competently testify thereto.

Executed on this 1st day of November 2007, at Walnut Creek, California.

_____
Anne-Leith W. Matlock
Attorney for Plaintiff
THE TONYTAIL COMPANY, INC.

DECLARATION OF ANNE-LEITH MATLOCK                                    CASE NO.

**EXHIBIT A**

**Matlock Law Group,** A Professional Corporation
Anne-Leith W. Matlock, SBN 244351,
50 California Street Suite 1500
San Francisco, CA 94111
Office: 415-277-5499
Fax: 415-439-5299

Attorneys for Plaintiff The Tonytail Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TONYTAIL COMPANY, INC. a California Corporation and MIA MINNELLI, an individual<br><br>Plaintiffs,<br><br>v.<br><br>RITE AID, a Delaware Corporation, L&N SALES AND MARKETING, Inc., a Pennsylvania Corporation, SCUNCI, a Delaware Corporation owned by CONAIR, a Pennsylvania Corporation, DOWELL GROUP, a New York Corporation, Ingenuity, a Florida Corporation,<br><br>DEFENDANTS. | CASE NO.<br><br>**DECLARATION OF MIA MINNELLI IN SUPPORT OF COMPLAINT FOR DAMAGES** |

I, MIA MINELLI, declare:

1.  I, Mia Minnelli, am the sole owner, President and Chief Executive Officer of the Plaintiff, The Tonytail Company, Inc., (hereinafter "Tonytail").

---

1

COMPLAINT FOR DAMAGES                                                        CASE NO.:

2.     At all times relevant to this Complaint, I was the owner of various valid and enforceable patents and trademarks on the Tonytail's hair accessories line, including the "Tonytail". In September of 2007, I assigned those patents and trademarks to Tonytail.

3.     In January 2002, I discovered that L & N Sales and Marketing (hereinafter "L & N"), by its subsidiary Scunci, had sold imitations of my patented ponytail holder device to mass retailers, including stores with which Tonytail also maintained business relationships. I immediately requested that L & N cease production and sale of these infringing goods, and on March 31, 2003, the Tonytail Company entered into a Settlement and Licensing Agreement with L & N. In addition, L & N signed a Non-Disclosure Agreement of May 5, 2003, for certain trade secrets of Plaintiff's business.

4.     Pursuant to these agreements, I forbore from taking legal action against L & N for the infringement. L & N agreed to cease and desist from further manufacture and sale of infringing products, and pursuant to a limited license granted, to account for and pay a royalty for all infringing goods already produced and sold.

5.     I believe that in March of 2005, Scunci was acquired by Conair.

6.     Following Scunci's acquisition by Conair, Conair/Scunci commenced production of infringing goods and sold the imitation infringing goods to mass retailers.

7.     On June 29, 2004, I entered into an Independent Contractor Agreement with the Dowell Group, according to which Dowell was to devote its best efforts to actively promote and sell my company's products, to maintain confidences, to refrain from carrying, promoting, marketing or selling any other products that could be deemed as conflicting or competing with my products and to advance my business interests ahead of any others. However, Dowell divulged my valuable business information, revealed my confidential e-mails, and engaged in other conduct, which was harmful to my business interests.

8. Thereafter, I applied for vendor status with Rite Aid. Dowell Group advised that Tonytail would soon be given its own vendor number, but that in the meantime, Dowell advised that Rite Aid insisted that Tonytail enter an interim agreement with Ingenuity whereby the Tonytail would share a vendor number with Ingenuity, and further, that Ingenuity would administer all Tonytail transactions with Rite Aid. On December 15, 2004, Tonytail and Ingenuity executed a Summary Term Sheet reflecting the interim agreement.

9. In addition, Dowell advised that Rite Aid vendors were required to carry $5 million in product liability insurance, and so we purchased additional insurance in anticipation of receiving our own Rite Aid vendor number.

10. Beginning in 2005, and continuing through 2006, Ingenuity began to fail to forward to Tonytail payments it received from Rite Aid. Following my repeated complaints to Ingenuity and Dowell, Rite Aid cancelled our contract, alleging that Tonytail was demanding prepayment for Tonytail goods, which it was not. Thereafter, I was informed that Tonytail products would be removed from Rite Aid's nationwide marketing program.

11. At meetings with other mass retailers, I was told that Conair/Scunci had represented to them that the Scunci product was a distinct competing product that would not infringe the Tonytail patents and that therefore they ought not to carry the Tonytail products.

12. Between March and August 2007, these buyers that previously expressed their intention to enter into an agreement with Tonytail consequently cancelled negotiations and even existing contracts with Tonytail and rejected my further offers.

13. Rite Aid did intermittently offer Tonytail products until November 13, 2007, sometimes on hooks marked with the Scunci brand, and sometimes displaying Scunci products on hooks designated for Tonytail products.

3

COMPLAINT FOR DAMAGES                                                        CASE NO.:

1    I declare under penalty of perjury under the laws of the State of California that the
2    foregoing is true and correct. If called upon to testify, I could or would competently
3    testify thereto.
4    Executed on this 16th day of November 2007, at Walnut Creek,
5    California.

MIA MINNELLI

The Tonytail Company, Inc.
President and Chief Executive Officer

4

COMPLAINT FOR DAMAGES                                          CASE NO.: