Matlock Law Group, A Professional Corporation
Anne-Leith Matlock, SBN 244351
1485 Treat Blvd., Suite 200
Walnut Creek, CA 94597
Phone: (925) 944-7131
Fax:    (925) 944-7138
E-mail: anne-leith@matlocklawgroup.com

Attorneys for Plaintiff,
The Tonytail Company, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THE TONYTAIL COMPANY, INC. a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CONAIR, a Delaware Corporation; SCUNCI INTL., Ltd., a Delaware Corporation; RITE AID, a Delaware Corporation; L&N Sales & Marketing, Inc., and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 3:07-cv-05895-WHA**<br><br>**MEMORANDUM OF POINTS AND AUTHORITITES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS DEFENDANTS', RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**Date: June 5, 2008**<br><br>**Time: 8:00 a.m.**<br><br>**Courtroom: 9** |

Plaintiff, The Tonytail Company, Inc. (hereinafter "Tonytail"), hereby submits its Memorandum of Points and Authorities in Support of its Partial Motion to Dismiss Defendants' Counterclaim for Lack of Subject Matter Jurisdiction.

Matlock Law Group, PC

1

## INTRODUCTION

Tonytail filed its complaint for Patent Infringement, Induced Patent Infringement, Violation of Federal Lanham Act Trademark Infringement and False Designation of Origin against Defendants, Conair and Rite Aid on November 20, 2007. Specifically, Tonytail asserts that Defendants have infringed claims 4 and 5 of its utility patent, 6,263,884 B1. Defendants filed their counterclaim on March 6, 2008, seeking declaratory judgment of non-infringement and invalidity of Tonytail's utility patent, 6,263,884 B1 (hereinafter the "'884 patent"). Although Tonytail has made an effort to limit the scope of the patent claim terms selected for construction in the claim construction hearing set for May 28, 2008 to those asserted by Plaintiff, an agreement has not been reached. In fact, Defendants have argued specifically that the '884 patent claims 1, 2 and 3 are invalid for indefiniteness in their preliminary invalidity contentions. Defendants received Plaintiff's Disclosure of Asserted Claims and Infringement Contentions a full forty-five (45) days before they submitted their Invalidity Contentions. Therefore, Defendants knew or should have known that Plaintiff was asserting only claims 4 and 5 of its utility patent. Tonytail asserts that because only claims 4 and 5 of the '884 patent are at issue, Defendants lack standing to bring a counterclaim for declaratory judgment involving claims 1, 2 and 3 of Tonytail's '884 patent, and consequently this court lacks subject matter jurisdiction over claims 1, 2 and 3. Furthermore, Tonytail asserts that Defendants have failed to meet their burden of justiciability under the Declaratory Judgment Act.

## STATEMENT OF FACTS

In or about the fall of 1997, Mia Minnelli founded The Tonytail Company, Inc. and its hair product accessory line by devoting all her personal resources San Francisco, California. On or about May 27, 1998, Ms. Minnelli filed an application for a United States Patent, Application No. 29/088,568. On or about September 7, 1999, a United States Patent was issued on the above-mentioned application, bearing the designation

1   Des. 413,693, described as "Hair Ponytail Band." On or about January 30, 2001, Ms.

2   Minnelli filed an application for a United States Patent, Application No. 29/136,364. On

3   or about March 14, 2000, Ms. Minnelli filed an application for a United States Patent,

4   Application No. 09/525,601. On or about July 24, 2001, a United States Patent was

5   issued, bearing the designation U.S. 6,263,884, described as "Device for Binding a

6   Ponytail Having a Natural Hair Appearance." On or about January 30, 2001, Ms.

7   Minnelli filed an application for a United States Patent, Application No. 29/136,364.  On

8   or about January 29, 2002, a United States Patent was issued, bearing the designation

9   U.S. D453,239 S, described as "Ponytail Holder." Ms. Minnelli legally assigned her

10  intellectual property to Plaintiff, The Tonytail Company, Inc.

