1  THOMAS F. FITZPATRICK
   GOODWIN PROCTER LLP
2  135 Commonwealth Drive
   Menlo Park, California 94025
3  Telephone:  650-752-3100
   Facsimile:  650-853-1038
4  E-Mail:  TFitzpatrick@goodwinprocter.com

5  Attorneys For Defendants
   CONAIR CORPORATION and RITE AID HDQTRS. CORP.

6

7

8              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
9                 **SAN FRANCISCO DIVISION**

10  THE TONYTAIL COMPANY, INC.,                Case No.    3:07-cv-05895-WHA

11              *Plaintiff,*                    **DEFENDANTS CONAIR**
                                               **CORPORATION'S AND RITE AID**
12          v.                                 **HDQTRS. CORP.'S RESPONSE TO**
                                               **PLAINTIFF'S OPENING CLAIM**
13  CONAIR CORPORATION, SCUNCI INT'L,          **CONSTRUCTION BRIEF**
    LTD., RITE AID HDQTRS. CORP., L&N
14  SALES & MARKETING, INC., and DOES, 1 –     Date:   May 28, 2008
    10, inclusive,                             Time:   1:30 p.m.
15                                             Dept:   Courtroom , 19th Floor
                *Defendants.*                  Judge:  Hon. William H. Alsup
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 3

    A.    Regardless of the Construction of Any One Disputed Term, the
          Claims of the '884 Patent Cannot be Construed to Cover the Device of
          the Prior Art Brown '211 Patent ...................................................................... 3

    B.    All of the Parties' Claim Construction Disputes Involve the Meaning
          of the Claim Term "Synthetic Hair Fiber Ends Joined to the Elastic
          Band Ends to Form a Closed Loop" ................................................................. 4

    C.    The '884 Patent Discloses One and Only One Embodiment of the
          Claimed Invention and Its Claim Scope Is Properly Limited to the
          Disclosed Embodiment ..................................................................................... 6

    D.    Tonytail's Opening Claim Construction Brief Cites Inadmissible and
          Irrelevant Extrinsic Evidence .......................................................................... 8

          1.    Tonytail's "Illustrative Aids" Are Inadmissible and Deceptive ............. 9

          2.    Tonytail's Reliance on a 2008 Dictionary is Misplaced ...................... 10

    E.    Tonytail's Proposed Constructions Thwart the Patentee's Own Stated
          Purpose for the Claimed Invention ................................................................ 10

          1.    The "elastic band" of the claimed device must be construed to
                have two ends "not joined to one another" ........................................... 11

          2.    The term "synthetic hair fibers having an appearance similar to
                the ponytail and having a pair of synthetic hair fiber ends"
                means synthetic hair fibers whose two ends are not joined to
                one another ........................................................................................... 13

          3.    According to the patentee's own words, the claim term "the
                synthetic hair fiber ends joined so that the elastic band ends" must
                be limited to a device "where one of the elastic band ends is
                permanently joined with one of the synthetic hair fiber ends,
                and the other of the elastic band ends is permanently joined
                with the other of the synthetic hair fiber ends." ................................... 13

                a)    Tonytail's Claim Differentiation Argument is Meritless ......................... 14

          4.    The construction of the claim term "covering the elastic band
                with the synthetic hair fibers so that the outward appearance of
                the device is formed solely by the synthetic hair fibers…" must
                be considered in the context of the whole claim ................................. 17

**TABLE OF CONTENTS(con't)**

<u>Page</u>

5.    Defendants' construction of "...encircling the ponytail with the device by inserting the ponytail through the closed loop of said device…" prevents confusing the term "device" with "elastic band"........................................................................................................18

F.    To the Extent The Court Addresses The Design Patents, Defendants' Constructions Should be Adopted ............................................................19

1.    The Design Patents Should Be Construed............................................19

2.    Tonytail's Unnecessary Description of Each and Every Figure in the Design Patents Should Be Disregarded .......................................20

3.    Tonytail's Proposed Constructions are Unintelligible...........................20

4.    Tonytail's Proposed Constructions Impermissibly Reference A Variety of Features Nowhere Found in the Figures ...............................21

5.    The Court Should Adopt Defendants' Proposed Constructions............21

III.    CONCLUSION ..................................................................................................22

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*ADT Corp. v. Lydall, Inc.,*
   159 F.3d 534 (Fed Cir. 1998) ..................................................................................... 16

5

*Alan Tracy, Inc. v. Trans Globe Imports, Inc.,*
6      60 F.3d 840 (Fed. Cir. 1995) ...................................................................................... 19

7

*Anderson Corp. v. Fiber Composites LLC,*
   474 F.3d 1361 (Fed. Cir. 2007) ................................................................................... 15

8

*Autogiro Co. of America v. United States,*
9      384 F.2d 391 (Ct. Cl. 1967) ......................................................................................... 15

10

*Contessa Food Prods., Inc. v. Conagra, Inc.,*
   282 F3d 1370 (Fed. Cir. 2002) .................................................................................... 19

11

*Curtiss-Wright Flow Control v. Velan, Inc.,*
12     438 F.3d 1374 (Fed. Cir. 2006) ................................................................................... 15

13

*DSU Medical Corp. v. JMC Co., Ltd.,*
   471 F.3d 1293 (Fed. Cir. 2006) ..................................................................................... 5

14

*Durling v. Spectrum Furniture,*
15     101 F.3d 100 (Fed. Cir. 1996) ..................................................................................... 19

16

*Elmer and HTH, Inc. v. ICC Fabricating, Inc.,*
   67 F.3d 1571 (Fed. Cir. 1995) ..................................................................................... 19

17

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
18     234 F.3d 558 (Fed. Cir. 2000) ....................................................................................... 8

19

*Gemstar-TV Guide International, Inc. v. International Trade Commission,*
   383 F.3d 1366 (Fed. Cir. 2004) ..................................................................................... 7

20

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.,*
21     450 F.3d 1350 (Fed. Cir. 2006) .............................................................................. 15, 16

22

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
   433 F.3d 1373 (Fed. Cir. 2006) ................................................................................... 13

23

*Markman v. Westview Instruments,*
24     517 U.S. 370 (1996) ....................................................................................................... 9

25

*Modine Mfg. Co. v. United States Int'l Trade Comm'n,*
   75 F.3d 1545 (Fed. Cir. 1996) ....................................................................................... 8

26

*O.I. Corp. v. Tekmar Co.,*
27     115 F.3d 1576 (Fed. Cir. 1997) ..................................................................................... 8

28

- iii -

1

**TABLE OF AUTHORITIES (con't)**

2

<u>Page</u>

3

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 10

4

*PODS, Inc. v. Porta Stor, Inc.,*
   484 F.3d 1359 (Fed. Cir. 2007) ................................................................................. 16

