1  Matlock Law Group, PC
   Anne-Leith Matlock (SBN 244351)
2  K. Brian Matlock, SBN 243812
   1485 Treat Blvd., Suite 200
3  Walnut Creek, CA 94597
   Telephone: (925) 944-7131
4  Facsimile: (925) 944-7138

5  Attorney for Plaintiff,
   Counterdefendant,
6  THE TONYTAIL COMPANY, INC.

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN FRANCISCO DIVISION**

11

12 THE TONYTAIL COMPANY, INC., a          Case No.: 3:07-cv-05895-WHA
   Delaware Corporation,
13                                         **TONYTAIL COMPANY INC.'S REPLY IN**
14              Plaintiff, Counterdefendant,   **OPPOSITION TO DEFENDANTS'**
                                           **CONAIR CORPORATION'S AND RITE**
15         v                               **AID HDGTRS CORP.'S RESPONSE BRIEF**

16 CONAIR CORPORATION, SCUNCI INT'L,
   LTD., RITE AID CORPORATION., L&N
17 SALES & MARKETING INC., and 1-10,      **Date:   May 28, 2008**
   inclusive,                             **Time:   1:30 p.m.**
18                                         **Dept.:  Courtroom 9, 19th Floor**
19              Defendant, Counterclaimant.  **Judge:  Honorable William H. Alsup**

20

21

22

23

24

25

26

27

28

Matlock Law
Group, PC.

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT .............................................................................................. 2

   A.   The court can find that an element of a claim found in the Brown '211 Patent is
        also found in the '884 Patent without finding that the device disclosed in the Brown
        '211 Patent reads on the '884 Patent. ................................................... 2

   B.   The sum total of Defendants' proposed constructions is designed to improperly
        narrow claims 4-5 to the use of a permanently formed ring despite language to the
        contrary contained in the claims, the specification and in the prosecution history. 3

   C.   The '884 Patent describes more than one embodiment. ............................... 5

   D.   Plaintiff's Extrinsic Evidence ............................................................ 7

        1. Plaintiff's illustrative aids are admissible. ....................................... 7

        2. ... The differences in definitions among Plaintiff's 2008 dictionary definitions and
        prior definitions are immaterial and do not materially affect Plaintiff's arguments.
        ......................................................................................... 7

   E. Plaintiff's construction takes into account the ordinary and customary meaning as a
      person having the ordinary skill in the art would understand the meaning in context
      of the claims, specification and prosecution history. .................................. 7

        1. ..... The term "elastic band" cannot be construed to include the narrow term "not
        joined to one another." ........................................................ 8

        2. The term "synthetic hair fibers having an appearance similar to the ponytail and
        having a pair of synthetic hair fiber ends" does not mean that the two ends are not
        joined together. ................................................................ 9

        3. . Patentee's own words in the intrinsic record do not amount to a clear disavowal
        of the claim scope as argued for in Defendants' construction adding the limitation
        "permanently." ............................................................... 10

        4. ....... Absent a clear disavowal of claim scope, the doctrine of claim differentiation
        requires the rejection of Defendants' proposed construction. ...................... 11

        5. .... The intrinsic evidence demonstrates that the synthetic hair fibers are adjusted
        independently from the remainder of the device. ................................. 12

        6. .. Defendants' construction "...inserting the ponytail end through the ring so that
        the ring encircles the ponytail..." improperly severs the elastic band from the
        device and adds two extraneous limitations. ..................................... 12

Matlock Law
Group, PC.

7. .........In properly exercising its considerable latitude to review the Design Patents during trial, the Court can properly apply Gorham's ordinary observer test. ....... 13

8. .... Assuming the Court decides to address the Design Patents during the hearing, Defendants applied the wrong test and applied the wrong test incorrectly. ........... 14

9. ....Plaintiff's figure descriptions are not  written descriptions of the overall visual impression but rather the proper application of the Gorham test. .......................... 15

III.    CONCLUSION ................................................................................................ 15

Matlock Law
Group,PC.

PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' RESPONSE BRIEF                    Case No. 3:07-cv-05895-WHA

1

2

## **TABLE OF AUTHORITIES**

ADT Corp. v. Lydall, Inc., 159 F.3d 534 (Fed Cir. 1998) ...................................................... 11, 12

Bernhardt v. Collezione, 386 F.3d 1371, 1383 (Fed. Cir. 2004).................................................. 13

Contessa Food Products v. Conagra, 282 F.3d 1370, 1377 (Fed. Cir. 2002). ............................ 14

Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1381 (Fed. Cir. 2006) ....... 11

Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172 (Fed Cir. 2005).................... 14

Demarini Sports v. Worth, Inc., 239 F.3d 1314, 1326 (Fed. Cir. 2001).................................... 10

DSU Medical Corp. v. JMC Co., Ltd., 471 F.3d 1293 (Fed. Cir. 2006) .................................. 4, 5

Gemstar-TV Guide Int'l Inc., v. Int'l Trade Comm., 383 F.3d 1352 ...................................... 6, 7

Gorham Co. v. White, 81 U.S. 511, 527 (U.S. 1872)...................................................... 13, 14, 15

Inpro II Licensing, S.A.R.L v. T-Mobile, USA, Inc., 450 F.3d 1350, 1354 (Fed. Cir. 2006) ... 11

