1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   THE TONYTAIL COMPANY, INC.,
     a Delaware corporation,
11                                                      No. C 07-05895 WHA
                    Plaintiff,
12
           v.
13                                                      **CLAIM CONSTRUCTION ORDER**
     CONAIR CORPORATION, a Delaware
14   corporation, SCUNCI INTL., LTD., a Delaware
     corporation, RITE AID, a Delaware
15   corporation, L&N SALES & MARKETING,
     INC., a Pennsylvania corporation, and
16   DOES 1–10, inclusive,

17                    Defendant.
                                                    /
18   _____

19                            **INTRODUCTION**

20         This is a claim construction order for United States Patent No. 6,263,884 B1.  This order

21   addresses five phrases selected for construction by the parties.  A technology tutorial, as well as

22   a full round of briefing and a hearing, preceded this order.

23                              **STATEMENT**

24         The '884 patent was filed by inventor Mia Minnelli along with related design patents

25   U.S. Design Patent No. D413,693 and U.S. Design Patent No. D413,693.  Minnelli later

26   assigned all three patents to plaintiff The Tonytail Company, Inc.  The '884 patent itself is

27   directed to an apparatus and method for binding a ponytail — *i.e.*, a ponytail holder.  Prior art

28   ponytail holders included "elastic bands," "hair clips," and "ribbons" (col. 1:10–18).  The main

     disadvantage of the prior art ponytail holders was their "unnatural appearance" — *i.e.*, they

**United States District Court**
For the Northern District of California

were always noticeable when in the hair (col. 1:27). The '884 patent teaches an improved

ponytail holder which has a natural hair appearance.



The device disclosed in the invention has two main parts that are connected together with

connectors 16: an elastic band 12 and synthetic fibers 14. The synthetic fibers are selected

such that they match the color and texture of the user's hair. The user places the ponytail holder

around their hair and subsequently twists the elastic band to form a secondary loop that is also

placed around the user's hair (col. 2:64–3:4). This process is repeated until the device is

wrapped tightly around the user's hair. The synthetic fibers may then be pulled over the elastic

band to cover the elastic band and connectors. The desired end result is a ponytail hairstyle

bound by what appears to be the user's natural hair (col. 3:20–22).

This action was filed on November 20, 2007, alleging that defendants infringed the

'D693 and 'D239 patents and induced infringement of the '884 patent. A technology tutorial

and hearing was held on May 28, 2008. Trial is set for February 2, 2009.

**ANALYSIS**

**1.    LEGAL STANDARD.**

Claim construction is a matter of law to be decided by a judge, not a jury. *Markman v.*

*Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996). Courts must give words in the claims

United States District Court

For the Northern District of California

their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).

Where this ordinary and customary meaning is not immediately clear, courts must primarily look to intrinsic evidence (*i.e.*, the claims, the specification, and the prosecution history) to determine the meaning. *Id.* at 1314. With respect to the specification, although a difficult task, a court must distinguish "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Id.* at 1323. The latter is not permissible.

Although courts have the discretion to consider extrinsic evidence, including expert and inventor testimony, dictionaries and scientific treatises, such evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (citation omitted). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1315. "Nonetheless, any articulated definition of a claim term ultimately must relate to the infringement questions it was intended to answer." *E-Pass Tech., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 (Fed. Cir. 2007) (citing *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006)).

**2.    DISPUTED CLAIM TERMS AND PHRASES.**

Plaintiff and defendants did not stipulate to any definitions prior to the hearing. The parties jointly selected five phrases for construction at this time. Those five phrases are: (1) "an elastic band having a pair of elastic band ends;" (2) "synthetic hair fibers having an appearance similar to the ponytail and having a pair of synthetic hair fiber ends;" (3) "the synthetic hair fiber ends joined to the elastic band ends;" (4) "to form a closed loop;" (5) "covering the elastic band with the synthetic hair fibers so that the outward appearance of the device is formed solely by the synthetic hair fibers." Each of the disputed phrases appeared in claim 4, which recited (col 4:15–29):

> A hair binding method, for use by a person having a
> ponytail having a ponytail end, for securing said ponytail,

1   using a device comprising *an elastic band having a pair of*
    *elastic band ends, synthetic hair fibers having an*
2   *appearance similar to the ponytail and having a pair of*
    *synthetic hair fiber ends, the synthetic hair fiber ends*
3   *joined to the elastic band ends to form a closed loop,*
    comprising the steps of:

4

5       encircling the ponytail with the device by inserting
            the ponytail end through the closed loop of
6           said device;

7       tensioning the device around the ponytail by
            doubling up the device; and
8
        *covering the elastic band with the synthetic hair*
9           *fibers so that the outward appearance of the*
            *device is formed solely by the synthetic hair*
            *fibers.*

10  Because the parties' dispute over claim construction essentially boils down to a disagreement

11  over the terms "the synthetic hair fiber ends joined to the elastic band ends" and "to form a

12  closed loop," this order will address those terms first.