11         At various times after January 29, 2002, principals, agents, and/or employees of

12  defendant L & N through sources such as Plaintiff's website, came into possession of

13  information regarding the design and construction of at least one of Plaintiff's patented

14  devices, resulting in the manufacture by defendant L&N of products substantially and

15  confusingly similar, to plaintiff's device. Plaintiff's fictitious business name was

16  registered with the Secretary of State of California. On or about March 31, 2003,

17  defendant Scunci, the "Hair Accessories" Division of L&N, agreed to cease and desist

18  from making and selling the abovementioned products and signed an agreement to that

19  effect.   Thus, Defendants had notice and knowledge of Plaintiff's Patent No. U.S.

20  6,263,884 B1, U.S. Design Patent No. D453,239, U.S. Design Patent No. D453,053, U.S.

21  Design Patent No. D413,693, the registered trademark "Tonytail®", and Plaintiff's

22  unregistered product trade dress and trademarks from at least March 31, 2003. At some

23  time after January 29, 2002, Defendant Scunci produced other ponytail holders, such as

24  the "Scunci ponytailer, item 2839_A". The "Scunci ponytailer, item 2839_A" is

25  substantially and confusingly similar to Plaintiff's ponytail holder device, which is the

26

27

28

Matlock Law
Group, PC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

1   subject of U.S. Patent No. D453,239 and No. Des. 413,693.  The "Scunci ponytailer, item

2   2839_A" infringes one or more claims of Plaintiff's U.S. Patent No. U.S. 6,263,884 B1.

3           At various times after January 29, 2002, and continuing to the present, Defendants

4   manufactured and sold said additional product "Scunci ponytailer, item 2839_A", and

5   said device was displayed and sold by defendant Rite Aid in one or more of its multiple

6   retail outlets in California, and specifically in the Northern District of California. The

7   Scunci infringing products were offered at Rite Aid stores commingled on shelves and

8   other forms of display with Tonytail and other Scunci products. The hooks bore the

9   Scunci name displaying Tonytail products and vice versa. At the National Association of

10  Chain Drug Stores (NACDS) tradeshow in June 2004, where The Tonytail Company,

11  Inc. presented these products, Mia Minnelli met with other mass chain retailers who

12  expressed high interest in the Tonytail product.  Also immediately after this June 2004

13  NACDS tradeshow, The Tonytail Company, Inc. entered into an oral supply agreement

14  with Rite Aid. Scunci influenced other potential commercial consumers to abandon their

15  negotiations with Tonytail. Con Air / Scunci knowingly and intentionally influenced

16  buyers to sell defendants' infringing products, and also to not do business with Plaintiff

17  in order to preserve Defendant's predominance in these retail stores. Defendant knew or

18  should have known that retailers would reject Tonytail's competing, patented product in

19  favor of Defendant's confusingly similar, imitation product.  At meetings with multiple

20  potential customers Tonytail was then, in fact, turned down in favor of the imitation

21  product.

22          Tonytail subsequently filed its complaint for Patent Infringement of its US Patent

23  No. 6,263,884 ("the '884 patent"), and also a claim for Induced Patent Infringement of

24  the '884 patent , Violation of Federal Lanham Act Trademark Infringement and False

25  Designation of Origin against Defendants, Conair and Rite Aid on November 20, 2007 as

26  well as Patent Infringement claims on two design patents.  With respect to the '884

27

28

Hatlund Law
Group, P.C.

1  patent, Tonytail asserted in its Infringement Contentions that Defendants have infringed

2  claims 4 and 5 of its utility patent, 6,263,884 B1.  However, Plaintiff has not asserted

3  claims 1-3 of the '884 patent in its complaint.  Defendants filed their counterclaim on

4  March 6, 2008, seeking declaratory judgment of non-infringement and invalidity of

5  Tonytail's utility patent, 6,263,884 B1 (hereinafter the "'884 patent").  Subsequent to the

6  filing of Defendant's counterclaim, Defendant has filed Invalidity and Non-infringement

7  Contentions of the '884 patent claims 1-5, exceeding the scope of Plaintiff's claim for

8  patent infringement of claims 4-5 of the '884 patent in the process.  Plaintiff now files its

9  motion in response.