5

6

*Tandon Corp. v. U.S. Int'l Trade Comm'n,*
   831 F.2d 1017 (Fed. Cir. 1987) ................................................................................. 14

7

*Tegal Corp. v. Tokyo Electron Am., Inc.,*
   257 F.3d 1331 (Fed. Cir. 2001) ................................................................................. 10

8

9

*Wang Lab., Inc. v. Am. Online, Inc.,*
   197 F.3d 1377 (Fed. Cir. 1999) ................................................................................... 8

10

**Statutes**

11

35 U.S.C. § 112 ................................................................................................................. 7

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Tonytail's proposed constructions[1] and its attacks on Defendants' proposed constructions run contrary to the intrinsic evidence.  Because their infringement case depends on it, Tonytail ignores clear Federal Circuit precedent in its attempt to:

- Re-draft the claims of the '884 Patent;
- Re-write the specification of the '884 Patent;
- Re-state the patentee's representations during prosecution; and
- Re-draw the diagrams in the '884 Patent.

For example, Tonytail attempts to re-draft the key phrase to be construed in this case: "the synthetic hair fiber ends joined to the elastic band ends" to form a closed loop.  The correct construction of this phrase is limited to a device "where in one of the elastic band ends is permanently joined with one of the synthetic hair fiber ends, and the other of the elastic band ends is permanently joined with the other of the synthetic hair fiber ends" to form single unbroken ring.  This is what the specification teaches and what the inventor represented to the Patent Office.  Tonytail, in contrast, proposes a construction where the elastic band ends are selectively or temporarily joined to the synthetic hair fiber ends to "take on a closed loop shape,"  Tonytail's Brief at 12, 16.  Tonytail's suggestion that "to form a closed loop" should be construed as vaguely as "to take on a closed loop shape" is squarely contradicted by how the inventor used this term in the specification and during prosecution.

Tonytail attempts to re-draft the specification of the '884 Patent by erroneously telling the Court that the terms chosen by Conair and Rite Aid are not in the specification.  For example, Tonytail

---

[1] Tonytail has also asserted two design patents:  U.S. Patent No. D453,239 and D413,693.  Defendants limited their Opening Brief to the five agreed upon claim terms for construction and added that, to the extent the Court was willing to construe the claim of U.S. Patent No. D453,239, Defendants included their proposed construction for that claim.  Plaintiffs' Opening Brief included constructions for both design patents and an additional term from the '884 Patent.  Mindful of the Court's rule that the parties were limited to six claim terms Defendants do not suggest the Court should entertain more than six claim terms Defendants include brief responses to each of Plaintiff's constructions only in the event the Court accepts argument on each.

1   tells the Court that Defendants' suggested construction of a "closed loop" as an unbroken or

2   continuous "ring" is "a term not found anywhere in the patent," Tonytail's Brief at 18.  Tonytail is

3   wrong.  The patent states: "[e]lastic bands are generally in the shape of a <u>ring</u>," at Col. 1, lines 22 – 23

4   (emphasis added), and "the elastic band portion forms a <u>continuous</u> loop," at Col. 3, line 8 (emphasis

5   added).  What is not disclosed in the patent specification is any shape other than a continuing ring.

6          Moreover, Tonytail's proposed construction requires the Court to ignore the patentee's

7   significant statements made on the face of the patent and during prosecution.  For example, Tonytail's

8   proposed construction would permit claims 4 and 5 of the '884 Patent to read on devices described in

9   U.S. Patent No. 5,899,211 to Brown ("the Brown '211 Patent") – prior art that the patentee explicitly

10  and unequivocally disavowed.  The motivation behind Tonytail's strategy to ignore the patentee's

11  compelling admissions is clear.  Not only are the accused products nearly identical to those disclosed

12  in the disavowed prior art Brown '211 Patent – the accused products are in fact manufactured *under a*

13  *license* to the Brown '211 Patent.  Accordingly, Tonytail *must* try to convince the Court to ignore the

14  patentee's own words and construe the claims to cover devices like those disclosed in the Brown '211

15  Patent.

16         Further, Tonytail physically <u>re-draws the figures of the '884 Patent</u>.  Tonytail's drawings

17  designated "Illustrative aids <u>based on</u> the '884 Patent" and "Depiction of the Conair/Scunci product"

18  are deceptive and inadmissible.  Tonytail's Brief at Attachment 5.  These drawings – found nowhere

19  in the '884 Patent – are the product of Tonytail's counsel's imagination and do not represent any

20  disclosed embodiment of the invention at issue.  As such, they are improperly presented in Tonytail's

21  Brief.

22         As described below, the Court would need to turn a blind eye to the invention's purpose and

23  the patentee's repeated statements in the patent and during prosecution to sustain Tonytail's claim

24  constructions.  Tonytail's attempt to craft claim constructions that write specific limitations out of the

25  claims, write specific disclaimers out of the patent, disregard the prosecution history and require new

26  supporting figures to be drawn, should be rejected.  Defendants' constructions, which are true to the

27  patent, its purpose, the file history and to established claim construction principles, should be adopted.

28

1

## II.    ARGUMENT

2

3
### A.    Regardless of the Construction of Any One Disputed Term, the Claims of the '884 Patent Cannot be Construed to Cover the Device of the Prior Art Brown '211 Patent

4

5
At the very least, the claim terms at issue must

6
be construed to exclude the device shown and

7
described in the prior art Brown '211 Patent (Fig. 1,

8
shown right, text added).    Notably, the accused

9
products, like the device of the Brown '211 Patent, do



10
not have a pair of elastic band ends joined to

11
corresponding synthetic hair fiber ends to form a

12
closed loop.  The Plaintiff proposes an unsupportable construction in a misguided attempt to broaden

13
the claim scope of the '884 Patent to cover the device described by the prior art Brown '211 Patent,

14
and by extension, the accused products.  The patentee's explicit disavowal of the Brown '211 Patent's

15
device – on the very face of the '884 Patent – could not be more plain:

16

17
> U.S. Pat. No. 5,899,211 to Brown discloses an apparatus and method for securing a ponytail.  Brown uses a device which employs an elastic loop which can secure around a ponytail, and a length of hair which is attached to the elastic loop at one end, but is free at its opposite end.

18

19
35

20
> While these units may be suitable for the particular purpose employed, or for general use, they would not be as suitable for the purposes of the present invention as disclosed hereafter.