JVW Enterprises, Inc. v. Interact Accessories, 424 F.3d 1324 (Fed. Cir. 2005)] ........................ 9

LizardTech, Inc. v. Earth Res. Mapping, Inc., 424 F.3d 1336 (Fed. Cir 2005) .......................... 9

LizardTech, Inc. v. Earth Res. Mapping, Inc., 433 F.3d 1373, 1375 (Fed. Cir. 2006). ............... 9

Phillips v. AWH Corp., 415 F.3d at 1303, 1322 (Fed. Cir. 2005)................................................. 7

PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359 (Fed. Cir. 2007).................................................. 11

Superguide Corp. v. DirecTV Enters., 358 F.3d 870,881 (Fed. Cir. 2004)................................ 10

Wang Labs., Inc. v. Am. Online, Inc., 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) ....................... 6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Matlock Law
Group, PC.*

1    **I.    INTRODUCTION**

2          The weight of the intrinsic record in this case does not support Defendants'

3    constructions. Defendants Conair and Rite Aid's Response to Plaintiff's Opening Claim

4    Construction Brief ("Defendants' Response Brief") is a continuation of Defendants' attempt to

5    add extraneous limitations to claims 4-5 contrary to the ordinary meanings and context of the

6    claims, the specification and the prosecution history. Defendants ignore rules regarding claim

7    context, differentiation, and disavowal. Instead, Defendants (i) misinterpret patent examiner

8    and patentee language in order to add limitations based on elements not referenced during

9    prosecution; (ii) force a strained reading of the specification in order to add limitations; (iii)

10   rely on out of context readings of patent sections; (iv) argue that two clearly different terms are

11   the same term; and (v) provide constructions contrary to the actual practice of the device. This

12   misguided approach fills the three main arguments forming Defendants' position.

13         Defendants' first main argument is the erroneous idea that the '884 Patent disclosed

14   only a single embodiment. The Defendants often cite rules based on cases where there is only a

15   single embodiment but fail to demonstrate how the '884 patent is a single embodiment case. In

16   an attempt to improperly narrow the scope of claims 4-5, Defendants heavily focus on one

17   section of the specification. [*See* Defendants Opening Claim Construction Brief ("Defendants

18   Opening Brief") at 12, 14, 19, and 20) and "Defendants' Response Brief" at 5, 6, 12, 14, 16,

19   and 17.] Relying on this focused approached, Defendants virtually ignore the remaining

20   sections of the patent, including the Summary of the Invention section. Additionally,

21   Defendants employ the same approach when reading the prosecution history. By focusing on

22   "permanently" in claim 1, Defendants ignore the relevant prosecution history: claims 4-5 were

23   allowed <u>first</u> and claim 1 was <u>subsequently amended</u> to add "permanently" only for claim 1.

24         Defendants' second main argument is the exclusion of an element found in one of the

25   claims of U.S. Patent No. 5,899,211 ("the Brown '211 Patent"). Specifically, Defendants argue

26   that the unattached synthetic hair fiber end of the Brown '211 Patent cannot be in the '884

27   Patent. However, nowhere in the prosecution history is that element referenced. Instead,

28   Defendants employ a strained reading of the '884 Patent's Background section referring to the

*Matlock Law*
*Group,PC.*

1  entire Brown '211 device to argue for a disavowal of the unattached synthetic hair fiber

2  element in that device. This runs contrary to the clear and deliberate disavowal requirement.

3      Defendant's third main argument is Defendants insistence to import "permanently"

4  from claim 1 to claim 4. Defendants' attempt to do so directly by adding the term in their

5  proposed construction and indirectly by offering the term "unbroken ring." However, these

6  constructions ignore the aforementioned prosecution history. Further, Defendants fail to

7  satisfactorily address the doctrines of claim disavowal and claim differentiation as roadblocks

8  to Defendants' construction. Instead, Defendants insist that the Court read two clearly different

9  terms, "joined" and "permanently joined," as being the same term. Given the fundamental

10  flaws of Defendants' core arguments, Defendants' constructions and arguments in response to

11  Plaintiff's constructions should be rejected.

12      With regard to U.S. Patent No. D453,239 ("the 'D239 Patent") and D413,693 ("the

13  D693 Patent") (collectively the "Design Patents"), Plaintiff respectfully reminds the Court that

14  the parties did not agree to construe two whole design patents at this time. Additionally, as

15  demonstrated below, whether or not the Court is required to construe the Design Patents during

16  the claim construction hearing is an open question of law. Defendants' own Markman-like

17  request for a written description exemplifies the confusion between utility and design patent

18  constructions. On the other hand, the Court has considerable latitude to construe the Design

19  Patents during trial. Given the unique differences between utility and design patent

20  methodologies, the Design Patents should be addressed during trial.

21  **II.    ARGUMENT**

    **A. The court can find that an element of a claim found in the Brown '211 Patent is**

22        **also found in the '884 Patent without finding that the device disclosed in the Brown**

23        **'211 Patent reads on the '884 Patent.**

24      Defendants' argument confuses elements of a device with the entire device. In

25  anticipation of their non-infringement argument, the Defendants conclude that the synthetic

26  fiber ends must be permanently joined to the elastic band ends. In support, Defendants argue

27  that an element in the Brown '211 patent (the unattached synthetic fiber end) should not be read

28  into the '884 Patent. *See* Defendants' Response Brief p3.