13          **A.      "The Synthetic Hair Fiber Ends Joined to the Elastic Band Ends"**

14                  **and "To Form a Closed Loop."**

15          Defendants propose the term "the synthetic hair fiber ends joined to the elastic band

16  ends" should mean "wherein one of the elastic band ends is permanently joined with one of the

17  synthetic hair fiber ends, and the other of the elastic bands is permanently joined with the other

18  of the synthetic hair fiber ends."  Plaintiff contends the term should mean "the synthetic hair

19  fiber ends joined to the elastic band ends."

20          With respect to the term "to form a closed loop," defendants say it should mean "to form

21  a single unbroken ring" while plaintiff proposes the term should mean "to take on a closed loop

22  shape."  For the reasons discussed below, plaintiff's constructions are entirely unsupported by

23  the intrinsic evidence and must therefore be rejected.

24          Under plaintiff's construction of these terms — as well as all the other disputed terms —

25  the claims would necessarily cover a ponytail holder whose elastic band attaches to only one

26  end of the synthetic fibers.  This construction, however, is untenable in light of the '884

27  specification and its prosecution history.  Significantly, the '884 patent expressly cited and

28

**United States District Court**
For the Northern District of California

1    distinguished a prior art reference, the Brown '211 patent, which claimed plaintiff's desired

2    construction (col. 1:31–40):

3              U.S. Patent No. 5,899,211 to Brown discloses an apparatus
               and method for securing a ponytail. Brown uses a device
4              which employs an elastic loop which can secure around a
               ponytail, and a length of hair which is attached to the
5              elastic loop at one end, but is free at its opposite end.

6              While these units may be suitable for the particular purpose
               employed, or for general use, they would not be as suitable
7              for the purposes of the present invention as disclosed
               hereafter.

8    Below is a figure of the single embodiment taught in Brown '211 patent.

9

10

11

12

13                              

14

15

16

17

18   As shown above, the two ends of the elastic band 12 are connected to one another and the

19   elastic band is only connected to one end of the synthetic hair 14. The Brown patent predated

20   the '884 by roughly two years and plaintiff does not dispute that it was the first reference to

21   teach the use of an elastic band combined with synthetic hair to wrap the user's natural hair.

22         Plaintiff now maintains that the terms "the synthetic hair fiber ends joined to the elastic

23   band ends" and "to form a closed loop" should be collectively construed to mean that the elastic

24   band need only connect to one end of the synthetic hair "to take on a closed loop shape." It is

25   not entirely clear what plaintiff means by "closed loop shape," but plaintiff does argue that the

26   term does not require the loop to be continuous or unbroken. Plaintiff cites to no support,

27   besides argument, to defend its position. The specification describes only a *single* embodiment

28   of the invention. That embodiment is shown again below.

United States District Court
For the Northern District of California



FIG. 1

The specification stated (col. 2:24–32):

> FIG. 1 illustrates a device for binding a ponytail,
> comprising an elastic band 12, and a group of synthetic hair
> fibers 14. The elastic band 12 has a pair of elastic band
> ends 12E. The synthetic hair fibers 14 are all of
> substantially the same length, and collectively have a pair
> of synthetic hair fiber ends 14E. A pair of connectors 16
> are used to *permanently join each one of the elastic band
> ends 12E to one of the hair fiber ends* 14E. Accordingly,
> the synthetic hair fibers 14 and elastic band 12S together
> *form a closed loop* (emphasis added).