10

11  **ARGUMENT**

**I.    THE COURT SHOULD DISMISS DEFENDANT'S COUNTERCLAIM**
12  **WITH REGARDS TO PATENT '884 CLAIMS 1, 2 AND 3 FOR LACK OF**
**SUBJECT MATTER JURISDICTION BECAUSE DEFENDANTS LACK**
13  **STANDING TO SUE**

14       Article III of the U.S. Constitution requires Plaintiffs, or in this case, Defendants

15  who have counterclaimed, to establish their standing to sue. Standing constitutes a

16  fundamental jurisdictional limitation. It is "an essential and unchanging part of the case-

17  or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 US 555,

18  560 (1992). Accordingly, Defendant's must, "at an irreducible minimum," show: (1) an

19  "injury in fact" which is concrete and not conjectural; (2) that the injury is fairly traceable

20  to the defendant's conduct; and (3) that a favorable decision is likely to redress the

21  complained-of injury in order to establish jurisdiction. Id. At, 560-561 (1992); United

22  Food & Comm'l Workers Union, Local 751 v. Brown Group, Inc. 517 US 544, 550

23  (1996).

24       Defendants fail to show any "injury in fact" with regard to claims 1, 2 and 3 of

25  Plaintiff's '884 utility patent. According to the U.S. Supreme Court, "injury in fact" must

26  involve "an invasion of a legally protected interest which is (a) concrete and

27

28

Maitlah Law
Group, P.C.
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

1    particularized …and (b) actual or imminent, not conjectural or hypothetical…" <u>Lujan v.</u>

2    <u>Defenders of Wildlife</u>, 504 US 555, 560-561. On February 29, 2008, Defendant's were

3    sent Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, wherein,

4    Plaintiff's asserted only claims 4 and 5 of their '884 utility patent. In patent infringement

5    cases, infringement is determined on a patent claim by patent claim basis, rather than

6    being determined according to the patent as a whole. "Victory in an infringement suit

7    requires a finding that the patent claim 'covers the alleged infringer's product or process,'

8    which in turn necessitates a determination of 'what the words in the claim mean."

9    <u>Markman v. Westview Instruments</u>, 517 US 370, 374 (1996).  On April 15, 2008,

10   Plaintiff received Defendant's Invalidity Contentions, wherein Defendant's argue the

11   invalidity of claims 1-3 of the '884 utility patent. Defendant's contentions are beyond the

12   scope of Plaintiff's asserted claims 4 and 5 of the '884 patent. Therefore, Plaintiff's

13   unasserted claims 1-3 of the '884 patent pose no concrete, particularized, actual or

14   imminent threat to Defendant's legal interests because Plaintiff filed suit for infringement

15   of the '884 patent and excluded claims 1-3 from its complaint. As a result, no recovery is

16   possible against claims 1-3 and claims 1-3 pose no threat to the Defendant. Furthermore,

17   Plaintiff may be claim precluded under *res judicata* principles from asserting claims 1-3

18   against Defendant's accused device.

19            Defendants also fail to meet the requirements of both causation and redressability

20   because they have not first shown any necessary "injury in fact" with regards to claims 1-

21   3 of the '884 patent.  Causation requires a causal connection between Defendants injury

22   in fact and Plaintiff's conduct or omission. Similarly, the relief sought must redress the

23   "injury in fact" suffered by the Defendant.  Plaintiff's have not raised an issue regarding

24   the '884 claims 1-3 because Plaintiff's Infringement Contentions limit its potential

25   recovery with respect to the '884 patent to only claims 4-5.  As a result, claims 1-3

26   represent no threat whatsoever to Defendant and there is no possibility of a recovery

27

28

Matlock Law
Group, PC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

1   based on claims 1-3 and thus no injury in fact could occur to Defendant that would be

2   causally connected to claims 1-3.  Without an injury in fact, there can be neither

3   causation nor redressability and therefore Defendants lack standing sufficient to establish

4   subject matter jurisdiction under FRCP 12(b)1.

5       Therefore, Defendant's Counterclaim for invalidity and non-infringement of

6   Plaintiff's '884 patent should be dismissed in regards to unasserted claims 1-3 because

7   Defendants lack standing to sue and there is no subject matter jurisdiction.

8   **II.    THE COURT SHOULD DISMISS DEFENDANT'S COUNTERCLAIM**
        **WITH REGARDS TO PATENT '884 CLAIMS 1, 2 AND 3 FOR LACK OF**
9       **SUBJECT MATTER JURISDICTION BECAUSE DEFENDANTS HAVE**
        **FAILED TO MEET THE REQUIREMENTS OF THE DECLARATORY**
10      **JUDGMENT ACT**

11      Federal Courts are authorized under The Declaratory Judgment Act, 28 U.S.C. §

12  2201 ("Act"), to declare the rights and other legal relations of parties when an actual

13  controversy exists. Duhn Oil Tool, 2007 U.S. Dist. LEXIS 93659.  Specifically, the Act

14  provides

15      [i]n a case of actual controversy within its jurisdiction . . . any court

16      of the United States, upon the filing of an appropriate pleading, may

17      declare the rights and other legal relations of any interested party

18      seeking such declaration, whether or not further relief is or could be

19      sought. Any such declaration shall have the force and effect of a

20      final judgment or decree and shall be reviewable as such.