21

22
40

## SUMMARY OF THE INVENTION

23

24
The '884 Patent, Col. 1, lines 31 – 40.

25
As discussed in Conair and Rite Aid's Opening Claim Construction Brief, this Court need not

26
provide a construction that sets forth the metes and bounds of every disputed term in the '884 patent –

27
rather, to be in a position to resolve the question of infringement, the Court can merely conclude that

28

the '884 Patent does not include "a length of hair which is attached to the elastic loop at one end, but is free at its opposite end." Col. 1, lines 34 – 35.  This construction is supported by the patentee's own statements in the specification and prosecution history.    Since claims 4 and 5 of the '884 Patent cannot, as a matter of law, be construed to cover a ponytail binding device like the one disclosed in the Brown '211 Patent having elastic band attached to <u>only one</u> end of a length of synthetic hair, Plaintiff's proposed constructions must be rejected.

> **B.    All of the Parties' Claim Construction Disputes Involve the Meaning of the Claim Term "Synthetic Hair Fiber Ends Joined to the Elastic Band Ends to Form a Closed Loop"**

All of the parties' respective positions on claim construction depend directly or indirectly, on the construction of the claim term "synthetic hair fiber ends joined to the elastic band ends to form a closed loop."

Tonytail wants to improperly broaden the scope of the claim beyond the disclosure of the '884 Patent by asking the Court to construe the term "joined" to mean something other than "permanently joined" - despite the uniform descriptions of the patent's only embodiment.  Significantly, the patentee used the term "permanently joined" to distinguish the most fundamental description of the invention from the prior art.  Likewise, Tonytail wants to broaden its claim by defining "closed loop" as any "loop"-type shape ignoring every depiction and description of the loop as "closed."  Tonytail's construction flies in the face of the one and only embodiment of the invention described in the '884 Patent.  In contrast, Defendants' construction tracks the language of the specification of the '884 Patent.  Defendants' position mirrors the patentee's intent, as graphically shown with Figs. 1 and 2 of the '884 Patent, (shown below, text added).    Specifically, "[a] pair of connectors are used to <u>permanently join</u> each one of the elastic band ends **12E** to one of the hair fiber ends **12S.** <u>Accordingly, the synthetic hair fibers **14** and elastic band **12S** together form a closed loop,</u>" Col. 2, lines 29 – 31 (emphasis added).



FIG. 1

FIG. 2

The Federal Circuit's decision in *DSU Medical Corp. v. JMC Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006) is particularly instructive in this case.  In *DSU*, the Court applied the context of the specification to affirm summary judgment of noninfringement of some claims calling for "[a] guard slidably enclosing a sliding assembly comprising a needle and a winged needle hub . . ." *Id.* at 1300. The district court concluded that this claim language required that a guard <u>permanently</u> contain the needle assembly.  Affirming, the Federal Circuit noted that the claim language expressly called for the needle to be part of the sliding assembly.  Further, "[i]n the context of an invention 'for locking a needle in a shielded position as the needle is removed from a patient,' that language suggests constant shielding or covering of the sharp . . . [T]he specification conveys the concept of a permanent cover for the needle," *Id.* (emphasis added).

Like the patent in *DSU*, the '884 Patent describes in detail exactly how the patentee envisioned the elastic band ends to be permanently joined to the synthetic hair fiber ends, *i.e.*, ". . . using heat, adhesives, chemicals, mechanical friction, or any other suitable means," Col. 2, lines 50 – 53.  Indeed, the specification uses the word "<u>fused</u>" interchangeably with "<u>joined</u>."  *See* Col. 2, line 49.  Thus, the specification of the '884 Patent clearly conveys the concept of elastic band ends permanently joined to

corresponding synthetic hair fiber ends. Tonytail's proposed claim construction (that the "closed loop" need not be permanently closed) is unsupportable, and indeed, directly contrary to the specification's teachings.

Tonytail directly contradicts the patentee's own words to expand the scope of the claim to cover the accused products. In one example, Tonytail's Brief states: "[t]he combination of [Defendants'] proffered terms, when read in context of the rest of the claim, would require that the band ends and the synthetic hair fiber ends <u>form a circular object that is uninterrupted or continuous</u>. The result would read in <u>a narrowing limitation</u> superimposing a temporal requirement having a similar effect to that of reading the . . . term permanently into [the claim]," Tonytail's Brief at 16 (emphasis claimed). Yet, this so-called "narrowing limitation" was exactly the intent of the patentee who in fact <u>used the word "continuous" to describe the "closed loop"</u> in the patent itself. The specification of the '884 Patent states: "the elastic band portion forms <u>a continuous loop</u> with the less stretchable synthetic hair fibers. . . ," Col. 3, lines 7 – 9 (emphasis added). Accordingly, in light of the weight of the intrinsic evidence, Defendants' proposed construction – which uses the patentee's own words in the context of the invention – should be adopted.

### C.    The '884 Patent Discloses One and Only One Embodiment of the Claimed Invention and Its Claim Scope Is Properly Limited to the Disclosed Embodiment

The '884 Patent describes a ponytail binding device and a method for using the device. The entirety of the specification's teachings regarding the structure of the device is found in only two places in the patent: (1) Col. 1, lines 53 – 57 and (2) Col. 2, lines 24 – 32. Both of these descriptions teach a hair binding device having an elastic band joined to synthetic hair fibers with a pair of connectors to form a closed loop. These sections are reproduced below for the Court's convenience.

> The invention is a ponytail binding system, for use by a person having a ponytail end, using a device comprising synthetic hair fibers joined to an elastic band to form a closed loop. The synthetic hair fibers are joined to the elastic band with a pair of connectors.

Col. 1, lines 53 – 57.

1

2

3

4

5

6

     FIG. **1** illustrates a device for binding a ponytail **10**, comprising an elastic band **12**, and a group of synthetic hair fibers **14**. The elastic band **12** has a pair of elastic band ends **12**E. The synthetic hair fibers **14** are all of substantially the same length, and collectively have a pair of synthetic hair fiber ends **14**E. A pair of connectors **16** are used to permanently join each one of the elastic band ends **12**E to one of the hair fiber ends **14**E. Accordingly, the synthetic hair fibers **14** and elastic band **12**S together form a closed loop.

7

8

Col. 2, lines 24 – 32.

9

10

11

12

13

    No other embodiment is taught or even contemplated by the actual, literal disclosure of the patent. This is confirmed by the figures, as each and every one of Figs. 1 – 4 of the '884 Patent visually depict a hair binding device having an elastic band joined to synthetic hair fibers with a pair of connectors to form a closed loop. This is also confirmed by the patentee's own words in the prosecution history of the patent.

14

15

16

17

18

19

20

    Both of the descriptions cited above teach: (1) an elastic band; (2) joined by connectors; to (3) synthetic hair fiber ends; to (4) form a closed loop. No alternate embodiments are included or imagined. A patent application – by statute – must contain a specification which has a written description of the invention and the manner and process of making and using it <u>in such full, clear, concise, and exact terms</u> as to enable any person skilled in the art to which it pertains to make and use the same. *See* 35 U.S.C. § 112. This portion of the specification would fall short if another embodiment was intended.