*Matlock Law*
*Group, PC.*

PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' RESPONSE BRIEF             Case No. 3:07-cv-05895-WHA

1    Defendants' argument confuses an element not discussed in the prosecution history (the

2    unattached synthetic fiber end) with the entire device disclosed in the Brown '211 Patent.

3    Defendants point to language in the Background section of the '884 Patent that describe the

4    Brown '211 device as not being suitable for the purposes of the '884 patent. Id. at p3.

5    Defendants also state that prosecution history supports the prior citation to the Brown '211

6    device as demonstrating a disavowal of the unattached synthetic fiber end element in the Brown

7    '211 patent.   However, the reference to the Brown '211 patent in the Background section

8    concerns the device as a whole. Further, the '884 Patent's prosecution history discusses only

9    an element of Brown: the synthetic hair fibers' appearance. Specifically, the Patent Examiner

10   in '884 referenced the Brown '211 Patent's element "synthetic hair fibers" for the "purpose of

11   having a natural look" into the Naidor '119 Patent (U.S. Patent No. 2,567,119). [See

12   Declaration of Anne-Leith Matlock in Support of Plaintiff's Response to Defendants' Opening

13   Brief ("Matlock Decl.") Exhibit C.] Additionally, this reference is reflected in patentee's

14   response and amendment. [See Matlock Decl. Exhibit D. (patent reflects examiner's rejection

15   in light of "Naidor in view of Brown.")] Therefore, the prosecution history cites the Brown

16   '211 Patent for an element's (the synthetic hair fibers) feature (having a natural look).

17   Consequently, absent is any mention of the synthetic hair fibers having an end that is

18   unattached. Defendants cannot argue that a person ordinarily skilled in the art would read the

19   prosecution history's reference to the natural look of the fibers in Brown '211 as meaning that a

20   synthetic hair fiber end cannot be attached. However, Defendants' argument confuses this

21   unmentioned element as being the same as the whole device and as a different element

22   discussed during prosecution. Consequently, Defendants' construction (an elastic band being

23   "attached to only one end of a length of synthetic hair") is unsubstantiated under the claims, the

24   specification, or the prosecution history. Thus, Defendants' construction cannot operate as a

25   clear disavowal. As a result, the Defendants' construction cannot stand.

26   **B.  The sum total of Defendants' proposed constructions is designed to improperly narrow claims 4-5 to the use of a permanently formed ring despite language to the contrary contained in the claims, the specification and in the prosecution history.**

27

28   Defendants want to add an extraneous limitation to the '884 Patent by requesting a

1  construction of the terms "joined" and "closed loop" to effectively mean "permanently joined"

2  and permanently closed loop ("unbroken ring").    In support, the Defendants' mischaracterize

3  the term "permanently joined" as being the "most fundamental description" of the invention.

4  Defendants' Response Brief at p4. Further, Defendants seek to read "permanently" into the

5  term "closed loop" by proposing the unsupported construction "unbroken ring." Id. at 4, 6.

6  However, Plaintiff's construction preserves the unambiguous language of claims 4-5.

7  Specifically, the term "permanently" is clearly absent in claims 4-5, the invention's

8  descriptions, and in the prosecution history concerning claims 4-5. Further, despite

9  Defendants' citation to Figs. 1 and 2 of the '884 patent (Id at 4, 5.), the '884 device does not

10  permanently maintain a perfect circular loop shape. Figs. 3 and 4 of the '884 patent

11  demonstrate that the closed loop joins the synthetic fiber ends and elastic band ends at the base

12  of the ponytail in order for the device to undergo "tensioning", and "doubling up." Matlock

13  Decl. Exhibit A 4:24. Therefore, the 884 Patent's figures, language and prosecution history

14  show that "joined" and "closed loop" are not limited to Defendants' narrow construction.

15      Faced with the clear exclusion of the termed "permanently" in claims 4-5, Defendants

16  rely on DSU Medical Corp. v. JMC Co., Ltd., 471 F.3d 1293 (Fed. Cir. 2006). Defendants'

17  Response Brief p5. Defendants use this case to argue that the patentee "envisioned" a concept

18  allowing "permanently" to limit claims 4-5 contrary to the weight of intrinsic evidence. Id.

19  Specifically, Defendants attempt to analogize DSU Med. Corp. to the current case concluding

20  that the '884 Patent's reference to "fused" in the preferred embodiment conveys the concept

21  "permanently joined." Id. at 5, 6. Defendants' strained analogy is misguided. In DSU Med.,

22  the issue was whether the term "slidably enclosing" included the "needle assembly" of a device

23  designed to reduce needle-stick injuries. DSU Med. Corp., at 1297, 1300. The Court found

24  that (i) express recitations of the needle being part of the assembly; (ii) the invention's context

25  suggested a constant needle covering; (iii) specification language emphasized a locked or

26  molded needle enclosure; and (iv) the patent figures demonstrated a permanent needle housing

27  all combine to convey the concept of a permanent cover for the needle. Id.