Despite this clear and unambiguous language, plaintiff now argues that each of the elastic band
ends do not have to connect to the ends of the synthetic hair. Even more, plaintiff maintains
that the elastic band ends and the synthetic hair ends do not have to be connected to form a
closed and continuous loop. These contentions are clearly incorrect. The specification further
stated (col. 2:45–56):

> Referring to FIG. 1, each connector 16 is a sleeve having a
> pair of connector open ends 18, and one of the synthetic
> hair fiber ends 14E is inserted into one of the connector
> open end 18E. Once inside the connector, the synthetic
> hair fibers and elastic band are *fused* therein using heat,
> adhesives, chemicals, mechanical friction, or any other
> suitable means. . . . As seen in Fig. 1, using two connectors

6

16 *completes the closed loop* to form the binding device 10
(emphasis added).

Plaintiff's proposed constructions directly contradict this language. The single embodiment

taught in the specification describes a ponytail holder with elastic band ends that are

permanently joined to synthetic hair fiber ends to form a continuous and closed loop.

The '884 prosecution history is similarly unsupportive of plaintiff's construction. In

response to an office action, the patentee amended the term "wherein each of the elastic band

ends is permanently joined with one of the synthetic hair fiber ends" of independent claim 1 to

recite that "one of the elastic band ends is permanently joined with one of the synthetic hair

fiber ends, and the other of the elastic band ends is permanently joined with the other of the

synthetic fiber ends . . ." (Fitzpatrick Decl. Exh. E). Although the amendment was made in

regard to claim 1, "[o]ther claims of the patent in question, both asserted and unasserted, [are]

valuable sources of enlightenment as to the meaning of a claim term." *Phillips v. AWH Corp.*,

415 F.3d 1303, 1314 (Fed. Cir. 2005). Here, independent claim 1 covers a hair-binding

apparatus while independent claim 4 covers a hair-binding method. Although claim 1 is not

currently being construed, it only helps to show that plaintiff's construction is unworkable.

Plaintiff next argues that it would be a mistake to limit the claims of the '884 to a single

embodiment because the specification in fact describes several possible embodiments of the

invention. In support of its argument, plaintiff cites to a single line recited in the "Summary Of

The Invention" section of the specification (col. 1:53–56):

The invention is a ponytail binding system, for use by a
person having a ponytail end, using a device comprising
synthetic hair fibers joined to an elastic band to form a
closed loop.

Plaintiff maintains that because this sentence does not require the elastic band ends to be

connected to the synthetic fiber ends that a number of embodiments of the invention are

possible. This argument is most unconvincing. If plaintiff's argument were accepted then

nearly all patents would necessarily cover anything liberally construed to fall under the

summary regardless of what is actually taught by the specification. Moreover, the '884

specification is a little over one page in length. (For this, we may thank the patentee.) The

**United States District Court**
For the Northern District of California

1   entire description of the invention centers around a single embodiment.  No other embodiments

2   are taught.  As the Federal Circuit has held in *SciMed Life Systems, Inc. v. Advanced*

3   *Cardiovascular Systems*, Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001):

4               Where the specification makes clear that the invention does
                not include a particular feature, that feature is deemed to be
5               outside the reach of the claims of the patent, even though
                the language of the claims, read without reference to the
6               specification, might be considered broad enough to
                encompass the feature in question.

7   In light of the specification's clear-cut language, plaintiff's constructions must be rejected.

8   Defendants' constructions are heavily supported by all the intrinsic evidence except that their

9   proposed construction of the term "to form a closed loop" unnecessarily is limited to a "ring"

10  when the specification includes no such limiting language.  It should also be clear that the

11  claimed invention consists of only one single loop.

12          Accordingly, this order finds the term "the synthetic hair fiber ends joined to the elastic

13  band ends" means "wherein one of the elastic band ends is permanently joined with one of the

14  synthetic hair fiber ends, and the other of the elastic bands is permanently joined with the other

15  of the synthetic hair fiber ends" and  the term "to form a closed loop" means "to form one

16  single unbroken loop."

17                          **B.    The Remaining Terms.**

18          The disagreement over the remaining disputed terms essentially entails the same debate

19  discussed above.  Beyond that debate, the remaining terms are not complex or technical.  This

20  order thus finds that the remaining terms require no further construction and may be

21  sufficiently understood by a layperson.

22                              **CONCLUSION**

23          This claim construction order will govern for the remainder of this action.

24          **IT IS SO ORDERED.**

25

26  Dated:  May 30, 2008.
                                            _____
27                                          WILLIAM ALSUP
                                            UNITED STATES DISTRICT JUDGE
28