21  28 U.S.C. § 2201(a).

22      It is well-settled that the Act's "actual controversy" requirement mirrors the "case

23  or controversy" requirement of Article III of the United States Constitution. MedImmune

24  v. Genetech, 127 S.Ct. 764, 771-72 (2007), Societe de Conditionnement en Aluminum v.

25  Hunter Eng'g Co., 655 F.2d 938, 942 (9th Cir. 1981) (citing Aetna Life Ins. Co. v.

26  Haworth, 300 U.S. 227, 239-40 (1937)). The Act does not require a stricter showing of

27

28

1   justiciability than the Constitution does. <u>Societe de Conditionnement</u>, 655 F.2d at 942.

2   Furthermore, issuing a judgment in a case without an actual controversy is an advisory

3   opinion, which is prohibited by Article III of the United States Constitution. <u>Hillblom v.</u>

4   <u>United States</u>, 896 F.2d 426, 430 (9th Cir. 1990). The current standard for declaratory

5   judgment is "whether the facts alleged, under all the circumstances, show that there is a

6   substantial controversy, between the parties having adverse legal interests, of sufficient

7   immediacy and reality to warrant the issuance of a declaratory judgment." <u>Document</u>

8   <u>Security Systems Inc. v. Alder Technologies, Inc.</u>, (Dist ct for W Dist of NY 2008)

9   (citing <u>MedImmune, Inc. v. Genentech, Inc.</u>, 127 S.Ct. 764, 771 (2007). Finally, the

10  Declaratory Judgment Act provides that, "in a case of actual controversy, any court

11  within its jurisdiction...may declare the rights...of any interested party." <u>MedImmune,</u>

12  <u>Inc. v. Genentech, Inc.</u>, 549 US 118.

13      Plaintiff has elected not to assert claims 1-3 of the '884 utility patent in this case

14  and therefore no substantial controversy of sufficient immediacy and reality to warrant

15  the issuance of a declaratory judgment exists. Plaintiff has brought a suit for infringement

16  wherein it has only asserted claims 4 and 5 of the '884 utility patent. Plaintiff has clearly

17  disclosed to Defendants, according to Patent Local Rules, that the allegations of

18  infringement are confined to claims 4 and 5 of the '884 utility patent in its Infringement

19  Contentions. Thus, Plaintiff and Defendants are not "parties having adverse legal

20  interests" with regard to claims 1-3 of the '884 patent. In addition, Plaintiff has shown

21  evidence of its intent to not bring an infringement action in regard to claims 1-3 of the

22  '884 patent, because it has declined to pursue such claims in the instant action. The Court

23  in <u>MedImmune</u> has specifically stated that an actual controversy must exist to issue a

24  declaratory judgment. Here, Plaintiff has brought an infringement asserting claims 4 and

25  5 of the '884 patent but not asserting claims 1-3. As a result, no actual controversy exists

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

1    sufficient to provide the Court discretion to grant a declaratory judgment in regard to

2    claims 1-3 and no subject matter jurisdiction is present under FRCP 12(b)1.

3        In <u>Sony Elecs., Inc. v. Guardian Media Techs., Ltd.</u>, the court determined that

4    Sony and Guardian had adverse positions at the time of the complaint. 497 F. 3d 1271,

5    1283 (Fed.Cir.2007). The court explained that because Guardian asserted that Sony owed

6    it royalties based on specific past and ongoing activities and because Sony countered that

7    it had a right to engage in those activities without a license, there was an actual

8    controversy within the meaning of the Act.