21

22

23

24

25

26

27

28

    Tonytail argues that Defendant's proposed construction impermissibly includes structural limitations "created from the language of the preferred embodiment," and cites the Federal Circuit's ruling in *Gemstar-TV Guide International, Inc. v. International Trade Commission*, 383 F.3d 1366 (Fed. Cir. 2004) as support. Defendants' proposed construction does indeed include language representative of the one embodiment disclosed in the specification. However, this is appropriate under Federal Circuit precedent and the facts of *Gemstar* are readily distinguishable from the present case. While *Gemstar* stands for the proposition that claims should not be limited to <u>a preferred</u> embodiment, it does not address the scenario where the patent discloses <u>one and only one</u>

- 7 -

1   embodiment.  In such cases, the Federal Circuit has repeatedly held that it is appropriate – indeed,

2   necessary – to construe the claims in light of the disclosed embodiment.  According to the Federal

3   Circuit, one purpose for examining the specification is to determine if the patentee has limited the

4   scope of the claims.  *See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997) (limiting

5   claims because the specification described only non-smooth or conical passages and distinguished

6   over the prior art based on these characteristics); *Wang Lab., Inc. v. Am. Online, Inc.*, 197 F.3d 1377,

7   1382-83 (Fed. Cir. 1999) (limiting claims to the only embodiment described, a character-based

8   protocol, and specifically not encompassing a bit-mapped protocol); *Modine Mfg. Co. v. United States*

9   *Int'l Trade Comm'n*, 75 F.3d 1545, 1551 (Fed. Cir. 1996) *abrogated on other grounds, Festo v.*

10  *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) ("[W]hen the preferred

11  embodiment is described in the specification as the invention itself, the claims are not necessarily

12  entitled to a scope broader than that embodiment.").

13      Here, the specification of the '884 Patent describes one and only one embodiment of the device

14  used in the method of claim 4.  The device is consistently and repeatedly described in the specification

15  and each and every figure.  The '884 Patent teaches one skilled in the art one <u>and only one</u>

16  embodiment of the ponytail binding device, and thus, its claims are properly limited to the same.

17  Accordingly, Defendants proposed construction properly accurately reflects the scope of the disclosed

18  invention.

19      **D.    Tonytail's Opening Claim Construction Brief Cites Inadmissible and Irrelevant**
        **Extrinsic Evidence**
20

21      Lacking any genuine intrinsic evidence to support its claim construction proposals, Tonytail's

22  Brief instead presents three irrelevant and inadmissible items of extrinsic "evidence:" (1) misleading

23  drawings nowhere found in the '884 Patent; (2) immaterial dictionary definitions from 2008; and (3)

24  unintelligible commentary regarding Tonytail's "products" in support of Tonytail's proposed design

25

26

27

28

1   patent constructions.[2]  These improper references should be disregarded by the Court for the following

2   reasons.

3                    **1.    Tonytail's "Illustrative Aids" Are Inadmissible and Deceptive**

4           First, and foremost, Tonytail's drawings designated "Illustrative Aids Based on the '884

5   Patent" and "Depictions of the Conair/Scunci Product" are deceptive and inadmissible.  Tonytail's

6   Brief at 12 and Attachment 5.  These drawings – found nowhere in the '884 Patent – are the product of

7   Tonytail's counsel's imagination and do not represent any disclosed embodiments of the invention at

8   issue.   Thus, they are improperly presented in Tonytail's Brief.

9           For example, Tonytail conjured up a new drawing, misleadingly referred to as "Figure A2."

10  Tonytail relies on "Figure A2" to support its construction of the claim term "…synthetic hair fibers

11  having an appearance similar to the ponytail and having a pair of synthetic hair fiber ends…,"

12  Tonytail's Brief at 12.  In particular, Tonytail states the new drawing illustrates "a possible practice of

13  the claimed method," Tonytail's Brief at 11 (emphasis added).  However, this "Figure A2" is not part

14  of the '884 Patent nor its prosecution history.  Even though Tonytail labeled "Figure A2" with

15  official-looking reference numerals, this figure (and the subject matter depicted therein) is nowhere

16  described in the '884 Patent's specification.  Certainly, Tonytail cannot claim that the inventor of the

17  '884 Patent prepared this drawing at the time the invention claimed in the '884 Patent was conceived.

18  Nor can Tonytail claim any of the drawings in Attachment 5 were examined by the PTO during

19  prosecution of the '884 Patent.  Indeed, none of the drawings in Attachment 5 were even included in

20  Tonytail's Identification of Extrinsic Evidence as required by the Court.  These new drawings are

21  nothing more than artful demonstratives designed to mislead the Court and thus, must be summarily

22  disregarded.

23          If, as *Markman* held, self-serving testimony from an inventor is not probative of the correct

24

25  _____

26  [2] Tonytail has asserted two design patents: U.S. Patent Nos. D453,239 and D413,693.  To the extent
    the Court is willing to construe the claims of the design patents, Defendants include their proposed
27  constructions of those claims.

28

1   claim construction, then litigation-inspired drawings of counsel which were not part of the intrinsic

2   record, and not available to the public to help explain the scope of the '884 Patent should be also

3   irrelevant in determining the scope of a claim.  What matters is what Tonytail told the PTO and the

4   world in the specification and the prosecution history.  Moreover, the drawings do not shed any light

5   on the meaning of the claim terms and thus should be disregarded during claim construction.

### 2.    Tonytail's Reliance on a 2008 Dictionary is Misplaced

7       Tonytail repeatedly cites inadmissible dictionary definitions from "Merriam-Webster's Online

8   Dictionary (2008)."  Since claims must be construed <u>as of the time of the invention</u>, dictionary

9   definitions published in 2008 are irrelevant to the claims of a patent filed eight years ago.  *Phillips v.*

10  *AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).  Accordingly, all definitions cited by

11  Tonytail from this reference should be disregarded.

### E.    Tonytail's Proposed Constructions Thwart the Patentee's Own Stated Purpose for the Claimed Invention

14      Although Tonytail's proposed constructions of the disputed claim terms in the '884 Patent are

15  enticingly simple, they should be rejected.  Tonytail's Brief repeatedly relies upon the oft-quoted

16  claim construction canon that claim terms must be construed according to their "ordinary and

17  customary meaning."  However, Tonytail neglects to address the corollaries to that canon – namely,

18  that the words used in the claims must be considered in context and are examined through the viewing

19  glass of a person skilled in the art.  *Tegal Corp. v. Tokyo Electron Am., Inc.,* 257 F.3d 1331, 1342

20  (Fed. Cir. 2001).  It is the use of the words in the context of the written description and customarily by

21  those skilled in the relevant art that accurately reflects both the "ordinary" and the "customary"

22  meaning of the terms in the claims of a patent.  Tonytail relies on newly imagined artistic figures and

23  rote readings of definitions (from 2008) that are wholly divorced from the context of Tonytail's patent.