28      Unlike in DSU Med., the context of Defendants' citation of the term "fused" indicate

1   that the synthetic fiber ends need not be "fused directly" to the elastic band ends but rather may

2   utilize connectors. Matlock Decl. Exhibit A 2:52-54. Further, unlike the figures in <u>DSU Med.</u>

3   <u>Corp</u>, Fig. 2 of the '884 patent demonstrates that the synthetic fiber ends and the elastic bands

4   are not directly fused together. <u>Id.</u> Fig. 2. Finally, unlike the subject claim's express recitation

5   that the assembly include the needle in <u>DSU Med. Corp.</u>, only unasserted claim 1 of the '884

6   patent uses the term "permanently joined" whereas asserted claim 4 explicitly uses the word

7   "joined" without any similar modification. Given these important distinguishing factors,

8   Defendants' arguments based on <u>DSU Med. Corp.</u> fails in supporting Defendants' proposed

9   construction.

10       Despite the differences between the present case and <u>DSU Med. Corp.</u>, Defendants

11   again attempt to import "permanently" by proposing the construction "unbroken ring."

12   Specifically, Defendants rely on the single use of the term "continuous" in the Preferred

13   Embodiment section. Defendants Response Brief at 6. Defendants' focus on this term runs

14   contrary to intrinsic evidence. First, as previously discussed, Defendants err by focusing on the

15   preferred embodiment when the specification and claims discloses a broader embodiment.

16   [Plaintiff's Response Brief to Defendants' Opening ("Plaintiff's Response Brief") at 1-6, 17.]

17   Second, the Defendants' own dictionary definition of "continuous" includes "uninterrupted in

18   time." Declaration of Thomas F. Fitzpatrick in Support of Defendants' Brief Exhibit G. This

19   temporal limitation does not appear with claim 4 anywhere in the intrinsic record. Finally,

20   replacing the term "closed" with Defendants' term "unbroken" runs contrary to the repeated

21   use of "closed" to modify "loop" throughout the claims and specification. Matlock Decl.

22   Exhibit A 1:56, 58, 59; 2:32, 55, 61. Thus, "unbroken ring" (importing the same narrowing

23   limitation as "permanently") to claims 4-5 is unsupported by the weight of intrinsic evidence.

24       **C. The '884 Patent describes more than one embodiment.**

25       Defendants argue that the '884 Patent only disclosed one embodiment and cites two

26   paragraphs from the '884 specification in support. Defendants Response Brief p6. However,

27   Defendants cited language from the specification discloses <u>two different</u> embodiments.

28   Defendants' first cite the Summary of the Invention section of the '884 Patent whereas the

1    second citation refers to the Preferred Embodiments section. <u>Id.</u> at p 6, 7. The Preferred

2    Embodiments section explicitly uses the term "permanently" while the same term is notably

3    absent from the Summary of the Invention section. <u>Id.</u> Thus, the language Defendants' cite

4    from the Summary of the Invention section contemplates a <u>broader embodiment</u> than that found

5    in the Defendants' other cited language. Further, clear distinctions in the intrinsic evidence

6    disclose other embodiments: (i) claim 4 lacks the "permanently" limitation found in claim 1;

7    and (ii) Figure 3 of '884 patent discloses a joining of all the ends (elastic and fiber ends) where

8    as Figure 1 demonstrates a state prior to such joining. Nevertheless, Defendants' seek to inject

9    terms found in one part of the patent to other terms that clearly excludes them. In support of

10   this approach, Defendants argue 35 U.S.C. § 112's written description and enablement

11   requirements are not satisfied by embodiments not found in Defendants' cited language from

12   the specification. <u>Id.</u> at 7. However, as demonstrated, Defendants' two cited excerpts

13   contemplate two different embodiments: one with the "permanently" limitation and one

14   without. With the differences in these embodiments and the differences in claim 4 and claim 1

15   as indicated above, Defendants fail to explain how one ordinarily skilled in the art would not

16   understand how to make and use either of the embodiments described in Defendants' excerpts.

17       In forcing their single embodiment analysis to the '884 patent, Defendants' summarily

18   dismisses the Federal Circuit's ruling in <u>Gemstar-TV Guide Int'l Inc., v. Int'l Trade Comm.</u>,

19   383 F.3d 1352. <u>Id</u> at 7. Other than providing two excerpts from the '884 patent and

20   inappropriately concluding that the excerpts disclose only one embodiment, Defendants fail to

21   demonstrate how <u>Gemstar</u> is inapplicable. Instead, Defendants' cites cases where only a single

22   embodiment is disclosed. <u>Id.</u> at 8. However, these cases are distinguishable from the present

23   case. Representative of these cases is Defendants' cite to <u>Wang Labs., Inc. v. Am. Online, Inc.</u>,

24   197 F.3d 1377, 1382-83 (Fed. Cir. 1999). As previously discussed (<i>see</i> Plaintiff's Response

25   Brief p4), <u>Wang Labs</u> is distinguishable because the Federal Circuit found that a narrowing

26   definition was "typically" used to reference the questioned term. <u>Wang Labs</u> at 1381. Here, the

27   use of the term "permanently" is <u>atypical</u> as demonstrated by the abovementioned selective use

28   (or lack of use) throughout the intrinsic record. Instead, <u>Gemstar</u>'s rule, as cited by the

1  Defendants (Defendants' Response Brief p7) applies:  that claims should not be limited to a

2  preferred embodiment. <u>Gemstar</u> at 1366.  Since Defendants' ignore the clear distinction in

3  language of their cited excerpts and improperly narrow claims to one embodiment contrary to

4  <u>Gemstar</u>, Defendants' single embodiment argument and related constructions cannot stand.