9        In this case, Plaintiff has not threatened to sue for infringement of claims 1-3 of

10   the '884 patent directly or indirectly. Plaintiff has instead brought a suit that excludes

11   claims 1-3 and only asserts claims 4 and 5 of the '884 patent. Further, not only has there

12   been no threat but a complaint for patent infringement of the very same patent has been

13   asserted, here Plaintiff's assertion of claims 4-5 of the '884 patent, but no such assertion

14   of claims 1-3 of the '884 patent. In fact, the time for amendments to Plaintiff's pleadings

15   has expired in accordance with the Court's Case Management Order, Document 20, filed

16   on February 21, 2008. Finally, there have been no recent communications from Plaintiff

17   offering to license patent claims 1-3 or demanding royalties for such claims since a

18   previous settlement agreement and temporary license was granted. Plaintiff, in this case,

19   has not taken an adverse position against Defendant with regard to claims 1-3 of the '884

20   patent and therefore Plaintiff respectfully requests that Defendant's Counterclaim as to

21   claims 1-3 of the '884 be dismissed.

22       The court in <u>Document Sec. Sys. v. Adler Techs., Inc.</u> explained that "...the

23   Supreme Court [has] rejected the "reasonable apprehension" test in favor of a test

24   focusing on the "totality of the circumstances." 2008 U.S. Dist. LEXIS 15744 (W.D.N.Y.

25   Feb. 29, 2008). (See <u>MedImmune, Inc. v. Genentech, Inc.</u>, 127 S.Ct. 764, 771, 774; see

26   also <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1380 (Fed.Cir.2007)

1    (Following <u>MedImmune</u>, Federal Circuit recognized that Supreme Court did not approve

2    of its reasonable-apprehension-of-suit test)). Specifically, in <u>SanDisk</u>, the court noted that

3    "The Supreme Court's opinion in <u>MedImmune</u> represents a rejection of our reasonable

4    apprehension of suit test." <u>SanDisk</u> 480 F.3d 1372, 1380.  Although the standard for

5    jurisdiction under the Declaratory Judgment Act has changed from the "reasonable

6    apprehension test" to the "totality of the circumstances" test, <u>SanDisk</u> and its progeny

7    still adhere to the fundamental requirement that there be an actual controversy as stated in

8    the Article III of the U.S. Constitution and the Declaratory Judgment Act.  As further

9    outlined in <u>SanDisk</u>, the issue was whether the actions of the Plaintiff and Defendant

10   gave rise to an actual controversy within the meaning of 28 U.S.C. § 2201(a) of the

11   Declaratoy Judgment Act. <u>SanDisk</u> 480 F.3d 1372, 1377.  In that case, Plaintiffs

12   demanded royalties based on patent infringement determinations and Defendants

13   continued their conduct and refused to pay. *Id*. at 1375-1376. The court held that it had

14   jurisdiction. *Id*. at 1383.

15        In <u>Sandisk</u>, however, no lawsuit for infringement was ever brought. Alternatively,

16   the Plaintiff in this case has actually sued Defendants for infringement of claims 4 and 5

17   of its '884 patent, thereby creating an actual controversy between the Plaintiffs and the

18   Defendants only with regard to the asserted claims 4 and 5 of the '884 patent.

19   Conversely, there is no actual controversy between Plaintiff and Defendants in regard to

20   claims 1-3 because Plaintiff has not sued Defendant for infringement of claims 1-3 of the

21   '884 patent and may be claim precluded from so doing. Therefore, given the

22   circumstances in this case, where only claims 4 and 5 are at issue, the court lacks

23   jurisdiction under the Declaratory Judgment Act to hear matters concerning claims 1-3 of

24   the '884 patent, which are not at issue.  Under the totality of the circumstances, the facts

25   here point to a dismissal of Defendant's Counterclaim as to claims 1-3 of the '884 patent

26   because no actual controversy exists as to those claims.  Plaintiff has specifically elected

27

28

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

*Matlock Law
Group, P.C.*

1   not to assert the claims and may be claim precluded from pursuing claims 1-3 of the '884

2   patent in the instant action.