24  Tonytail cannot simply take 2008 dictionary definitions of individual components of phrases and meld

25  them together to support a proper claim construction.  Instead, a court should look to the specification

26  and the prosecution history to arrive at a proper construction.

27

28

1

2

        **1.**      **The "elastic band" of the claimed device must be construed to have two ends "not joined to one another"**

3        Tonytail spends nearly three pages of its Brief arguing that the claim term "elastic band"

4 should be construed as a "band" rather than a "cord." This seems excessive, since Tonytail's own

5 proposed construction in the Corrected Joint Claim Construction and Prehearing Statement proposes

6 that "elastic band" and "elastic strip" can be used interchangeably. Corrected Joint Claim

7 Construction and Prehearing Statement at 5. In any event, this claim term should simply be construed

8 to cover some sort of elastic material formed into a cord, strip, string, etc., that has two ends.

9        Whether the Court construes the claim to recite an "elastic band" or "elastic cord" – the claim

10 should be construed to be limited to a device where the elastic material's ends are not joined to one

11 another. Tonytail argues that this construction impermissibly imports limitations from the "preferred

12 embodiment" of the specification into the claim. Tonytail is incorrect. Neither the claim language,

13 nor the specification permits such an interpretation.

14        With respect to the claim language, claim 4 requires that the "device" is comprised of "elastic

15 band ends" and synthetic hair fiber ends." The synthetic hair ends must be joined to the elastic band

16 ends "to form a closed loop." Physically, this can only happen by forming a continuous ring, as

17 proposed by defendants, or by forming a figure 8, which forms two closed loops. The claim language

18 also requires that when a ponytail is inserted "through the closed loop" then the device must "encircle"

19 the ponytail. The device (i.e., the elastic band ends and synthetic hair fiber ends) only encircles the

20 ponytail if the device is a continuous ring in which the ends of the elastic bands are not connected to

21 one another but are connected to the synthetic hair fiber ends. If the device is a figure 8 formed by

22 connecting the ends of the elastic band together and the ends of the synthetic hair together, and the

23 ponytail is inserted into either of the closed loops of the figure 8, then only one part of the device and

24 not the entire device is "encircling" the ponytail.

25        With respect to the specification, the '884 Patent's specification describes not a "preferred"

26 embodiment as Tonytail suggests – but one and <u>only</u> one embodiment of a hair binding device used to

27 perform the method of independent claim 4.

28

DEFENDANTS CONAIR CORPORATION'S AND RITE AID HDQTRS. CORP.'S RESPONSE TO TONYTAIL'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 3:07-cv-05895-WHA

1

2

3

4

5

6

7

8

9

FIG. 1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tonytail's proposed construction would render the claim invalid for lack of written description and enablement, and thus, should be rejected. The entire written description in the specification detailing the method at issue is only three paragraphs long, and explicitly states: "Fig. 3 illustrates the binding device **10** <u>in use</u> binding the hair of a person. . . ," Col. 2, lines 57 – 58 (emphasis added; shown below). The hair binding device of reference numeral **10** (shown left) has an elastic band **12** whose two ends **12E** <u>are not joined to one another</u>, but rather, "[a] pair of connectors **16** are used to <u>permanently join each one of the elastic band ends **12E** to one of the hair fiber ends **14E**</u>. Accordingly, the synthetic hair fibers **14** and elastic band **12S** together form a closed loop." Col. 2, lines 31 – 32 (emphasis added). As a result, this claim term cannot be construed as Tonytail proposes – to cover a hair binding device having an elastic band whose ends "serve to join together and encircle" because, according to the specification's teaching, the ends must be permanently joined to the synthetic hair fiber ends. Additionally, Tonytail's so-called specification "support" for its construction describing band ends coming together and "encircling" a ponytail, in fact refers to the <u>device as a whole</u>, *i.e.*, an elastic band joined to synthetic hair fibers. Col. 2, 59 – 63 ("[t]he <u>binding device</u> has been placed over the ponytail by inserting the ponytail end through the closed loop of <u>the binding device</u> so that <u>the binding device</u> fully encircles the ponytail.") (emphasis added).

Second, there is simply no disclosure in the specification for a hair binding device having an elastic band or cord whose ends are joined to one another as Tonytail urges. Tonytail's proposed construction: "…an elastic strip whose two ends serve to join together and encircle…" finds no support in the specification (and thus, lacks written description support) and is flatly contrary to



FIG. 3

the <u>one and only one embodiment of the device described in the specification</u>.  Claims are not

necessarily limited to preferred embodiments, but, "if there are no other embodiments, and no other

disclosure, then they may be so limited."  *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d

1373, 1375 (Fed. Cir. 2006).  As the Federal Circuit elegantly stated: "One does not receive

entitlement to a period of exclusivity for what one has not disclosed to the public . . .  <u>But merely</u>

<u>calling an embodiment preferred, when there are no others, does not entitle one to claims broader than</u>

<u>the disclosure</u>."  *Id.*  The disclosure describes one device whose band ends are not joined to one

another but are instead joined at both ends to corresponding synthetic hair fiber ends.  The claims must

therefore be limited to such a device.

> **2.      The term "synthetic hair fibers having an appearance similar to the ponytail and having a pair of synthetic hair fiber ends" means synthetic hair fibers whose two ends are not joined to one another**

Like the "elastic band…" claim term discussed above, the "synthetic hair fiber ends having an

appearance similar to the ponytail and having a pair of synthetic hair fiber ends" term should be

construed to have limited claim scope because of statements made by the patentee in the specification

and during prosecution.  Specifically, the term should be limited to "synthetic hair fibers [having an

appearance similar to the ponytail] whose two ends are not joined to one another."  The specification

of the '884 Patent discloses <u>no embodiment</u> where the synthetic hair fiber ends are joined to one

another.  In fact, every depiction and description found in the patent compels this claim construction.

*See*, *e.g.,* Figs. 1 – 4 of the '884 Patent.  As a result, this claim term cannot be construed to cover a

hair binding device having synthetic hair ends joined to one another.

> **3.      According to the patentee's own words, the claim term "the synthetic hair fiber ends joined to the elastic band ends" must be limited to a device "where one of the elastic band ends is permanently joined with one of the synthetic hair fiber ends, and the other of the elastic band ends is permanently joined with the other of the synthetic hair fiber ends."**

Tonytail argues that introducing the word "permanently" into this claim term is impermissible.