**D.  Plaintiff's Extrinsic Evidence**

5  **1.  Plaintiff's illustrative aids are admissible.**

6  Plaintiff's illustrative aids found in Attachment 5 of Plaintiff's Opening Brief were

7  obtained during the course of discovery and are admissible pursuant to section 9 of Exhibit E to

8  the parties Corrected Joint Claim Construction and Prehearing Statement.

9  **2.  The differences in definitions among Plaintiff's 2008 dictionary definitions and prior definitions are immaterial and do not materially affect Plaintiff's**

10  **arguments.**

11  "A claim should not rise or fall based upon the preferences of a particular dictionary

12  editor, or the court's independent decision, uninformed by the specification, to rely on one

13  dictionary rather than another." <u>Phillips v. AWH Corp.</u>,  415 F.3d at 1303, 1322 (Fed Cir.

14  2005).  Defendants' attempt to exclude the cited 2008 dictionary definitions only serves to

15  distract from the merits of the case.  Defendants do not demonstrate how the definitions of

16  common and ordinary words like "band" and "solely" are different from their meanings eight

17  years ago.  In fact, a comparison of the 2008 definitions with prior definitions, including

18  definitions from Defendants' own cited dictionary, demonstrate no material changes among

19  definitions. *See* Declaration of Anne-Leith Matlock in Support of Plaintiff's Reply Brief

20  Exhibit A.  As such, Plaintiff's arguments are not materially affected.  Further, pursuant to

21  Defendants' Response Brief, Plaintiff's citation to "cord" and "solely" are no longer contested

22  by the Defendants. (*See* Defendants' Response Brief at p11, 17.)  Additionally, Plaintiff's

23  arguments utilize Defendants' own dictionary definitions of "unbroken," "ring," and

24  "continuous" to support Plaintiff's arguments. (*See* Plaintiff's Opening Brief at 16 and

25  Plaintiff's Response Brief at 17.)  Finally, as directed by <u>Phillips</u>, Plaintiff's arguments are not

26  solely based on dictionary definitions.  Rather, Plaintiffs consistently support their arguments

27  with the language and context of the claims, the specification, and the prosecution history.

28  **E.  Plaintiff's construction takes into account the ordinary and customary meaning as**

**a person having the ordinary skill in the art would understand the meaning in context of the claims, specification and prosecution history.**

Plaintiff's construction preserves unambiguous claim language while teaching the intended practice of claims 4-5. In so doing, the Plaintiff's construction is heavily supported by intrinsic evidence, particularly, (i) the language differences between claims 4 and 1; (ii) the language differences found throughout the specification; and (iii) the differences in terms as demonstrated by the prosecution history. As follows, emerging from the face of these differences are the clear ordinary and customary meaning of the terms, as a person ordinarily skilled in the art would understand these terms: such as "joined" and "permanently joined" having different meanings.

**1. The term "elastic band" cannot be construed to include the narrow term "not joined to one another."**

Defendants argument against Plaintiff's construction of Disputed Step 1 is based on the idea that the '884 device cannot encircle a ponytail if only a portion of the device performs the encircling. Defendants Response Brief p11. Defendants rely on this argument to support their construction that the elastic band ends cannot be joined. Id. Defendants are incorrect. As previously discussed herein (at p4), the '884 device does not permanently maintain a perfect circular loop shape during "tensioning" and "doubling up." *See* Matlock Decl. Exhibit A 4:22-24, Figs. 3 and 4. Further, the resulting loop caused by the "tensioning" and "doubling up" is later covered by the synthetic fibers. Id. at 4:26-28. Therefore, the encircling by the device is done by the elastic band portion of the device. Since Defendants' position (that a device cannot encircle unless the whole device enircles) is unsupported by a reading of the entire claim, Defendants' construction must fail. However, since the elastic band ends join to perform the abovementioned encircling, Plaintiff's construction which reflects this feature must stand.

In support of Defendants' argument, Defendants reiterate their position that the specification only discloses one embodiment. Defendants' Response Brief at p11. Further, Defendants use their single embodiment position to argue that Plaintiff's construction ("serve to join together and encircle") would render the claim invalid for lack of written description and enablement. In support, Defendants again point to language in the Preferred Embodiment section. However, as previously discussed herein (at p5), the weight of intrinsic evidence

Matlock Law
Group, PC.

1    demonstrates that the specification discloses more than one embodiment.

2         Without accounting for the disclosed embodiments, Defendants use their own finding of

3    a single embodiment in conjunction with the Federal Circuit's statement in LizardTech, Inc. v.

4    Earth Res. Mapping, Inc., 433 F.3d 1373, 1375 (Fed. Cir. 2006). *See* Defendants' Response

5    Brief p13. Notwithstanding the arguable position whether LizardTech dealt with principles of

6    claim construction or with the written description doctrine [see Id. at 1377, dissent discussing

7    the differences between seemingly contradictory rulings found in LizardTech, Inc. v. Earth Res.