3       An actual controversy sufficient to support the Article III justiciability

4   requirement to bring a declaratory judgment has further been determined to require

5   certain factors including the presence of an imminent injury, the need to obtain patent

6   certainty, and the possibility of future litigation. <u>Teva Pharaceuticals. v. Novartis</u>, 482

7   F.3d 1330, 1341-45 (Fed.Cir.2007).

8       In <u>Teva Pharmaceuticals</u>, the Court considered whether a claim of patent

9   infringement could reasonably be asserted if a person not licensed by the owner engaged

10  in the manufacture, use or sale of products covered by the patent claims. Here, Plaintiff's

11  claims 1-3 of the '884 patent could not reasonably be asserted against Defendant for at

12  least two reasons. First, Plaintiff has actually asserted this patent against the Defendant

13  in this action and not asserted claims 1-3, instead electing to only assert claims 4-5 of the

14  '884 patent. Plaintiff could not reasonably amend its complaint to add these patent

15  claims because the time for such amendments has expired in accordance with the Court's

16  Case Management Order, Document 20, filed on February 21, 2008. Further, Plaintiff

17  may likely be claim precluded under principles of res judicata from asserting these

18  additional claims 1-3 against the Defendant for the underlying alleged infringement

19  conduct of the '884 patent since Plaintiff has only pleaded facts to support an alleged

20  infringement of claims 4-5 of the '884 patent. The Court also considered Defendant's

21  need for patent certainty. In the instant action, Plaintiff has deliberately chosen not to

22  assert claims 1-3 of the '884 patent and only pursued its complaint with respect to claims

23  4-5 of the '884 patent. As to claims 1-3 of the '884 patent, there is now total certainty

24  that such claims will not be asserted in this action for the alleged occurrences of

25  infringing conduct. Finally, as to the possibility of future litigation, Plaintiff may be

26  claim precluded from asserting a claim of infringement for this occurrence of conduct

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA

Hatliff Law
Group, PC.

1  and therefore has no possibility of future litigation under these facts.  Further, no

2  declaration of non-infringement under these facts would make Defendant's assurances of

3  possible litigation any more certain because such a declaration would be strictly limited

4  to the underlying facts herein.  As to invalidity, Defendant has no right to assert a request

5  for invalidity for a scope greater than that which has been asserted by the Plaintiff outside

6  of its right to pursue a Request for Reexamination with the USPTO.  Here, it would make

7  for an imprudent use of the Court's resources to review such a question of validity

8  beyond the scope asserted by Plaintiff since Defendant has an adequate alternate remedy

9  available to pursue.   Overall, under the <u>Teva Pharmaceuticals </u>factors, Defendants fall

10  short of showing facts sufficient to find an actual controversy under the meaning of the

11  Declaratory Judgment Act, 28 U.S.C. § 2201(a) and Article III justiciability principles.

12      Therefore, Defendant's Counterclaim for invalidity and non-infringement of

13  Plaintiff's '884 patent should be dismissed in regards to unasserted claims 1-3 because

14  Defendants have failed to meet the requirements of the Declaratory Judgment Act and no

15  subject matter jurisdiction exists within the meaning of FRCP 12(b)1.

16  **CONCLUSION**

17      For the foregoing reasons, the Court should dismiss Defendants' Counterclaims,

18  with regard to claims 1-3 of Plaintiff's '884 utility patent, for lack of subject matter

19  jurisdiction because Defendants have failed to show an "injury in fact" as required for

20  standing to bring an action for declaratory judgment. Also, the Court should dismiss

21  Defendants' Counterclaims in regard to patent claims 1-3 of the '884 patent for lack of

22  subject matter jurisdiction because Defendants have not met the requirements of the

23  Declaratory Judgment Act, 28 U.S.C. § 2201 nor met the requirements as outlined in the

24  controlling cases of this Court because no actual controversy is present with respect to

25  claims 1-3 of the '884 patent.  Plaintiff therefore respectfully requests that Defendant's

26  Counterclaims only as to claims 1-3 of the '884 patent be dismissed at the Court's earliest

27

28

Matbak Law
Group, P.C.

1    convenience and that the Court's scheduled Claim Construction Hearing of May 28, 2008

2    be stayed pending a hearing on the herein submitted Motion to Dismiss to prevent

3    duplicating valuable Court resources.

4

5

6    Dated May 2, 2008

7                                                    Respectfully Submitted,

8

9

10                                                   ANNE-LEITH MATLOCK
                                                     Attorneys for the Plaintiff
11                                                   The Tonytail Company, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Matlock Law
Group, PC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION TO DISMISS
DEFENDANTS RITE AID AND CONAIR'S COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
Case No.3:07-cv-05895-WHA