Yet, "permanently" is the patentee's own term, added during prosecution and relied upon to

distinguish the most fundamental description of the invention from the prior art.  The patent not only

uses the term "permanently" in the prosecution, but every depiction of the invention uniformly shows

1  elastic band ends permanently joined – or "fused" in the patentee's words – to corresponding synthetic

2  hair fiber ends. *See* Figs. 1 – 4 of the '884 Patent. In both the specification of the '884 Patent and

3  prosecution history, the claimed device requires <u>permanently joining the elastic band ends to the</u>

4  <u>synthetic hair fiber ends,</u> Col. 2, lines 29 – 31 (emphasis added). If the elastic band was not

5  permanently attached to both the synthetic hair fiber ends, the claimed device would cover the prior

6  art device of the Brown '211 Patent; a device where an elastic band is permanently attached <u>to only</u>

7  <u>one end</u> of a length of synthetic hair fibers. Ignoring this point, Tonytail states that it "seeks to

8  preserve the claim language." By "preserving" the claim language, Tonytail disregards the patentee's

9  uniform depiction and description of its own invention in both the specification and prosecution

10  history and in fact seeks to write out limitations from the claim.

11      The patentee's clear indications of claim scope as recited in the patent and the prosecution

12  history defeat Tonytail's cobbled together construction which is divorced from the specification and

13  reads the claims out of the context of the patent in which they appear. First, the patentee explicitly

14  disavowed the subject matter disclosed in the Brown '211 Patent, and thus, the claims cannot be

15  construed to cover the invention disclosed in Brown '211. Second, the patentee's own admissions

16  during prosecution <u>confirmed</u> its intent that the '884 Patent not cover the subject matter disclosed in

17  the Brown '211 Patent. In particular, the patentee amended its claims to <u>not</u> cover a ponytail holder

18  having an elastic band permanently attached <u>to only one</u> end of a length of synthetic hair. *See* Exhibit

19  E to the Fitzpatrick Declaration in Support of Conair and Rite Aid's Opening Claim Construction

20  Brief ("Fitzpatrick Decl."). According to the doctrines of prosecution disclaimer and specification

21  disavowal, Plaintiff's proposed construction must be rejected.

22          a)      **Tonytail's Claim Differentiation Argument is Meritless**

23      Tonytail argues that Defendants' proposed construction violates the doctrine of claim

24  differentiation. *See* Tonytail's Brief at 15. However, the doctrine of claim differentiation can not be

25  manipulated by a patentee to broaden claims beyond the scope that is supported by the specification.

26  *Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1024 (Fed. Cir. 1987) ("Whether or not

27  claims differ from each other, one can not interpret a claim to be broader than what is contained in the

28

1    specification and claims as filed.") The presumption that separate claims have different scope "is a

2    guide, not a rigid rule." *Autogiro Co. of America v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967).

3    In *Curtiss-Wright Flow Control v. Velan, Inc.*, 438 F.3d 1374, 1378 (Fed. Cir. 2006), the Federal

4    Circuit stated that claim differentiation is a "limited tool" that alone will not support a claim

5    construction that is at odds with the patent specification.    Moreover, even if the doctrine applied, it

6    creates no more than a presumption.    The clear disavowal of claim scope in the specification is more

7    than sufficient to overcome any presumption that would arise from claim differentiation.    *See*

8    *Anderson Corp. v. Fiber Composites LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007) (holding that

9    statements in specification and prosecution history overcame any presumption from claim

10   differentiation.)

11        The Federal Circuit recently rejected a claim differentiation argument similar to the one

12   Tonytail makes.  In *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354 (Fed. Cir.

13   2006), the Court limited the claim language to the only embodiment disclosed in the specification,

14   even though the language of a dependent claim was different from the independent claim in question.

15   Specifically, the Court interpreted "host interface" to mean a "direct parallel bus interface," which

16   Inpro admitted would avoid infringement.  The Court noted that the inventors had disparaged several

17   interfaces in the Background of the Invention section of the patent-in-suit.  The Court acknowledged

18   Inpro's arguments of claim differentiation, but responded by stating that "describing claim elements or

19   limitations in different words does not invariably change the scope of the claim.  The boundaries of

20   patented inventions are set forth in the claims, construed in light of the description in the specification,

21   as well as by the prior art and the prosecution history." *Id.*  The *Inpro II* Court reviewed the

22   specification and prosecution history and concluded that the patentee had distinguished known

23   connections, such as serial connections, and had reiterated a direct connection to a bus structure.  The

24   Court also discussed prosecution history of the parent application of the patent-in-suit, which further

25   emphasized a direct connection to a bus structure. *Id.* at 1357.

26        Like the patent-in-suit in *Inpro II*, the '884 Patent discloses only one embodiment.  Like the

27   patentee in *Inpro II*, the patentee here distinguished known devices in the "Background of the

28

- 15 -

1   Invention" section of the '884 Patent – specifically, the device described in the Brown '211 Patent

2   having an elastic band joined to only <u>one end</u> of a length of synthetic hair fibers.  Moreover, the

3   specification of the '884 Patent reiterates that that the elastic band ends are "<u>permanently joine[d]</u>" to

4   corresponding synthetic hair fiber ends.  Col. 2, lines 29 – 32 (emphasis added).  Finally, like the

5   prosecution history examined by the Federal Circuit in *Inpro II*, the prosecution history here not only

6   emphasizes that the claimed device is one "where one of the elastic band ends is permanently joined

7   with one of the synthetic hair fiber ends, and the other of the elastic band ends is permanently joined

8   with the other of the synthetic hair fiber ends," it <u>states it verbatim</u>.  *See* Fitzpatrick Decl., Exhibit E.

9   Accordingly, Tonytail's claim differentiation argument must fail.

10      Even more recently, the Federal Circuit said in *PODS*, "[c]lear assertions made during

11   prosecution in support of patentability, <u>whether or not actually required to secure allowance of [any</u>

12   <u>one] claim</u>, may also create an estoppel," because "[t]he relevant inquiry <u>is whether a competitor</u>

13   <u>would reasonably believe that the applicant had surrendered the relevant subject matter</u>."  *PODS, Inc.*

14   *v. Porta Stor, Inc.,* 484 F.3d 1359, 1368 (Fed. Cir. 2007) (citation omitted) (emphasis added)

15   (alterations in original).  Accordingly, even though the patentee expressly limited the non-asserted

16   apparatus claim 1 to a device having elastic band ends permanently joined to corresponding synthetic

17   hair fiber ends, this limitation should be applied to the same term as used in method claim 4.