8    Mapping, Inc., 424 F.3d 1336 (Fed. Cir 2005) and JVW Enterprises, Inc. v. Interact

9    Accessories, 424 F.3d 1324 (Fed. Cir. 2005)], Defendants citation to LizardTech does not apply

10   in this case. Defendants' citation refers to a single embodiment. Defendants' Response Brief p

11   13. However, as previously discussed by Plaintiff (*See* Plaintiff's Response Brief at 4-5), the

12   intrinsic evidence demonstrates a whole host of distinguishable factors from the line of single

13   embodiment cases utilized by the Defendants because the intrinsic evidence shows: (i) a

14   broader embodiment disclosed as "the invention" in the Summary of the Invention section; (ii)

15   the term "permanently" not being typically used in describing the invention; (iii) the patentee's

16   express statement that "permanently" only applies to claim 1; (iv) absence of any language

17   explaining the "permanent" attachment as being a "very important feature" of the invention;

18   and (v) the different embodiments disclosed by the actual practice of claims 4-5. Since

19   LizardTech does not apply because the '884 patent discloses more than one embodiment,

20   claims 4-5 cannot be limited to the embodiment taught by the Defendants' construction.

     **2.  The term "synthetic hair fibers having an appearance similar to the ponytail
21        and having a pair of synthetic hair fiber ends" does not mean that the two ends
22        are not joined together.**

     Defendants import much of their erroneous arguments from the elastic band term into

23
the synthetic hair fiber term. Specifically, Defendants argue that the '884 Patent does not

24
disclose a joining of the synthetic hair fiber ends as depicted in the patent's figures. However,

25
as previously discussed herein (at p5), the '884 Patent discloses more than one embodiment

26
which includes the embodiment required to "tension" and "double up" the device. *See* Matlock

27
Decl. Exhibit A 1:58; 2:64; and 4:24. This embodiment requires a joining of all the ends

28

1  (elastic band and synthetic fiber ends) as depicted in the '884 Patent Fig. 3. Id. at Fig. 3. As a

2  result of the actual language and depictions disclosed in the '884 Patent, this claim term cannot

3  be limited to where the synthetic hair ends join to one another without contradicting the

4  intended use of claims 4-5.

### 3. Patentee's own words in the intrinsic record do not amount to a clear disavowal of the claim scope as argued for in Defendants' construction adding the limitation "permanently."

7  As previously cited, a patentee's silence during prosecution does not indicate a clear

8  and deliberate disavowal of subject matter. Superguide Corp. v. DirecTV Enters., 358 F.3d

9  870,881 (Fed. Cir. 2004). Silence from the examiner or from the patentee is an improper basis

10  on which to construe a claim. Demarini Sports v. Worth, Inc., 239 F.3d 1314, 1326 (Fed. Cir.

11  2001). Defendants' addition of the word "permanently" into claims 4-5 ignores these claim

12  construction rules. Defendants attempt to utilize the '884 Patent and the prosecution history in

13  order to create a disavowal where the patentee was actually silent. Despite Defendants'

14  statement that "permanently" was used during prosecution, such was only in reference to claim

15  1. Both examiner and patentee's statements reflect the explicit use of the term "permanently"

16  with only claim 1 whereas claims 4-5 explicitly were allowed absent that term. *See* Matlock

17  Decl. Exhibit C and D. Further, Defendants mischaracterize the connections show in the '884

18  Patent as being "fused." As previously discussed herein (at p.4), the word "fused" was used to

19  describe one preferred embodiment <u>and</u> within that embodiment, the ends (elastic and synthetic

20  hair fiber) need not be directly "fused" together but may use connectors. *See* Matlock Decl.

21  Exhibit A 2:53-54. Thus, there is no clear disavowal allowing "permanently" to be added to

22  claims 4-5. As such, Plaintiff's preservation of claim 4's language "…the synthetic hair fiber

23  ends joined to the elastic band ends…" should be granted.

24  As a secondary argument, Defendants propose that the prosecution history disavowed

25  the subject matter disclosed in the Brown '211 Patent. However, as previously discussed

26  herein (at p3), Defendants confuse the prosecution history's reference to the Brown '211

27  Patent. What the prosecution history demonstrates is that the natural look feature of the

28  Brown's synthetic hair fiber was discussed in connection with the Naidor patent. (*See* Matlock

Decl. Exhibit C and D.)  Absent from the prosecution history is any reference to the unattached

synthetic fiber end appearing on the Brown '211 device.  Id.  Such silence cannot operate as a

clear and deliberate disavowal of subject matter.

### 4. Absent a clear disavowal of claim scope, the doctrine of claim differentiation requires the rejection of Defendants' proposed construction.

When applying claim differentiation to two *independent* claims, (i) claim differentiation

applies when a claim construction would render additional language in another independent

claim superfluous; and (ii) claim differentiation cannot act to broaden the claims beyond their

proper scope.  Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1381 (Fed.

Cir. 2006) (emphasis added).  Defendants make three arguments in support of their contention

that claim differentiation does not apply.  First, Defendants cite Inpro II Licensing, S.A.R.L v.