18      The Federal Circuit's analysis in *PODS* is not unique.  In *ADT Corp. v. Lydall, Inc.,* 159 F.3d

19   534, 541 (Fed Cir. 1998), the Federal Circuit affirmed a district court's construction limiting a claim's

20   scope according to the structural description found in both the specification and a non-asserted claim.

21   *ADT* argued that the district court erroneously incorporated into the definition of "embossments" the

22   structural feature of "point contact" from non-asserted claim 11 of the patent-in-suit.  *ADT* claimed the

23   "point contact" described in the specification was "simply a preferred embodiment."  *Id.*  Lydall

24   responded that the mere fact that non-asserted claim 11 specifically states that the embossments are in

25   "point contact" does not preclude the construction of the asserted claim as including the limitation.

26   The Federal Circuit agreed.  Here, one skilled in the art would certainly understand the closed loop

27   formed by "a pair of synthetic hair fiber ends" joined to "a pair of elastic band ends" described in

28

1   method claim 4 to be the same "closed loop" formed by "one of the elastic bands" "permanently

2   "joined with one of the synthetic hair fiber ends and the other of the elastic band ends" "permanently

3   joined with the other of the synthetic fiber ends" described in apparatus claim 1.

4        Accordingly, claims 4 and 5 of the '884 Patent must be limited to a method for using a hair

5   binding device as described in claim 1 (and the specification) where – in the patentee's own words –

6   both of the elastic bands ends are joined to corresponding synthetic hair fiber ends.

7           **4.    The construction of the claim term "covering the elastic band with the
                    synthetic hair fibers so that the outward appearance of the device is
8                   formed solely by the synthetic hair fibers…" must be considered in the
                    context of the whole claim**

9

10       This claim term must be construed in the context of the overall claim and the specification of

11  the '884 Patent.  The specification of the '884 Patent states:

12       the synthetic hair fibers 14 may be pulled over the elastic band to conceal the
         elastic band and the connectors, so that the outward appearance of the binding
13       device 10 is provided solely by the synthetic hair fibers, as seen in FIG. 4.

14  Col. 3, lines 15 – 19.  Fig. 4 is reproduced below.  Tonytail's proposed construction "…so that the

15  outward appearance of the device is formed <u>singly, to the exclusion of all else</u>, by the hair fibers,"

16  lacks any support whatsoever in the intrinsic evidence.  Nevertheless, Defendants' will not dispute

17  Tonytail's unnecessary and redundant inclusion of the limitation "singly, to the exclusion of all else"

18  as a replacement for the claim term "solely."  However, this step must be construed in the context of

19  the claim and the description provided in the specification quoted above, namely, the device – formed

20  by permanently joining the elastic band ends to the synthetic hair fiber ends – is doubled around the

21  ponytail, and thereafter, the synthetic hair fibers are arranged to cover the elastic band.

22       Plaintiff's proposed construction appears to

23  divorce the synthetic hair fibers from the "closed

24  loop" structure.  This construction is unsupportable.

25  The claimed step of "covering the elastic band with

26  the synthetic hair fibers so that the outward

27  appearance of the device is formed solely by the

28



FIG. 4

1   synthetic hair fibers" cannot be construed as separate and apart from the limitations set forth in the

2   earlier portion of the claim, in particular, "synthetic hair fibers joined to elastic band ends to form a

3   closed loop." Since the earlier portion of the claim refers to the "closed loop," the step of "covering

4   the elastic band with synthetic hair fibers" should be construed as "adjusting the ring so that the

5   outward appearance of the ring is formed only by synthetic hair fibers."

6            **5.    Defendants' construction of "...encircling the ponytail with the device by
                  inserting the ponytail through the closed loop of said device…" prevents
7                 confusing the term "device" with "elastic band"**

8            As an initial matter, this claim term is not a jointly proposed term for construction by the

9   Court. To the extent the Court considers this claim term, it should be construed in the context of the

10  rest of the claim. Without question, the context of the claim requires that the "closed loop" referred to

11  in this portion of the claim mean the same "closed loop" described earlier in the claim, namely, a

12  closed loop formed by joining two elastic band ends to two corresponding synthetic hair fiber ends.

13  Defendants' proposed construction of the term "encircling the ponytail with the device by inserting the

14  ponytail through the closed loop of said device…" is "inserting the ponytail end through the ring so

15  that the ring encircles the ponytail." This construction does not unnecessarily limit the term as

16  Plaintiff suggests, but rather, highlights the distinction between "the device" as a whole, and "the

17  elastic band."

18           This claim term requires a ponytail to be inserted through the "closed loop of said device." As

19  discussed above, "the closed loop" is formed as a result of joining two elastic band ends to two

20  corresponding synthetic hair fiber ends. For the sake of clarity, Defendants have referred to the

21  resulting structure as a continuous (as taught by the patentee) or unbroken ring. Tonytail cannot

22  reasonably claim the accused products infringe this claim unless it urges that "the closed loop" in this

23  instance means *any* closed loop shape. Indeed, Tonytail will argue that the "closed loop" in this

24  instance means "an elastic band." It does not. In the context of the claim, the "closed loop" referred

25  to in this claim term is the same closed loop described earlier in the claim. Accordingly, this claim

26  term must include the same "closed loop," or continuous ring, as described earlier in the claim.

27

28

1

**F.      To the Extent The Court Addresses The Design Patents, Defendants'**
**         Constructions Should be Adopted**

2

3

**1.        The Design Patents Should Be Construed**

4      Plaintiff's insistence that the design patents need not be construed by the Court is contrary to

5  law.  In a suit for design patent infringement, a trial court should construe the design patent's claim in

6  accordance with more than a decade of Federal Circuit precedent.  *Durling v. Spectrum Furniture*, 101

7  F.3d 100 (Fed. Cir. 1996); *Alan Tracy, Inc. v. Trans Globe Imports, Inc.*, 60 F.3d 840 (Table) (Fed.

8  Cir. 1995); *Elmer and HTH, Inc. v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995).  Plaintiff's

9  argument to the contrary is incorrect.

10     Tonytail improperly cites amicus briefs filed in *Egyptian Goddess, Inc. v. Swisa. Inc.* (Fed. Cir.

11  2008) as an "authority" in support of its argument.  The *Egyptian Goddess* case is currently pending

12  before the Federal Circuit for an *en banc* determination of certain questions related to design patents.

13  As this Court is well aware, the amicus briefs filed in *Egyptian Goddess* – or any case, for that matter

14  – are simply not binding precedent.  What is binding precedent, however, is the Federal Circuit's

15  holding in *Elmer*.  Accordingly, Plaintiff's argument – having no authority to support it – should be

16  rejected.  Unless and until the Federal Circuit reverses *Elmer* and its progeny, a district court should

17  construe design patent claims.