T-Mobile, USA, Inc., 450 F.3d 1350, 1354 (Fed. Cir. 2006) for the proposition that claim

differentiation does not apply where the patent disclosed only one embodiment.  Defendants'

Response Brief at 15.  Application of Inpro II here is misplaced.  As discussed herein (at pp5-7),

the entire intrinsic record discloses more than one embodiment.  Further, as previously

discussed by Plaintiff, Inpro II is distinguishable because (i) the '884 Patent disclosed both

broad (as disclosed in the Summary of the Invention section) and narrow embodiments (as

disclosed by the Preferred Embodiments section which Defendants' isolate) and (ii) nowhere in

the '884 Patent specification were Defendants' limitations described as a "very important"

feature.  Second, Defendants cite PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359 (Fed. Cir. 2007)

in support of their argument that a reasonable competitor reading the prosecution history would

inject the term "permanently" from claim 1 into claim 4.  However, as discussed in detail by

Plaintiff, PODS is distinguishable case because the term "permanently joined" from claim 1

and "joined" from claim 4 are clearly different terms.  See Plaintiff's Response Brief pp 12-13.

Further, Defendants fail to demonstrate how a reasonable competitor reading the prosecution

history where claims 4-5 were allowed using the term "join" would construe the term

"permanently joined" (added to claim 1 after claims 4-5) as being the same term.  Finally,

Defendants cite ADT Corp. v. Lydall, Inc., 159 F.3d 534 (Fed Cir. 1998) for their argument

that a person having the ordinary skill in the art would understand the "permanently joined"

1    structure in claim 1 as being equivalent to the "joined" structure in claim 4. Defendants'

2    Response Brief at 16-17. Although the Defendants' characterization demonstrates a structural

3    limitation found in one claim to limit the structure of another claim (*see* Defendants' Response

4    Brief at 16.), Defendants fail to mention the fact that the claim explicitly stating the structural

5    limitation, (claim 11 in ADT), was a <u>dependent claim</u> of claim 1 where the limitation was

6    imported. <u>ADT Corp. v. Lydall, Inc.</u> at 541. In the present case, claims 1 and 4 are two

7    <u>independent</u> claims. Therefore, there is a disconnect between claims 1 and 4 that was not

8    present in <u>ADT Corp.</u> Defendants should not be allowed to use <u>ADT Corp.</u> to create a bridge

9    between claims 1 and 4 where there is none.

10         **5.  The intrinsic evidence demonstrates that the synthetic hair fibers are adjusted independently from the remainder of the device.**

11         The claims and the specification teach that the synthetic hair fibers cover the

12    elastic band ends. As previously discussed, claim 4 teaches that the synthetic hair fibers are

13    adjusted around the stretchable elastic band. (*See* Plaintiff's Response Brief at p20.) Further,

14    Plaintiff's demonstrate that the specification discusses the adjustment of the synthetic fibers

15    apart from the elastic band. <u>Id.</u> Thus the entire device is not adjusted as Defendants suggest.

16    Since "unbroken ring" would require the entire device to be adjusted, Defendants' construction

17    cannot be adopted without contradicting the context of claim 4 and the specification.

18         **6.  Defendants' construction "...inserting the ponytail end through the ring so that the ring encircles the ponytail..." improperly severs the elastic band from the device and adds two extraneous limitations.**

20         Defendants' argue that their term "unbroken ring" serves to clarify the distinction

21    between the device as a whole and the elastic band. (*See* Defendants' Response Brief p18.)

22    Consequently, Defendants' construction severs the band from the device. To the contrary, as

23    previously discussed (at p8), the encircling of the ponytail by the device occurs via the elastic

24    band. Further, the "tensioning" around the ponytail is preformed by the elastic band (*See*

25    Matlock Decl. Exhibit A 1:46-49.) whereas the less stretchable synthetic hair fibers adjust

26    independently to cover the tensioned elastic bands. <u>Id.</u> at 1:61-45. Further, as discussed, the

27    terms "unbroken ring" would also add extraneous structural and temporal limitations. (*See*

28    Plaintiff's Response Brief p16-19.) Since Defendants' construction threatens to import

extraneous limitations to claim 4, such construction should be avoided.

### 7. In properly exercising its considerable latitude to review the Design Patents during trial, the Court can properly apply Gorham's ordinary observer test.

As an initial matter, Design Patents 'D239 and 'D693 were not jointly proposed terms for construction by the Court. In addition to being outside the five jointly submitted terms for construction, the Design Patents should be construed during trial because design patent analysis applies a completely different focus than the traditional claim construction methodology used in utility patent cases. In fact, as Plaintiff previously discussed, whether to construe design patents during a traditional claim construction hearing is currently an open question before the Federal Circuit. (See Plaintiff's Response Brief p.21 discussing Egyptian Goddess Amicus Brief and Questions Presented before the Court of Appeals for the Federal Circuit (2008), as questioning claim construction hearing's role in design patent analysis.) Despite the non-existent requirement that design patents must be construed during a Markman-like hearing, Defendants offer the possibility of summary judgment in order to entice the Court to construe the Design Patents during the hearing despite that fact that (i) the parties did not jointly agree to request construction of the Design Patents at the hearing; (ii) the Court did not adopt Defendants' construction; and (iii) the Defendants have not demonstrated that their product does not infringe the Design Patents under the longstanding Gorham's ordinary observer test. Clearly, under these facts, the Defendants cannot demonstrate that a reasonable jury would find for the Defendants ....when construing these facts in a light most favorable to the Plaintiff.