18     The Federal Circuit said in *Durling*:

19         [u]nlike the readily available verbal description of the invention and of the
           prior art that exists in a utility patent case, a design patent case presents
20         the judge only with visual descriptions.  Given the lack of visual language,
           the trial court must first translate these visual descriptions into words. . .
21         From this translation, the parties and appellate courts can discern the
           internal reasoning employed by the trial court to reach its decision as to
22         whether or not a prior art design is basically the same as the claimed
           design
23
24  101 F.3d at 103 (emphasis added).  Thus, in interpreting the scope of a design patent, the trial judge

25  should consider the features shown in the figures and any prosecution history to produce a clear claim

26  construction for the jury and the parties.  *Id.*  The Federal Circuit has long held that the requirement

27  for claim construction extends to design patents.  *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282

28  F.3d 1370, 1376 (Fed. Cir. 2002).  A proper claim construction will ensure that all features of the

drawings are included, preventing the design patent from being construed too broadly. *Id.* Indeed, a claim construction at this stage in the proceedings will permit the Court to resolve this dispute by summary judgment.

### 2. Tonytail's Unnecessary Description of Each and Every Figure in the Design Patents Should Be Disregarded

Tonytail submits descriptions of each and every figure of both of the design patents as its "constructions." This approach is unnecessary and should not be adopted. The Court may prepare a written description of the overall "visual impression" of the drawings without resorting to painstakingly describing every view presented by the figures of the design patents.

### 3. Tonytail's Proposed Constructions are Unintelligible

It is impossible to determine from even the fairest reading of Tonytail's proposed constructions what ornamental features Tonytail claims. For example, Tonytail's proposed construction of the '239 Patent states:

> with respect to the front view of the ponytail holder, the ornamental design is constructed with a feature as claimed by the patentee in its claim and related Fig. 1 such that an ordinary observer intending to purchase such a device, supposing it to be the Tonytail D453,239, if only looking at the front view in its typical configuration when used, i.e., worn by a user, would find its rear view and front view to be a mirror image, as to its ornamental aspect of looking like natural hair.

Tonytail's Brief at 21. Tonytail's proposed construction of the '693 Patent is even less clear:

> with respect to the left side elevation view of the ponytail holder, the right side elevation view is a mirror image of such an ornamental feature as claimed by the patentee such that an observer is induced to purchase one with a substantially similar design, here an ornamental design that looks like natural hair, supposing it to be the Tonytail D453,239[sic] if only looking at the left side elevation view because the device when configured as used, i.e., worn by a user[sic] looks substantially similar to[sic] in the eyes of an ordinary consumer, giving such attention as an ordinary consumer gives when purchasing such a design, since functional features, such as a magnetic pouch or elastic band, used to encircle the design, will be overlapping and will appear [sic] substantially the same to the consumer.

Tonytail's Brief at 25.[3]  Tonytail's proposed constructions do not provide any reader a description of

---

[3] Even though Tonytail – in every proposed construction – refers to the '239 Patent, these references can only be assumed to be typographical errors.

1  the visual impression made by the figures of the patents.  Tonytail's description will not aid the Court,

2  the parties, or a jury.  Accordingly, Tonytail's proposed constructions should not be adopted as the

3  Court's construction.

### 4.    Tonytail's Proposed Constructions Impermissibly Reference A Variety of Features Nowhere Found in the Figures

6          Tonytail's proposed constructions reference numerous items nowhere shown in any of the

7  figures.  For example, Tonytail mentions "products," "product packaging," "magnetic pouch,"

8  "natural hair of a ponytail holder," "magnetic pouch housing," "clamped housings," "sewn magnetic

9  housing," "a common magnetic pouch," "consumers," "sales personnel," "Tonytail hair ponytail

10 band," and a "retail location."  Each and every one of these references, and any other references to

11 features not shown in the figures, should be disregarded by the Court.  Tonytail's commentary related

12 to products, product packaging, and mistakes by consumers have no place in determining the design's

13 visual impression.

### 5.    The Court Should Adopt Defendants' Proposed Constructions

15         The ornamental, as opposed to functional, features of each design patent can be most easily

16 identified, described and understood by adopting defendants' descriptions.

17         Conair and Rite Aid propose the following construction:



U.S. Patent    Sep. 7, 1999    Sheet 2 of 2    Des. 413,69?

FIG.2

FIG.3

FIG.4

20 1. The '693 Patent claims a hair band in the shape of a

21 continuous ring.  The hair band has multiple, textured ridges

22 of varying heights.  The ridges are formed by layering

23 approximately ten generally oval shaped bands adjacent to

24 one another.



U.S. Patent    Jan. 29, 2002    Sheet 1 of 2    US D453,239 S

Fig. 1



Fig. 2

2.  The '239 Patent claims a ponytail holder in the shape of a single, unbroken ring having a top (or upper) half, a bottom (or lower) half, and two small, identical cylinders connecting the top half of the ring to the bottom half of the ring.  The top half of the ring is made up of multiple fibers.  The fibers are collectively shaped into a semi-circle.  The bottom of the ring is formed by a cord shaped into a reciprocal semi-circle.

Each of the two cylinders connecting the top half of the ring to the bottom half of the ring has a top opening, a bottom opening, and a portion that generally tapers from the top opening towards the bottom opening.

The fibers of the top half of the ring are collected together at either end of the semi-circle.  The fibers at one end of the semi-circle are inserted into a top opening of one of the two cylinders.  The fibers at the other end of the semi-circle are inserted into the top opening of the other of the two cylinders.  Similarly, one end of the cord is inserted into a bottom opening of one of the two cylinders.  The other end of the cord is inserted into the bottom opening of the other of the two cylinders.

## III.    CONCLUSION

Tonytail's Opening Brief confirms that it has proposed expansive constructions divorced from the context of the claims to include what was explicitly and unequivocally disavowed in the specification and prosecution history.  Conair's and Rite Aid's proposed constructions stay true to the principles of claim construction, the purpose of the patent, the context of the claims and the guidance provided by the specification and prosecution history.  Accordingly, the Court should adopt Conair's and Rite-Aid's proposed constructions.

- 22 -

1

2   Dated: May 16, 2008                    CONAIR CORPORATION AND RITE AID
                                           HDQTRS. CORP.

3                                          By its attorneys,

4
                                           /s/ Thomas F. Fitzpatrick
5                                          Thomas F. Fitzpatrick
                                           tfitzpatrick@goodwinprocter.com
6                                          GOODWIN PROCTER LLP
                                           135 Commonwealth Drive
7                                          Menlo Park, California 94025
                                           Tel.:  650-752-3144
8                                          Fax:  650-853-1038

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS CONAIR CORPORATION'S AND RITE AID HDQTRS. CORP.'S RESPONSE TO TONYTAIL'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 3:07-cv-05895-WHA