Further, the ordinary observer test and the point of novelty test are factual inquires undertaken by the fact finder during the infringement stage of the proceedings, after the claim has been construed by the Court. Bernhardt v. Collezione, 386 F.3d 1371, 1383 (Fed. Cir. 2004). In Gorham, the Court considered the patent handle design and an accused handle design as shown in Matlock Decl. Exhibit I. In so doing, the Court expressly disqualified the observations of "persons in the trade." Gorham Co. v. White, 81 U.S. 511, 527 (U.S. 1872). Nothing herein makes such an analysis appropriate in a claim construction hearing which is based on the "written description" approach that Defendants advocate. For at least this reason, the Design Patents should be addressed at trial. Finally, the court has considerable latitude in

1    determining when to resolve issues of claim construction.  <u>Cytologix Corp. v. Ventana Med.</u>

2    <u>Sys., Inc.</u>, 424 F.3d 1168, 1172 (Fed Cir. 2005).  As such, the Court should allow the fact

3    finder to determine infringement after the Court construes the ornamental features during trial.

**8. Assuming the Court decides to address the Design Patents during the hearing,**
4    **Defendants applied the wrong test and applied the wrong test incorrectly.**

5        The United States Supreme Court held that the focus in design patents is (i) the

6    ornamental appearance in the eyes of an ordinary observer, (ii) giving such attention as a

7    purchaser usually gives, (iii) two designs are substantially the same, (iv) if the resemblance is

8    such as to deceive an observer, (v) inducing him to purchase one supposing to be the other.

9    <u>Gorham Co.</u>, at 528.  However, the Defendants rely on the "visual impression" standard from

10   <u>Contessa</u> in requesting the Court to provide a written description of the Design Patents.

11   Defendants' Opening Brief p21 and Defendants Response Brief p21.  As stated in the <u>Gorham</u>

12   rule above, <u>Gorham</u> has made it clear that the focus is on the eye of an ordinary observer,

13   contrary to the written description of the visual impression Defendants request from the Court.

14   Defendants fail to show how the rigid <u>Contessa</u> test complies with one hundred years of

15   Supreme Court precedent in <u>Gorham</u>.  Given the ordinary observer test, Defendants' request for

16   a written description of a "visual impression" is improper at least to the extent that such request

17   is contrary to <u>Gorham</u>..

18       Further, in applying the wrong rule, Defendants construction is a misapplication of the

19   rule in <u>Contessa</u> as cited by the Defendants: "encompasses 'its visual appearance as a whole'

20   and in particular 'the visual impression it creates.'"  Defendants Opening Brief p21 citing

21   <u>Contessa Food Products v. Conagra</u>, 282 F.3d 1370, 1377 (Fed. Cir. 2002).  In Defendants'

22   construction of the Design Patents, Defendants use words of assembly such as "are formed by,"

23   "connecting," "are collected together," "are inserted," and "is inserted."  Defendants' Response

24   Brief p21-22.  Defendants do not show that their construction (i) satisfies the overall visual

25   impression requirement in their rule from <u>Contessa</u> and (ii) does not operate as assembly

26   language typically used to describe utility patents.  It is this danger of confusion between

27   construction of utility and design claim scopes that Defendants' use of <u>Contessa</u> demonstrates.

28   To avoid this danger, the Court should properly exercise its discretion and address the Design

Matlock Law
Group, PC.

1    Patents at trial when <u>Gorham</u> may be properly applied.

2    **9.  Plaintiff's figure descriptions are not written descriptions of the overall visual impression but rather the proper application of the <u>Gorham</u> test.**

3    Defendants argue that Plaintiff's description of each figure is unnecessary or

4    unintelligible, however, these descriptions are proper under the <u>Gorham</u> test.  As stated in the

5    above <u>Gorham</u> rule, the ornamental appearance from the eyes of an ordinary observer is the

6    proper focus in analyzing the Design Patent.  <u>Gorham</u> at 528.  Plaintiff's figure descriptions are

7    not purported to be claim constructions of the visual impression of the Design Patents but

8    rather descriptions of the ornamental appearance under <u>Gorham</u>.  For example, Plaintiff's

9    description of Figure 1 of the 'D239 Patent explains what an ordinary observer would see when

10   the product is bought and applied: "looks like natural hair", "look like it blends into natural

11   hair," "the typical configuration when used."  Absent figure descriptions from the point of view

12   of the ordinary observer, the fact finder during trial would not be in the proper position to

13   compare the Design Patent with the accused product as required by one hundred years of

14   Supreme Court precedent established in <u>Gorham</u>.

15   **III.    CONCLUSION**

16   Defendants' take claim language out of their context in the intrinsic record resulting in

17   improper narrow constructions.  Plaintiff's proposed constructions preserves the '884 Patent

18   language and the context of the intrinsic record.  As such, the Court should reject Defendants'

19   constructions and adopt Plaintiff's constructions.  Additionally, given the unique methodology

20   employed in design patent analysis, the Court should address the Design Patents during trial.

21

22   Dated: May 23, 2008                         THE TONYTAIL COMPANY, INC.
                                                 By its attorneys,
23

24                                               Anne-Leith Matlock
25                                               MATLOCK LAW GROUP, PC
                                                 1485 Treat Blvd., Suite 200
26                                               Walnut Creek, CA 4597
                                                 Tel.:   925-944-7131
27                                               Fax:    925-944-7138
                                                 Anne-leith@matlocklawgroup.com
28

Matlock Law
Group, PC.

PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' RESPONSE BRIEF                    Case No. 3:07-cv-05895-WHA