1            UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3    BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

4    THE TONYTAIL COMPANY, INC.,

5            PLAINTIFF,

6      VS.                        NO. C07-5895 WHA

7    CONAIR CORPORATION, SCUNCI INT'L,   PAGES 1 - 49
     LTD., RITE AID HDQTRS. CORP., L&N
8    SALES & MARKETING, INC., AND DOES,
     1-10, INCLUSIVE,
9
             DEFENDANTS.
10   _____

11          SAN FRANCISCO, CALIFORNIA
            WEDNESDAY, MAY 28, 2008
12
             TRANSCRIPT OF PROCEEDINGS
13
     APPEARANCES:
14
     **FOR THE PLAINTIFF:**
15   MATLOCK LAW GROUP
     1485 TREAT BLVD. SUITE 200
16   WALNUT CREEK, CALIFORNIA 94597
     BY:  ANNE-LEITH FERGUSON W. MATLOCK, ATTORNEY AT LAW AND
17        K. BRIAN MATLOCK, ESQUIRE

18   **FOR THE DEFENDANTS CONAIR AND RITE AID:**
     GOODWIN PROCTER LLP
19   181 LYTTON AVENUE
     PALO ALTO, CALIFORNIA 94301
20   650-853-1038
     BY:  THOMAS F. FITZPATRICK, ESQUIRE AND
21        ELEANOR M. HYNES, ATTORNEY AT LAW

22   FURTHER APPEARANCE ON NEXT PAGE.

23   REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR
                   OFFICIAL REPORTER, USDC
24                 COMPUTERIZED TRANSCRIPTION BY ECLIPSE

25

1    **FURTHER APPEARANCE:**

2    **FOR DEFENDANTS L AND N SALES & MARKETING, INC.:**

3    DUANE MORRIS, LLP
ONE MARKET STREET, SUITE 2000

4    SAN FRANCISCO, CALIFORNIA 94105
957-3001

5

6    BY: ARON MARK OLINER, ESQUIRE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    MAY 28, 2008                        1:30 O'CLOCK P.M.

 2

 3                         P R O C E E D I N G S

 4            THE COURT:  GOOD AFTERNOON.

 5            MR. FITZPATRICK:  GOOD AFTERNOON, YOUR HONOR.

 6            THE COURT:  WELCOME.  WELCOME.  PLEASE HAVE A SEAT.

 7            WE'RE HERE FOR TONYTAIL COMPANY VERSUS CONAIR. I

 8    THOUGHT THAT WAS A MOVIE, CONAIR.

 9            ALL RIGHT. IT'S O7-5895.  LET'S HEAR OUR APPEARANCES.

10            MR. FITZPATRICK:  GOOD AFTERNOON, YOUR HONOR.  TOM

11    FITZPATRICK ON BEHALF OF DEFENDANTS CONAIR AND RITEAID.

12            THE COURT:  CONAIR AND WHO?

13            MR. FITZPATRICK:  CONAIR AND RITEAID.

14            THE COURT:  WHO IS SCUNCI INTERNATIONAL?

15            MR. FITZPATRICK:  SCUNCI INTERNATIONAL -- THERE'S

16    SOME DEBATE ABOUT WHAT SCUNCI INTERNATIONAL IS.  BUT SCUNCI IS,

17    FOR OUR PURPOSES, PURPOSES OF THIS CASE, A DEPARTMENT OR

18    DIVISION OF CONAIR.

19            THE COURT:  ARE THEY -- ARE YOU REPRESENTING THEM,

20    TOO?

21            MR. FITZPATRICK:  NO, IT WOULD BE LIKE A MARKETING

22    DEPARTMENT OF THE SAME LAW FIRM.

23            THE COURT:  SO HAS SCUNCI INTERNATIONAL BEEN SERVED

24    IN THIS CASE?

25            MR. FITZPATRICK:  NOT TO MY KNOWLEDGE.
```

1          **THE COURT:**  ALL RIGHT.  HOW ABOUT L AND N SALES AND

2    MARKETING, INC.?

3          **MR. OLINER:**  GOOD AFTERNOON, YOUR HONOR.  I HADN'T

4    PLANNED ON APPEARING, BUT I'M GLAD TO.  I'M ARON OLINER WITH

5    DUANE MORRIS.  AND I FILED AN ANSWER IN THIS ACTION ABOUT A

6    MONTH OR SO AGO.  AND I'M HERE AS AN INTERESTED OBSERVER TODAY.

7          **THE COURT:**  AND WHO DO YOU REPRESENT?

8          **MR. OLINER:**  L AND N SALES.

9          **THE COURT:**  HAVE THEY BEEN SERVED IN THIS CASE?

10         **MR. OLINER:**  THEY HAVE, AND WE'VE ANSWERED.

11         **THE COURT:**  WELL, WHY AREN'T YOU PARTICIPATING IN

12   TODAY'S PROCEEDINGS?

13         **MR. OLINER:**  I HAVE BEEN IN DISCUSSIONS WITH

14   PLAINTIFF'S COUNSEL, THE EFFECT OF WHICH MAY OBVIATE MY

15   INVOLVEMENT IN THIS CASE. I'M JUST AN OBSERVER AND NOTHING MORE.

16         **THE COURT:**  WELL --

17         **MR. OLINER:**  IF AS -- SORRY TO INTERRUPT, YOUR HONOR.

18   IF AS A RESULT OF TODAY'S PROCEEDINGS THERE'S SOMETHING THAT

19   BINDS MY CLIENT, SOBEIT.

20         WE HAVE NOT GONE TO THE EXPENSE TO PREPARE PLEADINGS,

21   EITHER PRO OR CON ON THIS MARKMAN HEARING.

22         **THE COURT:**  ALL RIGHT. ALL RIGHT.  SOBEIT, THEN.

23         **MR. OLINER:**  THANK YOU, YOUR HONOR.

24         **THE COURT:**  ALL RIGHT.  AND THEN, OVER HERE.

25         **MS. MATLOCK:**  I'M ANNE-LEITH MATLOCK APPEARING FOR

1    TONYTAIL.

2         **MR. FITZPATRICK:**  YOUR HONOR, I WOULD ALSO LIKE TO

3    ADD THAT WITH ME HERE IS MY COLLEAGUE, MS. ELEANOR HYNES.

4    ELEANOR IS NOT ADMITTED IN THE STATE OF CALIFORNIA.  WE DID FILE

5    A PRO HAC VICE APPLICATION, WHICH I DON'T BELIEVE IT HAS YET

6    BEEN SIGNED.  BUT SHE IS ADMITTED IN THE WESTERN AND NORTHERN

7    DISTRICTS OF NEW YORK AND IN THE DISTRICT OF NEW JERSEY.

8         **THE COURT:**  GREAT. WELCOME.  AND WE WILL BE HAPPY TO

9    HAVE YOU HERE FOR TODAY.

10        **MR. FITZPATRICK:**  THANK YOU.

11        **THE COURT:**  ALL RIGHT. AND MS. MATLOCK, WHO ELSE?

12        **MR. MATLOCK:**  I'M BRIAN MATLOCK, YOUR HONOR.  I'M

13   REPRESENTING THE PLAINTIFFS, TONYTAIL COMPANY.  AND ALSO WITH US

14   TODAY IS IRV RAPPAPORT AND TONY PANLILIO FROM OUR FIRM.

15        **THE COURT:**  ALL RIGHT.  WELCOME TO ALL OF YOU.

16        ALL RIGHT. WE'RE HERE FOR -- I'M JUST GOING TO

17   COMBINE IT.  IT'S WHAT YOU WANTED.  YOU CAN DO WHATEVER TUTORIAL

18   YOU WANT DURING THE MIDDLE OF YOUR CLAIM CONSTRUCTION THING.

19        I THOUGHT I WOULD GIVE EACH SIDE ABOUT A HALF HOUR

20   TIME TO USE AS YOU WISH, AND WE WILL GO DOWN PHRASE BY PHRASE

21   AND GO BACK AND FORTH LIKE THIS.

22        SO WHAT IS OUR FIRST PHRASE?

23            "ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

24            ENDS."

25        ALL RIGHT.  LET'S HEAR FROM THE MATLOCKS.

1          **MR. MATLOCK:**  OKAY.  THANK YOU, YOUR HONOR.

2          **THE COURT:**  WHY DON'T YOU COME UP HERE, THOUGH?  YOU

3    GOT TO COME TO THE LECTERN.

4          **MR. MATLOCK:**  WITH RESPECT TO THE FIRST TERM, YOUR

5    HONOR, WE WOULD LIKE TO POINT OUT YOU SEE THE PICTURE, TO START,

6    BY SHOWING THE ORIGINAL CLAIM LANGUAGE AND THE TERMS THAT WE'RE

7    GOING TO BE DISCUSSING AS WE MOVE INTO THE ELASTIC BAND.

8          THE ORIGINAL CLAIM LANGUAGE, PLEASE.

9          NEXT SLIDE.  THANK YOU.

10         AS WE POINTED OUT, THE FIRST TERM IS:

11              "THE ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

12              ENDS."

13         AND AS YOU CAN SEE, THE TERMS THAT ARE BOLDED WILL BE

14    THE TERMS WE ARE DISCUSSING TODAY.

15         NOW, NEXT SLIDE.

16         I WOULD LIKE TO POINT OUT THAT OVERALL, YOUR HONOR,

17    THE DEFENDANTS' CONSTRUCTION, AS YOU CAN SEE WITH THE WORDS IN

18    BOLD, REPRESENT ADDITIONAL TERMS THAT ARE NOT FROM THE ORIGINAL

19    CLAIM LANGUAGE.

20         AND MOVE TO THE NEXT SLIDE.

21         AND HERE'S PLAINTIFF'S CONSTRUCTION.  THE UNDERLYING

22    WORDS REPRESENT WORDS THAT COME FROM THE ORDINARY AND PLAIN

23    MEANING OF THE TERMS THAT WE BELIEVE ARE UNAMBIGUOUS ON THEIR

24    FACE.  AND ON THAT BASIS WE WILL BE MAKING OUR ARGUMENTS ON THE

25    BASIS OF THE UNAMBIGUOUS PLAIN AND ORDINARY MEANING OF THE CLAIM

1    TERMS.

2              PLAINTIFF'S CONSTRUCTION TO THE ELASTIC BAND IS:

3                   "A PLASTIC BAND WHOSE TWO ENDS SERVE TO JOIN

4              TOGETHER AND ENCIRCLE."

5              NEXT SLIDE, PLEASE.

6              NEXT SLIDE.

7              COMPARED TO THE ORIGINAL CLAIM LANGUAGE, WHICH WAS:

8                   "AN ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

9              ENDS."

10             NOW, TO THAT POINT ALSO DEFENDANTS' CONSTRUCTION IS

11   PROPOSED BE TO BE:

12                  "AN ELASTIC CORD WHOSE TWO ENDS ARE NOT JOINED

13             TO ONE ANOTHER."

14             NEXT SLIDE, PLEASE.

15             PLAINTIFF'S CONSTRUCTION, YOUR HONOR, IS BASED ON A

16   DICTIONARY DEFINITION OF THE WORD "BAND."  AND WE TAKE FROM

17   **WEBSTER'S DICTIONARY** ONE OF THE DEFINITIONS FOR THE TERM "BAND"

18   IS:

19                  "SERVES TO JOIN AND ENCIRCLE."

20             AND, IN FACT, WE ASSERT THAT THE DEFENDANTS' OWN

21   DICTIONARY DEFINITION FOR THE TERM "BAND" WE FIND THAT WE'RE

22   REFERRING TO:

23                  "A THIN STRIP OF FLEXIBLE MATERIAL USED TO

24             ENCIRCLE AND BIND."

25             SO YOU CAN SEE A COMMON THEME THERE OF "ENCIRCLE."

1  NEXT.

2  HERE FROM PLAINTIFF'S '884 PATENT, FIGURES 3 AND 4,

3  WE CAN SEE THAT THE ENCIRCLING IS PART OF THE METHOD CLAIMS WITH

4  WHICH THIS TERM COMES FROM CLAIM 4, WHICH IS A CLAIM DIRECTED TO

5  A METHOD.

6  AND THAT METHOD HERE IN FIGURE 3 SHOWS IT ENCIRCLING

7  MOTION AND A TANGIBLE STEP WITHIN THE METHOD FOR ACTUALLY

8  ENCIRCLING ELASTIC BANDS AROUND A PONYTAIL. FROM.

9  NEXT SLIDE.

10  FROM THE '884 PATENT WE CAN SEE COLUMN TWO, LINES 16

11  AND 17.  WE REFER TO CLEARLY THERE:

12  "GATHER AND HOLD THE PONYTAIL."

13  AND THEN, WITH RESPECT TO FIGURE 3, AS I SHOWED A

14  MINUTE AGO, FIGURE 3 IS A SIDE ELEVATIONAL VIEW ILLUSTRATING THE

15  INVENTION AND USE.  IT'S BEING USED TO GATHER AND HOLD A

16  PONYTAIL.

17  FURTHER IN THE '884 PATENT, IN THE SPECIFICATION,

18  COLUMN TWO, LINES 40 THROUGH 45, YOU'LL SEE THE LANGUAGE

19  REFERRED TO:

20  "STRETCH AROUND A GROUP OF HAIR."

21  AND THIS IS FURTHER, YOUR HONOR, SUPPORTED IN THE

22  DETAILED DESCRIPTION OF THE '884:

23  "ELASTIC BAND 12 IS MADE OF A STRETCHABLE

24  MATERIAL, SUCH AS RUBBER, OR THE LIKE.  THE ELASTIC

25  BAND 12 THUS PROVIDES THE BINDING DEVICE 10 WITH THE

```
 1              NECESSARY ELASTICITY SO THAT IT CAN STRETCH AROUND A

 2              GROUP OF HAIR AND THEN EXERT A CONSTRICTING TENSION

 3              AGAINST THAT GROUP OF HAIR TO HOLD IT IN PLACE."

 4         THE COURT:  HELP ME OUT ON THIS, THOUGH.  WHAT

 5    DIFFERENCE DOES ANY OF THIS MAKE?  WHAT IS THE ACCUSED DEVICE?

 6    SHOW ME THE ACCUSED DEVICE.

 7              MR. MATLOCK:  THE TONYTAIL HOLDER.

 8         THE COURT:  I CAN'T SEE IT. BRING IT UP HERE.

 9         MR. FITZPATRICK:  THIS IS AN ACCUSED DEVICE.

10         THE COURT:  ALL RIGHT.  I'VE GOT THE ACCUSED DEVICE.

11    AND SO THE PHRASE THAT WE'RE TALKING ABOUT IS:

12              "AN ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

13              ENDS," RIGHT?

14         MR. MATLOCK:  YES, SIR.

15         THE COURT:  "PAIR OF ELASTIC BAND ENDS."

16         SO I'M TRYING TO FIGURE OUT HOW THAT FITS INTO OUR

17    PROGRAM HERE. WHOOPS.

18              THERE'S A MAGNET IN HERE?

19         MR. FITZPATRICK:  THERE IS, YOUR HONOR.

20         THE COURT:  OH, OKAY. SO WHAT IS THE -- EXPLAIN TO

21    ME, MR. MATLOCK, WHAT IS THE ISSUE THAT DIVIDES YOU OVER THAT

22    PHRASE, AS I'M HOLDING UP NOW THE ACCUSED DEVICE, SO THAT I CAN

23    UNDERSTAND WHAT YOU'RE ALL FIGHTING OVER.

24         MR. MATLOCK:  OKAY.  WITH RESPECT TO THE FIRST TERM,

25    YOUR HONOR:
```

1              "AN ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

2         ENDS," WHEN WE LOOK UP THE TERM "BAND" WE WOULD COME

3  TO THIS NOTION THAT IT SERVES TO JOIN TOGETHER AND ENCIRCLE,

4  WHICH WE POINT OUT IS USEFUL IN THE PATENTEE'S METHOD CLAIM OF

5  CLAIM 4.

6         NOW, THE DEFENDANTS' PROPOSED CONSTRUCTION FOR THIS

7  CLAIM WANTS TO IMPORT LANGUAGE THAT SAYS:

8              "AN ELASTIC CORD WHOSE TWO ENDS ARE NOT JOINED

9         TOGETHER -- TO ONE ANOTHER," EXCUSE ME.

10        AND WE'RE POINTING OUT HERE THAT, YOU KNOW, THE

11  ACTUAL DEFINITION OF THE TERM "BAND" FROM THE ORIGINAL CLAIM

12  CONTEMPLATES SOMETHING THAT SERVES TO CIRCLE AND ENJOIN (SIC).

13        AND SO TO READ -- IMPORT A LIMITATION SUCH AS "NOT

14  JOINED TO ONE ANOTHER" IS NOT CONSISTENT WITH THE SPECIFICATION

15  AND THE ENTIRE RECORD IN THE '884 PATENT WHEN THE CLAIMS ARE

16  READ IN THE CONTEXT OF THE SPECIFICATION.

17        **THE COURT:**  WELL, BUT HERE IT SAYS:

18              "AN ELASTIC BAND HAVING A PAIR OF ELASTIC BAND

19         ENDS. SYNTHETIC HAIR FIBERS HAVING AN APPEARANCE

20         SIMILAR TO THE PONYTAIL AND HAVING A PAIR OF

21         SYNTHETIC HAIR FIBER ENDS.  THE SYNTHETIC HAIR FIBER

22         ENDS JOINED TO THE ELASTIC BAND ENDS TO FORM A CLOSED

23         LOOP."

24        NOW, KIND OF LIKE THAT'S THE IMAGE I GET, THE ONE

25  RIGHT HERE IN YOUR OWN PATENT.  SEE THE BIG CIRCLE?

1        **MR. MATLOCK:**  YES, SIR.

2        **THE COURT:**  ALL RIGHT. SO, I'M TRYING TO UNDERSTAND.

3   THIS IS WHAT I THINK YOUR PATENT IS DESCRIBING, IS YOUR FIGURE

4   1.

5        **MR. MATLOCK:**  WELL, WE'RE CERTAINLY DESCRIBING THE

6   METHOD THAT SOMEONE USING OUR -- THAT DEVICE MIGHT WALK THROUGH,

7   THE TANGIBLE STEPS THAT ARE OUTLINED IN THE CLAIM 4, WHICH IS A

8   METHOD CLAIM.

9        **THE COURT:**  BUT IT SAYS:

10           "THE SYNTHETIC HAIR FIBER ENDS JOINED TO THE

11           ELASTIC BAND ENDS TO FORM A CLOSED LOOP."

12        SO DON'T YOU HAVE TO HAVE THE ENDS OF THE FIBER

13   JOINED TO THE ELASTIC BAND, AND THEN SAME THING ON THE OTHER

14   SIDE SO THAT YOU HAVE ONE LOOP?  ISN'T THAT WHAT THIS IS

15   DESCRIBING?

16        **MR. MATLOCK:**  WELL, THE CLAIM CONTEMPLATES PERHAPS

17   MORE THAN ONE CLOSED LOOP.  IT CERTAINLY SAYS:

18           "TO FORM A CLOSED LOOP."

19        **THE COURT:**  SEE, THE ACCUSED DEVICE HERE LOOKS LIKE

20   IT'S GOT A LOOP, BUT THE LOOP IS -- IT SAYS:

21           "HAIR FIBER ENDS JOINED TO THE ELASTIC BAND

22           END."

23        WELL, ARGUABLY, THESE TWO ARE JOINED.

24        **MR. MATLOCK:**  AND, CERTAINLY, YOUR HONOR, WE WOULD

25   ARGUE THAT THE CLOSED LOOP ITSELF OCCURS WHEN THE METHOD IS

```
1    PRACTICED BY THE ACCUSED DEVICE AND ALSO BY THE PATENTEE'S

2    DEVICE.  THE CLOSED LOOP OCCURS WHEN THE METHOD IS PRACTICED.

3    AND THERE'S NO APPARATUS OR ARTICLE DEVICE CLAIM HERE IN ISSUE

4    TODAY.

5              THE COURT:  WELL, THIS IS A METHOD.

6              MS. MATLOCK:  YES.

7              MR. MATLOCK:  YES, SIR.

8              THE COURT:  ALL RIGHT.  METHOD. ALL RIGHT.  A METHOD

9    FOR USE, ALL RIGHT.

10             MR. MATLOCK:  FURTHER, THE PLAINTIFF'S CONSTRUCTION

11   IS CONSISTENT WITH THE ORDINARY MEANING.

12             NEXT SLIDE, PLEASE.

13             AND AS WE'VE DISCUSSED IT'S ALSO CONSISTENT WITH THE

14   DEFENDANTS' DICTIONARY DEFINITION FOR "BAND."  IT'S CONSISTENT

15   WITH THE PATENTEE'S FIGURES AND CLAIM LANGUAGE THAT THE BAND

16   ITSELF WOULD, INDEED, BE SOMETHING THAT SERVES TO ENCIRCLE AND

17   JOIN, WHICH WOULD THEN LEAVE THE PLAINTIFF'S PROPOSED

18   CONSTRUCTION FOR THIS FIRST TERM AS:

19                  "AN ELASTIC BAND WHOSE TWO ENDS SERVE TO JOIN

20             TOGETHER AND ENCIRCLE," ESSENTIALLY SUBSTITUTING A

21   DICTIONARY DEFINITION FOR THE TERM "BAND" OR FURTHER EXPLAINING

22   THE TERM "BAND."

23             CAN WE MOVE TO THE SECOND TERM, YOUR HONOR, OR WOULD

24   YOU LIKE TO --

25             THE COURT:  WELL, LET'S HEAR FROM THE OTHER SIDE,
```

1   FIRST.

2             **MR. MATLOCK:**  ALL RIGHT.

3             **THE COURT:**  SO YOU USED UP TEN MINUTES.

4             LET'S HEAR FROM THE DEFENDANTS.

5             **MR. FITZPATRICK:**  YOUR HONOR, WE'RE NOT HOOKED UP, SO

6   WE HAVE TO -- WE'RE SHARING A PROJECTOR.

7             **THE COURT:**  WHATEVER YOU WANT TO DO.

8             GO AHEAD.  HERE COMES THE --

9             **MR. FITZPATRICK:**  THANK YOU.

10            **THE COURT:**  IT WOULD HELP ME UNDERSTAND WHERE YOU TWO

11   PART COMPANY.  AND YOU WANT TO -- IT'S OKAY WITH ME TO USE THE

12   ACCUSED DEVICE.  SO YOU TELL ME HOW THE ACCUSED DEVICE -- WHERE

13   YOU TWO PART COMPANY. THERE'S NOTHING WRONG WITH DOING THAT.

14            **MR. FITZPATRICK:**  THANK YOU, YOUR HONOR. AND THAT'S

15   EXACTLY WHAT WE INTEND TO DO.

16            WHY DON'T WE START WITH -- YOUR HONOR, AS SIMPLE AS

17   THIS TECHNOLOGY IS, I THINK IT WOULD HELP TO GET A LITTLE BIT OF

18   BACKGROUND BECAUSE IT WILL MAKE IT CLEAR WHY THE ACCUSED DEVICE

19   IS THE WAY IT IS AND WHY IT'S NOT READ ON BY THE PATENT.

20            SO, YOUR HONOR'S OBVIOUSLY AWARE OF WHAT A PONYTAIL

21   IS.

22            **THE COURT:**  YES.

23            **MR. FITZPATRICK:**  AND WHAT THESE DEVICES DO IS SEEK

24   TO WRAP THE PONYTAIL SUCH THAT IT LOOKS LIKE IT'S WRAPPED WITH

25   ITS OWN HAIR.

```
1            GO TO THE NEXT SLIDE.

2            THE COURT:  DO THEY COME IN DIFFERENT COLORS?

3            MR. FITZPATRICK:  THEY DO, YOUR HONOR.  I THINK I'VE

4   GOT -- YOUR HONOR HAS A DARK ONE THERE.  THERE'S A BLONDE ONE

5   HERE.  THERE'S A BLOND ONE HERE FROM BOTH SIDES.

6            INDISCRIMINATE, YOUR HONOR.

7            IT'S IMPORTANT TO TALK ABOUT WHAT CAME BEFORE THE

8   '884. BEFORE THE '884 PATENT, THE PATENT THAT'S ASSERTED, BEFORE

9   IT WAS EVEN FILED, THIS BROWN PATENT, THE BROWN '211 PATENT,

10  ISSUED.  AND BROWN DISCLOSES:

11               "A PONYTAIL HOLDER HAVING AN ELASTIC BAND AND A

12               LENGTH OF SYNTHETIC HAIR USED TO CREATE A WRAPPED

13               PONYTAIL."

14            SO IF YOUR HONOR TAKES THE ACCUSED DEVICE, WHICH I

15  PROVIDED, AND COMPARES THAT TO WHAT WE SEE IN BROWN, YOU'LL

16  NOTICE A SIMILARITY.

17            NOW, THAT SIMILARITY IS NOT BY ACCIDENT. CONAIR DID

18  ITS HOMEWORK, FIGURED OUT WHAT TECHNOLOGY IT NEEDED TO LICENSE

19  AND ACTUALLY LICENSED -- LICENSES THE BROWN '211 PATENT IN ORDER

20  TO MANUFACTURE WHAT YOUR HONOR IS HOLDING IN HIS HAND.

21            THE COURT:  IS THERE A MAGNET IN THE BOTTOM OF THAT

22  ONE, BROWN, OR IS THAT SOME KIND OF --

23            MS. MATLOCK:  IT'S A PIN.

24            MR. FITZPATRICK:  THAT IS NOT A MAGNET, YOUR HONOR.

25  THAT, I THINK, IS A PIN.  THEY ALSO DESCRIBE USING JAWS.  SO
```

 1    REALLY THAT'S THE BIG DISTINCTION.

 2               **THE COURT:**  IS THE MAGNET.

 3               **MR. FITZPATRICK:**  IS THE MAGNET.  THAT'S RIGHT, YOUR

 4    HONOR.  BUT --

 5               **THE COURT:**  SO YOUR THEORY IS:  OKAY, YOU'RE

 6    FOLLOWING THE PRIOR ART, AND YOU HAVE A LICENSE TO DO THE BROWN

 7    PATENT.

 8               **MR. FITZPATRICK:**  THAT, AND, YOUR HONOR, YOU ASKED

 9    WHERE WE PART.

10               **THE COURT:**  RIGHT.

11               **MR. FITZPATRICK:**  THE BROWN -- LET'S SEE.  OBVIOUSLY,

12    A DIFFERENCE BETWEEN THE '884 AND THE BROWN '211 PATENT COULDN'T

13    BE MORE PLAIN FROM LOOKING AT THAT FIGURE.

14               BUT THE BROWN PATENT OBVIOUSLY HAS ELASTIC BAND ENDS

15    THAT ARE JOINED TO EACH OTHER. SO THE ELASTIC BAND ENDS AREN'T

16    JOINED TO SYNTHETIC HAIR FIBER ENDS AS DISCLOSED IN THE '884

17    PATENT.

18               LIKEWISE, THE PLAINTIFFS WENT THROUGH GREAT PAINS TO

19    DISTINGUISH THEIR INVENTION FROM THE BROWN '211 PATENT.  ON THE

20    VERY FIRST COLUMN, THE BACKGROUND OF THE INVENTION, THEY

21    DESCRIBE HOW THEIR INVENTION IS NOT.  THEY DISTINGUISH IT FROM

22    THE BROWN '211 PATENT. WE WILL SEE THAT LATER ON, ALTHOUGH WE

23    SEE IT HERE.

24               RIGHT THERE IN COLUMN ONE, SAYS:

25               "U.S. PATENT '211."  AND JUST DOESN'T DESCRIBE

```
 1   IT GENERALLY.  SAYS:

 2                    "BROWN USES A DEVICE WHICH EMPLOYS AN ELASTIC

 3              LOOP."

 4              HERE THEY HAVE AN ELASTIC LOOP (INDICATING).

 5                    "WHICH IS JOINED TO ITSELF WHICH CAN SECURE

 6              AROUND A PONYTAIL AND A LENGTH OF HAIR WHICH IS

 7              ATTACHED TO THE ELASTIC LOOP AT ONE END BUT IS FREE

 8              AT ITS OPPOSITE END."

 9              YOUR HONOR ASKED WHERE WE PART. THAT'S WHERE WE PART.

10   WHAT THE PLAINTIFFS NEED TO DO, THE REASON THEY ARE TRYING TO

11   RECAPTURE SOMETHING THAT IS SPECIFICALLY DISAVOWED BOTH IN THE

12   SPEC AND YOUR HONOR WILL FIND IT IN THE PROSECUTION HISTORY, IS

13   BECAUSE THEY HAVE TO.  THEY DON'T HAVE A THEORY OF INFRINGEMENT

14   BECAUSE, AGAIN, THE CONAIR PRODUCT, IT'S LICENSED UNDER BROWN.

15   SO WE CAN TAKE YOU THROUGH.  WE WILL GO BACK REALLY BRIEFLY.

16   THIS WILL MAKE IT MORE CLEAR.

17              YOU'VE SEEN WHAT THE '884 PATENT LOOKS LIKE.  NOW, WE

18   CAN GO AND YOU'LL HEAR EXACTLY HOW THE '884'S TECHNOLOGY IS

19   USED.

20              AND THIS IS FROM THE PLAINTIFF'S OWN --

21              (THEREUPON, A VIDEO WAS PLAYED.)

22              MR. FITZPATRICK:  I DON'T THINK YOU NEED TO SEE MORE

23   OF THAT, BUT IN CASE, THE TUTORIAL THAT WE'VE BEEN GOING OVER.

24              MAY I APPROACH?

25              SKIP ON DOWN TO -- SO, YOUR HONOR, AGAIN, YOU ASKED
```

1    WHERE THE PARTIES DEPART. IT APPEARS FROM PLAINTIFF'S

2    CONSTRUCTION THAT THEY WANT TO READ OUT:

3              "A PAIR OF ELASTIC BAND ENDS."

4         AND, AGAIN, THEY NEED TO DO THAT.

5         OUR CONSTRUCTION DOES COME FROM THE SPEC.  IT COMES

6    FROM THE SPECIFICATION. WE USE CORD TO DENOTE THE MATERIAL AS

7    OPPOSED TO THE CONFIGURATION, BECAUSE THE PATENT GENERALLY

8    DESCRIBES A BAND AS A RING.

9         AND SO TO MAKE IT EASIER FOR THE JURY IF YOU'RE

10   TALKING ABOUT BAND ENDS IT'S MORE LIKELY THAT WHAT IS UNDERSTOOD

11   AS BAND ENDS WOULD BE A CORD.

12        AND IF YOU LOOK AT THE '884 PATENT, WHICH YOU'LL FIND

13   IT'S AN ELASTIC CORD THAT IS USED, NOT AN ELASTIC BAND AS AN

14   ELASTIC BAND THAT IS USED IN THE ACCUSED DEVICE.

15        BUT MORE IMPORTANTLY, IN EVERY DEPICTION AND

16   DESCRIPTION IN THE '884 PATENT THE PATENT SHOWS A PAIR OF

17   ELASTIC BAND ENDS JOINED NOT TO ONE ANOTHER, BUT TO SYNTHETIC

18   HAIR FIBER ENDS.  AND, IN FACT, THE PATENT ONLY DESCRIBES HOW TO

19   JOIN ELASTIC BAND ENDS TO SYNTHETIC HAIR FIBER ENDS, NOT TO EACH

20   OTHER SEPARATELY, AS PLAINTIFF'S CONSTRUCTION WOULD HAVE YOU

21   BELIEVE.

22        AND IF YOU CONSTRUED IT AS THE PLAINTIFFS PROPOSED IT

23   NOT ONLY WOULDN'T MAKE SENSE, IT WOULDN'T BE OPERABLE.  YOU

24   WOULD BE LEFT WITH A DEVICE THAT WOULDN'T WORK BECAUSE IT

25   WOULDN'T FORM A CLOSED LOOP.

```
 1              YOUR HONOR POINTED OUT YOU WOULD HAVE TWO CLOSED

 2   LOOPS.  BUT IT WOULDN'T FORM A SINGLE CLOSED LOOP.  AND IT

 3   WOULDN'T WRAP AROUND A PONYTAIL SUCH THAT THE ELASTIC -- THAT'S

 4   WHAT THE PATENT --

 5              THE COURT:  YOU'RE GOING TO HAVE TO BACK UP. I

 6   UNDERSTAND THE GENERAL POINT YOU'RE TRYING TO MAKE, BUT I DON'T

 7   UNDERSTAND THE SPECIFICS OF IT. YOU'RE TRYING TO SAY THAT THE

 8   PRODUCT OR THE METHOD WOULDN'T WORK IF IT WERE CONSTRUED THE WAY

 9   THEY WANT TO CONSTRUE IT.  SO GO BACK OVER THAT AGAIN.

10              MR. FITZPATRICK:  OKAY. WELL, FIRST OFF, YOUR HONOR,

11   FOR THIS TO WORK, FOR THE --

12              THE COURT:  WHAT IS IT YOU ARE HOLDING UP?

13              MR. FITZPATRICK:  EXCUSE ME?

14              THE COURT:  WHAT ARE YOU HOLDING UP?

15              MR. FITZPATRICK:  I WAS HOLDING UP THE PATENTED

16   DEVICE.

17              THE COURT:  THE TONYTAIL.

18              MR. FITZPATRICK:  THE TONYTAIL.

19              WHAT THE PATENT CONTEMPLATES IS A DEVICE IN WHICH THE

20   ELASTIC BAND PULLS -- THE ELASTIC BAND AND THE SYNTHETIC HAIR

21   FIBERS ENCIRCLE THE PONYTAIL.  AND THE ELASTIC BAND, BECAUSE THE

22   HAIR FIBERS ARE NOT ELASTIC AND DON'T HAVE TENSION, THE ELASTIC

23   BAND IS WHAT PULLS THE SYNTHETIC HAIR FIBERSS ONTO THE TONYTAIL.

24              AND IT ACTUALLY SAYS THAT IN -- SAYS:

25                  "THE ELASTIC BAND PORTION FORMS A CONTINUOUS
```

1      LOOP."

2           THIS IS STRAIGHT FROM THE SPEC, THE SPECIFICATION.

3      SAYS:

4           "THE ELASTIC BAND PORTION FORMS A CONTINUOUS

5      LOOP WITH THE LESS STRETCHABLE SYNTHETIC HAIR FIBERS.

6      THE TENSION OF THE ELASTIC BAND ACTS TO PULL THE

7      SYNTHETIC HAIR FIBERS TIGHTLY AROUND THE PONYTAIL."

8           WELL, FIRST, THAT WOULDN'T HAPPEN.

9           **THE COURT:**  WHAT WOULDN'T HAPPEN?  I MEAN, I

10     UNDERSTAND THAT.  BUT WHY -- EXPLAIN TO ME WHAT THEIR -- HOW

11     THEIR DEFINITION WOULD KEEP THAT FROM HAPPENING.

12          **MR. FITZPATRICK:**  WELL, BECAUSE THEIR DEFINITION

13     WOULD LEAVE -- THE ELASTIC BAND ENDS COULD BE JOINED TO EACH

14     OTHER BECAUSE THEY SAY IT'S TO SERVE TO ENCIRCLE, AND TO JOIN

15     TOGETHER AND ENCIRCLE.

16          SO THEY'RE THINKING:

17          "NO, DON'T WORRY ABOUT WHAT WE TOLD THE PATENT

18     OFFICE.  DON'T WORRY ABOUT WHAT WE TOLD THE WORLD IN

19     THE SPECIFICATION, YOU GOT TO READ THIS ON THE BROWN

20     DEVICE."

21          IF YOU HAVE THE ELASTIC BAND ENDS JOINED TOGETHER

22     THAT DOESN'T WRAP --

23          **THE COURT:**  IN OTHER WORDS, IT WOULD LOOK LIKE A

24     FIGURE 8.

25          **MR. FITZPATRICK:**  IT WOULD LOOK LIKE A FIGURE 8,

1    THAT'S RIGHT, YOUR HONOR.

2              **THE COURT:**  THAT'S THE WAY YOURS DOES LOOK.

3              **MR. FITZPATRICK:**  THAT'S RIGHT, YOUR HONOR.

4              **THE COURT:**  YOURS DOES LOOK LIKE A FIGURE 8.

5              **MR. FITZPATRICK:**  THAT'S RIGHT.  AND HOW -- AND SO IF

6    WE LOOK AT THE OTHER -- AND SO IT WOULDN'T FORM A CLOSED LOOP,

7    AT LEAST NOT THE CLOSED LOOP THAT IS DESCRIBED UNIFORMLY IN

8    THE --

9              **THE COURT:**  WELL, THE PATENT DOES SAY:

10                 "THE SYNTHETIC HAIR FIBER END JOINED TO THE

11              ELASTIC BAND ENDS TO FORM A CLOSED LOOP."

12             **MR. FITZPATRICK:**  THAT'S RIGHT. AND YOU ASKED WHERE

13   THE PARTIES DEPART.  THAT'S WHERE IT IS.

14             **THE COURT:**  THAT'S WHERE THE RUBBER MEETS THE ROAD,

15   SO TO SPEAK.

16             **MR. FITZPATRICK:**  IT IS.  IT IS, YOUR HONOR.

17             AND IF YOU LOOK THROUGH -- YOU CAN GO TO THE CLAIM 4

18   ITSELF.  BACK TO SLIDE 14.

19             CLAIM 4 ITSELF DESCRIBES:

20                 "A DEVICE COMPRISING ELASTIC BAND HAVING A PAIR

21              OF ELASTIC BAND ENDS."

22             AND, AGAIN, IF YOUR HONOR KEEPS READING:

23                 "SYNTHETIC HAIR FIBER ENDS JOINED TO THE ELASTIC

24              BAND ENDS FORM A CLOSED LOOP."

25             IN EACH DEPICTION AND IN EACH DESCRIPTION THIS IS

```
 1   WHAT THE PATENT SHOWS.

 2              IF YOU GO TO THE NEXT SLIDE:

 3                  "A DEVICE COMPRISING THE SYNTHETIC HAIR FIBERS

 4                  JOINED TO AN ELASTIC BAND TO FORM A CLOSED LOOP."

 5              GO TO THE NEXT ONE. HERE THIS IS FROM THE

 6   SPECIFICATION WHERE IT DESCRIBES EXACTLY HOW THIS WORKS.

 7                  "THE ELASTIC BAND HAS A PAIR OF ELASTIC BAND ENDS

 8                  SYNTHETIC HAIR FIBERS."

 9              SKIP ON DOWN.

10                  "A PAIR OF CONNECTORS ARE USED TO PERMANENTLY

11                  JOIN EACH ONE OF THE ELASTIC BAND ENDS TO ONE OF THE

12                  HAIR FIBER ENDS."

13              IF YOU GO DOWN ANOTHER -- HERE WE SEE IN A SHADING IN

14   ORANGE.  THERE'S THE PAIR OF ELASTIC BAND ENDS.  AND THERE'S A

15   PAIR OF CONNECTORS THAT ARE USED TO PERMANENTLY JOIN EACH OF THE

16   ELASTIC BAND ENDS TO ONE OF THE HAIR FIBER ENDS.

17              AND THEN, WE SEE HOW -- THIS IS WHAT IS USED TO FORM

18   THE CLOSED LOOP.

19              AND, YOUR HONOR, THIS ISN'T ONE OF SEVERAL

20   EMBODIMENTS.  THIS IS IT.  THIS IS WHAT THEY DESCRIBE.  THIS IS

21   WHAT THEY DEFINED.

22              AND AS YOU CAN SEE FROM THE BEGINNING OF THE PATENT

23   IN COLUMN ONE, THEY SPECIFICALLY SAID:

24                  "WE'RE NOT TALKING ABOUT BROWN."

25              THEY SAID WHEN THEY DESCRIBED BROWN AS A DEVICE WHICH
```

1    EMPLOYS THAT ELASTIC LOOP WHICH CAN SECURE AROUND A PONYTAIL AND

2    A LENGTH OF HAIR WHICH IS ATTACHED TO THE ELASTIC LOOP AT ONE

3    END, BUT IS FREE AT ITS OPPOSITE END, THEY SAID:

4                    "WHILE THESE UNITS MAY BE SUITABLE FOR THE

5                    PARTICULAR PURPOSE EMPLOYED, OR FOR GENERAL USE, THEY

6                    WOULD NOT BE AS SUITABLE FOR THE PURPOSES OF THE

7                    PRESENT INVENTION AS DISCLOSED HEREAFTER."

8                    MOREOVER, IN THE PROSECUTION THE APPARATUS WAS

9    REJECTED AS OBVIOUS IN LIGHT OF BROWN TOGETHER WITH ANOTHER

10   PATENT, NAIDOR.

11                   SO THE PATENTEE WENT BACK, AND THEY SAID:

12                   "ALL RIGHT.  WE'VE GOT TO FIX THAT."

13                   AND HOW DID THEY TRY TO FIX IT?  THEY FIXED IT, TRIED

14   TO FIX IT BY SAYING -- ADDING THIS WORDING.  THIS IS WHAT --

15   THIS IS THEIR AMENDMENT IN RESPONSE TO THE REJECTION.

16                   AND THIS BLEEDS THROUGH, YOUR HONOR, BY THE WAY.

17           **THE COURT:**  THIS WHAT?

18           **MR. FITZPATRICK:**  THIS BLEEDS THROUGH.  THIS DOESN'T

19   JUST APPLY TO THE ELASTIC BAND ENDS.  THIS ALSO APPLIES TO THE

20   SYNTHETIC HAIR FIBER ENDS.  AND FOR THAT MATTER, THE CLOSED

21   LOOP.

22                   THE REASON, YOUR HONOR, IN GENERAL THAT WE CAN'T --

23   YOU THINK WITH A TECHNOLOGY THIS SIMPLE, YOU THINK WE COULD ALL

24   JUST COME IN HERE AND SAY:

25                   "WELL, IT'S THE PLAIN AND ORDINARY MEANING."

1           AND ORDINARILY I WOULD SAY THAT'S THE CASE. BUT NOT,

2   NOT WHERE THERE'S ONLY ONE EMBODIMENT THAT'S DISCLOSED IN THE

3   SPECIFICATION AND NOT WHERE BOTH IN THE SPECIFICATION AND IN THE

4   PROSECUTION, PROSECUTION HISTORY, THE PATENTEE GOES TO GREAT

5   PAINS TO SAY WHAT IT'S NOT, AND SAY:

6                   "WE'RE NOT TALKING ABOUT BROWN. WE'RE NOT TALKING

7                   ABOUT ONE WITH ONE END FREE."

8           **THE COURT:**  WELL, SHOW ME THAT LANGUAGE WHERE THEY

9   SAY BROWN IT'S ONE END FREE AND --

10          **MR. FITZPATRICK:**  COLUMN ONE. IT'S FROM COLUMN ONE,

11  YOUR HONOR.  AND HERE IT SAYS:

12                  "BROWN DISCLOSES AN APPARATUS AND METHOD FOR

13                  SECURING A PONYTAIL.  BROWN USES A DEVICE WHICH

14                  EMPLOYS AN ELASTIC LOOP WHICH CAN SECURE AROUND A

15                  PONYTAIL AND A LENGTH OF HAIR WHICH IS ATTACHED TO

16                  THE ELASTIC LOOP AT ONE END BUT IS FREE AT ITS

17                  OPPOSITE END."

18          AND THEY SAY:

19                  "THAT'S NOT WHAT WE'RE TALKING ABOUT HERE."

20          AND IN THE PROSECUTION HISTORY, THEY ARE REJECTED

21  BECAUSE IT WAS OBVIOUS IN LIGHT OF BROWN AND ANOTHER REFERENCE

22  FROM 1951, I THINK, NAIDOR.

23          AND TAKEN TOGETHER WITH THE UNIFORM DESCRIPTION IN

24  THE SPECIFICATION WHERE YOU HAVE ELASTIC BAND ENDS THAT ARE

25  JOINED TO SYNTHETIC HAIR FIBER ENDS TO FORM A SINGLE CLOSED

```
 1    LOOP, YOU CAN'T WALK IN AND SAY:

 2                    "WELL, ELASTIC BAND ENDS COULD JUST BE AN

 3    ELASTIC BAND THAT SERVES TO ENCIRCLE AND JOIN TOGETHER."

 4            THE COURT:  WELL, IN BROWN, THOUGH, WHAT GOOD WOULD

 5    IT DO TO HAVE A -- WHAT WAS THE PURPOSE OF THE LOOSE END?

 6            MR. FITZPATRICK:  THE PURPOSE OF THE LOOSE END, YOUR

 7    HONOR, WAS TO DO THE SAME THING AS IN THE ACCUSED DEVICE SO THAT

 8    THE ELASTIC BAND WOULD TIE AROUND THE PONYTAIL, AND THEN THE

 9    LOOSE END WOULD THEN WRAP AROUND THE BAND.

10            THE COURT:  AND THEN, GET FIXED SOMEHOW.

11            MR. FITZPATRICK:  WELL, I'M NOT DOING IT RIGHT

12    BECAUSE I DON'T HAVE LONG HAIR.  BUT IF YOU -- IF MY FINGERS

13    WERE MY HAIR, THEN I WOULD WRAP THIS AROUND AND NOW --

14            THE COURT:  AND BROWN SAID IT WOULD BE FIXED IN WHAT

15    MANNER?

16            MR. FITZPATRICK:  I WOULDN'T SAY "FIXED."

17            THE COURT:  IT WOULD NOT BE LOOSE AT THE END UNDER

18    BROWN.

19            MR. FITZPATRICK:  NO, BECAUSE THAT WOULD BE JOINED

20    WITH LIKE I THINK THEY SAID A PIN OR JAWS, LIKE A CLIP.

21            THE COURT:  BUT YOU HAVE THE ACTUAL LANGUAGE IN

22    BROWN.  WHEN A LAWYER SAYS "I THINK" OR "BELIEVE" IT'S

23    FIFTY-FIFTY.

24            MR. FITZPATRICK:  I APOLOGIZE, YOUR HONOR.  I'LL GET

25    THE ACTUAL LANGUAGE FROM BROWN.
```

1          **MS. MATLOCK:**  I HAVE IT, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.

3          **MR. FITZPATRICK:**  THIS IS FROM COLUMN ONE -- EXCUSE

4    ME -- COLUMN THREE OF THE BROWN PATENT IN THE SUM OF INVENTION.

5               SAYS:

6               "THE APPARATUS COMPRISES A LENGTH OF ARTIFICIAL

7               HAIR OTHER THAN THE USER'S INTACT HAIR HAVING A

8               PLURALITY OF INDIVIDUAL HAIR STRANDS.  FIRST ENDS OF

9               THE STRANDS ARE CONNECTED TO A PONYTAIL SECURING

10              MEMBER.  ONE EXAMPLE BEING A LOOP OF ELASTIC

11              MATERIAL.  THE OPPOSITE OR DISTAL ENDS OF THE STRANDS

12              CAN BE FREE OR CAN INCLUDE A SECOND SECURING MEMBER.

13              ONE EXAMPLE BEING A CONVENTIONAL HAIR PIN OR CLAMP."

14         **THE COURT:**  ALL RIGHT. "HAIR PIN OR CLAMP."

15         **MR. FITZPATRICK:**  THAT'S RIGHT, YOUR HONOR.

16         **THE COURT:**  BUT YOU HAVE A MAGNET.

17         **MR. FITZPATRICK:**  YES, YOUR HONOR, TO ACHIEVE THE

18   SAME PURPOSE AS IN BROWN.

19         **THE COURT:**  ALL RIGHT.  NOW, IN THE PROSECUTION

20   HISTORY OF THE PATENT-IN-SUIT, WHAT WAS SAID ON THE SUBJECT OF

21   BROWN AND HOW THEY GOT AROUND BROWN?

22         **MR. FITZPATRICK:**  WELL, THE PROSECUTION HISTORY --

23   WHAT THE PATENT OFFICE SAYS THEY REJECTED IT.  SAID:

24              "THIS IS OBVIOUS IN LIGHT OF BROWN."

25         **THE COURT:**  I UNDERSTAND THAT.  BUT THEN THEY GOT

```
1    AROUND THAT, SO HOW DID THEY GET AROUND --
2              MR. FITZPATRICK:  SO THE PATENTEE WENT BACK, AND THEY
3    SAID:
4                   "ALL RIGHT. WE WILL MAKE SURE THAT WHAT WE'RE
5                   DISCLOSING IS SOMETHING THAT DOES NOT HAVE ONE END
6                   FREE. IT'S PERMANENTLY JOINED."
7              AN AGREEMENT WAS REACHED THAT AMENDED CLAIM 1.
8    THERE ARE ERRORS IN WHAT THE REMARKS WERE TO THE PATENT OFFICE.
9              BUT ONE OF THE ELASTIC BAND ENDS IS PERMANENTLY
10   JOINED WITH ONE OF THE SYNTHETIC HAIR ENDS.  AND THAT THE OTHER
11   OF THE ELASTIC BAND ENDS IS PERMANENTLY JOINED WITH THE OTHER OF
12   THE SYNTHETIC FIBER ENDS.
13             AND SO THE AMENDMENT IS HERE BELOW, YOUR HONOR, IN
14   ORANGE WHERE IT SAYS:
15                  "WHERE ONE OF THE ELASTIC BAND ENDS IS
16                  PERMANENTLY JOINED WITH ONE OF THE SYNTHETIC HAIR
17                  FIBER ENDS, AND THE OTHER OF THE ELASTIC BAND ENDS IS
18                  PERMANENTLY JOINED WITH THE OTHER OF THE SYNTHETIC
19                  FIBER ENDS SO THAT THE ELASTIC BAND ENDS AND
20                  SYNTHETIC HAIR FIBERS TOGETHER FORM A CLOSED LOOP."
21             AND IF WE GO BACK TO THE OTHER ONE, YOU'LL NOTE THAT
22   THE REMARKS, INCLUDING "THE OTHER OF THE SYNTHETIC HAIR FIBER
23   ENDS" WOULD HELP CLARIFY THE CLAIMS.  AND, IN SHORT, THEY DO NOT
24   INADVERTENTLY READ UPON NAIDOR.  NAIDOR WAS --
25             THE COURT:  I THOUGHT YOU WERE RELYING ON BROWN.
```

```
1    THAT'S REFERRING TO NAIDOR.

2             MR. FITZPATRICK:  YES, IT WAS NAIDOR AND BROWN THE

3    REJECTION WAS IN LIGHT OF.  IT WAS AN OBVIOUSNESS REJECTION IN

4    LIGHT OF NAIDOR AND BROWN.

5             THE COURT:  ALL RIGHT.  SO YOU MUST KNOW WHAT THE --

6    BECAUSE I'M GOING TO HEAR FROM THEM IN A MINUTE -- WHAT DOES

7    YOUR OPPONENT SAY IS THE ANSWER TO BROWN AND SO FORTH?

8             AND THEN, I'LL GIVE YOU A -- LET YOU EXPLAIN WHAT

9    YOUR ANSWER TO THAT IS.

10            MR. FITZPATRICK:  IN TERMS OF ELASTIC BAND ENDS, I'M

11   NOT SURE WHAT THE ARGUMENT IS BECAUSE THAT WASN'T ADDRESSED THAT

12   WAY IN THEIR BRIEFS.  BUT I IMAGINE WHAT THEIR ANSWER IS IS THAT

13   THEY DIDN'T REALLY DISAVOW BROWN.

14            AND THE SPECIFICATION DOESN'T EXPLICITLY DISAVOW IT.

15   AND IT'S PART OF THE PRIOR ART.  I THINK I WOULD LET THEM MAKE

16   THAT ARGUMENT.

17            OUR RESPONSE, THOUGH, IS UNFORTUNATELY BROWN OR NO

18   BROWN, SPECIFICATION IS VERY CLEAR ON THE ELASTIC BAND ENDS.

19   IT'S UNIFORMLY DEPICTED.

20            AND THERE'S A REASON IT IS.  AND SO I'M JUST

21   PROVIDING THE REASON THEY DEPICTED IT THAT WAY.

22            THE COURT:  ALL RIGHT.

23            MR. FITZPATRICK:  THEY ARE NOT TRYING TO RECAPTURE

24   THAT.

25            THE COURT:  ALL RIGHT.  WHY DON'T YOU HAVE A SEAT?
```

1    YOU USED UP 20 MINUTES, 21 MINUTES.

2              LOOK, I WANT TO CUT TO THE CHASE HERE. I UNDERSTAND

3    HOW PATENT PROSECUTION WORKS. AND I'LL JUST BE HONEST WITH YOU.

4    THIS THING LOOKS TO ME LIKE IT READS RIGHT ON BROWN.  AND

5    THERE'S A GOD-GIVEN RIGHT IN THIS COUNTRY TO PRACTICE THE PRIOR

6    ART.

7              SO THE BURDEN IS ON YOU, MR. MATLOCK.

8              **MR. MATLOCK:**  YES, SIR.

9              **THE COURT:**  YOU EXPLAIN TO ME -- EXPLAIN TO ME -- I'M

10   INTERESTED TO HEAR HOW YOU COULD ACCUSE THIS DEVICE OF -- THIS

11   IS RIGHT OUT OF THE BROWN PATENT, ISN'T IT?

12             **MR. MATLOCK:**  YOUR HONOR, I'D LIKE TO START WITH

13   ANSWERING THE QUESTION THAT YOU ASKED OUR OPPOSING COUNSEL A

14   SECOND AGO WITH RESPECT TO THE FILE HISTORY.

15             **THE COURT:**  ALL RIGHT.  DO IT ANY WAY YOU WANT, BUT

16   MAKE SURE YOU ANSWER MY QUESTION BEFORE YOU SIT DOWN.

17             **MR. MATLOCK:**  ABSOLUTELY. YES, SIR.  YES, SIR.  SEE,

18   DEFENDANTS' ARGUMENTS THAT HAVE BEEN MADE FOR THE LAST 20

19   MINUTES ARE ALL COMPLETELY IRRELEVANT TO THE CLAIM THAT WE'RE

20   DISCUSSING HERE TODAY.  WE'RE DISCUSSING A METHOD CLAIM, CLAIM

21   4.

22             THE ARGUMENTS WITH RESPECT TO BROWN AND THE FILE

23   HISTORY ARE WITH RESPECT TO AN APPARATUS CLAIM 1 THAT WAS FOUND

24   IN THE '884 PATENT.  AND THE APPARATUS CLAIM WAS DIRECTED TO

25   LANGUAGE ABOUT HOW THE DEVICE IS STRUCTURED, WHEREAS THE

1    LANGUAGE OF CLAIM 4 IN THE '884 PATENT AND INFRINGEMENT OF THE

2    '884 PATENT IS ABOUT PRACTICING THE STEPS, THE METHOD STEPS, THE

3    TANGIBLE STEPS.

4                 IN FACT, YOUR HONOR, CLAIMS 1 THROUGH 3 OF THE '884

5    PATENT ARE NOT EVEN AT ISSUE IN THIS CASE, BECAUSE BOTH PARTIES

6    HAVE AGREED THAT THE PATENTS HAVE BEEN DISMISSED.

7                 SO TO DISCUSS CLAIM HISTORY WITH RESPECT TO CLAIMS 1

8    THROUGH 3 ARE NOT --

9                 **THE COURT:**  YES.  BUT YOUR CLAIM NUMBER -- YOU KNOW,

10   THIS IS -- I DON'T KNOW HOW YOU GOT THIS THROUGH THE PTO.  BUT

11   IT SAYS:

12                      "A HAIR BINDING METHOD," BUT THEN IT GOES ON TO

13                 DESCRIBE A DEVICE, WHERE IT SAYS:

14                      "COMPRISING AN ELASTIC BAND HAVING A" -- IN OTHER

15   WORDS, IT'S A METHOD, BUT IT DEPENDS UPON THIS DEVICE THAT HAS A

16   CLOSED LOOP.

17                 **MR. MATLOCK:**  IT'S A METHOD, YOUR HONOR, THAT COULD

18   BE PRACTICED BY A NUMBER OF DEVICES, AS DISCLOSED IN OUR

19   SPECIFICATION OF THE '884, WHICH IS DRAWN TO MULTIPLE

20   EMBODIMENTS.  THE LANGUAGE AT ONE POINT IN THE SPECIFICATION

21   REFERS TO AN OBJECT.

22                 **THE COURT:**  NOW, WAIT A MINUTE. IF YOU'VE GOT A CLAIM

23   THAT SAYS A DEVICE, A METHOD FOR DRIVING -- A METHOD FOR DRIVING

24   AN AUTOMOBILE, ALL RIGHT?  THEN, THE VEHICLE IN QUESTION IS AN

25   AIRPLANE, YOU CAN'T SAY:

1            "OH, WAIT A MINUTE.  YOU'RE USING THE SAME

2           METHOD.  YOU GOT A STEERING WHEEL.  YOU GOT PEDALS."

3           NO.  IT REQUIRES THAT YOU HAVE AN AUTOMOBILE. WELL,

4 HERE YOUR OWN METHOD REQUIRES THAT YOU HAVE A CLOSED LOOP.

5         **MR. MATLOCK:**  YES, SIR. AND THERE WOULD BE MULTIPLE

6 DEVICES THAT WOULD HAVE A CLOSED LOOP THAT WOULD MEET THE

7 REQUIREMENTS FOUND IN THERE.

8         **THE COURT:**  THIS DOES NOT DO THAT. THIS -- THESE

9 ENDS -- THIS IS THE FIGURE 8 THING. THE SYNTHETIC ENDS DON'T

10 CONNECT UP TO THE HAIR AND SO FORTH.  LOOKS VERY MUCH LIKE THE

11 BROWN PATENT.

12         **MR. MATLOCK:**  THE VIDEO SHOWN BY THE DEFENDANT IS

13 ACTUALLY A VERY GOOD DESCRIPTION, YOUR HONOR, OF THE METHOD THAT

14 IS CLAIMED AND THE MULTIPLE DEVICES THAT CAN PRACTICE THAT

15 METHOD.

16         WITH YOUR PERMISSION --

17         **THE COURT:**  WELL --

18         **MR. MATLOCK:**  -- I WOULD LIKE TO INVITE --

19         **THE COURT:**  -- A LOT OF TEENAGER FRIENDS, AND THEY

20 DID THEIR HAIR THE SAME WAY THAT WAS ON THAT VIDEO. EVERYBODY I

21 KNEW WHO HAD A PONYTAIL WRAPPED THEIR HAIR DOUBLED WITH A RUBBER

22 BAND. YOU WOULD BE CLAIMING A RUBBER BAND.

23         **MR. MATLOCK:**  WELL, ACTUALLY, YOUR HONOR, THE CLAIM

24 WAS DIRECTED TO THE DEVICE THAT LOOKED LIKE NATURAL HAIR. IT WAS

25 AT THE TIME --

1          **THE COURT:** WELL, THAT'S GOT NOTHING TO DO WITH THE

2   METHOD.

3          **MR. MATLOCK:** BUT IT DOES IN THE SENSE THAT THE

4   SYNTHETIC HAIR FIBERS LOOK LIKE A PONYTAIL AS ONE OF THE -- AS

5   ONE OF THE CLAIMS TERMS, YOUR HONOR.

6          AND ALSO TO THE EXTENT THAT THE METHOD CLAIMS

7   THEMSELVES CAN BE PRACTICED BY MULTIPLE DEVICES, AS I MENTIONED,

8   I WOULD LIKE WITH YOUR PERMISSION TO HAVE THE PLAINTIFF COME UP

9   AND DEMONSTRATE TO YOU HOW MULTIPLE DEVICES COULD ACTUALLY

10  PRACTICE THE METHOD.

11         **THE COURT:** OKAY. WHO IS THAT PLAINTIFF?  ARE YOU THE

12  INVENTOR?

13         **MS. MINNELLI:** I AM.

14         **THE COURT:** WELL, GREAT.  COME ON UP HERE, AND LET ME

15  SEE HOW YOU WOULD DO THIS.

16         **MS. MINNELLI:** WELL, ONE OF THE DIFFERENCES --

17         **THE COURT:** YOU ARE MS. MIA MINNELLI?

18         **MS. MINNELLI:** I AM.  HOW ARE YOU?

19         **THE COURT:** FROM 7070 BROADWAY?

20         **MS. MINNELLI:** NO.  WE MOVED.  WE'RE AT 12919 ALCOSTA

21  BOULEVARD, SUITE FOUR.

22         **THE COURT:** YOU INVENTED THIS THING?

23         **MS. MINNELLI:** I DID.  FIRST TO LAUNCH IT ON THE

24  MARKET BEFORE BROWN OR ANYBODY.

25         **THE COURT:** OKAY.  LET'S HAVE THE DEMONSTRATION.

1      **MS. MINNELLI:**  WELL, THE DIFFERENCE BETWEEN THE OTHER

2    PRODUCT IS THE OTHER PRODUCT DOES PERMANENTLY ATTACH.  YOU CAN'T

3    WEAR IT WITH THE HAIR HANGING OFF THE RUBBER BAND. AND THIS GOES

4    IN YOUR HAIR VERY SIMPLY AND EASILY.  AND THAT'S WHY IT SELLS SO

5    WELL ON THE MARKET.

6              AND THAT'S WHY WE BELIEVE CONAIR IS TRYING TO MAKE IT

7    NOW.  THEY HAVE BEEN TRYING FOR EIGHT YEARS TO COPY OUR PRODUCT.

8              IT GOES IN YOUR HAIR VERY SIMPLY AND EASILY, JUST

9    LIKE A RUBBER BAND WOULD.  IT TAKES SECONDS TO PUT IN, GIVES

10   THAT YOU HAIR BACK LOOK, AND IT LOOKS MUCH NICER THAN A RUBBER

11   BAND.

12             BUT IT GIVES A WOMAN -- IT'S EASIER TO DO THAN DOING

13   YOUR OWN HAIR, WRAPPING IT AROUND LIKE THE BROWN PATENT WOULD

14   DO.

15             YOU HAVE TO TAKE THE HAIR AND ACTUALLY WRAP IT AROUND

16   AND TAKE A PIN AND HOLD IT IN PLACE.

17             AND I GUESS CONAIR HAS FOUND A WAY TO PUT THE MAGNETS

18   THERE TO -- I DON'T KNOW WHAT IT DOES.  IT'S VERY HARD TO USE.

19   I WISH I COULD GIVE YOU A DEMONSTRATION OF THE BROWN PATENT OR

20   THEIR KNOCKOFF PRODUCT. IT'S VERY DIFFICULT TO USE, BECAUSE ONCE

21   YOU PUT THIS IN YOUR HAIR -- I'LL SHOW YOU -- IT TANGLES.  SO --

22             **THE COURT:**  WELL, BUT --

23        **MS. MINNELLI:**  AND IT STICKS TO THE MAGNET, SO IT'S

24   VERY DIFFICULT. SEE HOW THE HAIR -- YOU CAN'T FIGURE OUT IF THE

25   HAIR IS ON TOP OR ON THE BOTTOM.  AND WHEN YOU GO TO WRAP IT IT

1    TANGLES IN YOUR PONYTAIL AND YOU HAVE TO FIGURE OUT WHERE THE

2    MAGNETS FALL.

3              SO OUR PRODUCT IS VERY DIFFERENT FROM THIS. THIS IS

4    VERY DIFFICULT TO USE. BUT, IN EFFECT, WHEN YOU DO ATTACH IT YOU

5    HAVE TO ATTACH IT AND CLOSE IT IN A PERMANENTLY CLOSED LOOP IN

6    ORDER TO USE IT.  YOU CAN'T WEAR IT HANGING OFF LIKE THAT.  IT

7    WON'T LET YOU, ANYWAY, APPARENTLY, SO --

8              **THE COURT:**  BUT YOU SEE YOUR DIAGRAM HAS GOT THIS

9    SINGLE CLOSED LOOP THAT IS A GIANT CIRCLE.

10              **MS. MINNELLI:**  RIGHT.

11              **THE COURT:**  AND THEIR ACCUSED DEVICE LOOKS LIKE A

12   FIGURE 8. AND MAYBE THAT'S WHY IT'S HARDER TO USE AND ALL THAT,

13   BUT --

14              **MS. MINNELLI:**  ON THE PACKAGE IT DOESN'T LOOK --

15              **THE COURT:**  YOU TELL ME THERE ARE DIFFERENCES.

16              **MR. MATLOCK:**  THANK YOU.

17              **THE COURT:**  WELL, WAIT A MINUTE.  I WOULD LIKE TO

18   CONTINUE WITH THE DEMONSTRATION.

19              **MS. MINNELLI:**  OKAY.

20              **THE COURT:**  YOU YOURSELF SAID IT WAS HARDER TO USE

21   AND DIDN'T LOOK AS GOOD AND ALL THAT.

22              **MS. MINNELLI:**  WELL, IT GIVES THE SAME LOOK. YOU

23   CANNOT TELL THE DIFFERENCE.

24              **THE COURT:**  GIVES YOU THE SAME LOOK.  YOU SAID IT WAS

25   HARDER TO PUT ON.

1      **MS. MINNELLI:**  FOR ME IT'S HARDER TO PUT ON, YES.

2   THEY HAVE BEEN TRYING TO MAKE THIS PRODUCT FOR MANY YEARS, EIGHT

3   YEARS SINCE I'VE HAD THE TONYTAIL.  SO THEY FINALLY HAVE TRIED

4   TO COME UP WITH A WAY TO PUT THE MAGNETS IN, OR WHATEVER, TO

5   COME UP WITH A DIFFERENT PRODUCT.

6      BUT IT'S A HARD PRODUCT TO USE, AND I DON'T THINK IT

7   WILL DO WELL COMPARED TO WHAT WE'VE DONE WITH IT.

8      **THE COURT:**  ALL RIGHT.  WELL, I WANT TO THANK YOU FOR

9   YOUR DEMONSTRATION.

10      **MS. MINNELLI:**  YOU'RE WELCOME.  THANK YOU, YOUR

11   HONOR.

12      **THE COURT:**  AND I ENJOY HAVING THE INVENTORS COME TO

13   COURT.

14      **MS. MINNELLI:**  OKAY.  ANY TIME, HOPEFULLY.

15      **THE COURT:**  I'LL LOOK FORWARD TO YOUR TESTIMONY.

16      **MS. MINNELLI:**  OKAY.  FANTASTIC.

17      **MR. MATLOCK:**  AND, YOUR HONOR, EACH AND EVERY

18   LIMITATION FOUND IN THE METHOD CLAIM 4 WAS PRACTICED BY THE

19   PLAINTIFF JUST THEN AS SHE PUT THAT ACCUSED DEVICE IN HER HAIR.

20      **THE COURT:**  WAIT. THERE'S NO SINGLE CLOSED LOOP.

21   THERE'S NO "A CLOSED LOOP."

22      **MR. MATLOCK:**  "TO FORM A CLOSED LOOP."  IT CERTAINLY

23   DOESN'T SAY TO FORM ONLY ONE CLOSED LOOP.  IT DOES FORM A CLOSED

24   LOOP.

25      **THE COURT:**  WHAT PART --

```
 1              MR. MATLOCK:  IT DOES FORM A CLOSED LOOP.

 2              THE COURT:  -- OF THE WORD "A" DO YOU NOT UNDERSTAND?

 3              MR. MATLOCK:  WELL, IT FORMS A CLOSED LOOP, YOUR

 4   HONOR, BECAUSE WHEN YOU TWIST IT AS IT INTENTIONED IN THE DEVICE

 5   IT DOES FORM A CLOSED LOOP THAT YOU ENCIRCLE AROUND THE

 6   PONYTAIL.

 7              AND TO IMPORT THE LANGUAGE OF ONLY ONE CLOSED LOOP

 8   WOULD BE IMPROPERLY NARROW.

 9              THE COURT:  YOU COULD MAKE THAT SAME CRITICISM ABOUT

10   THE BROWN PATENT. YOU COULD WRAP IT AROUND SEVERAL TIMES AND

11   THEN STICK THE PIN IN OR THE JAWS.

12              MR. MATLOCK:  THAT'S TRUE, YOUR HONOR.

13              THE COURT:  YOU KNOW, THERE'S A RIGHT IN THIS COUNTRY

14   TO PRACTICE THE PRIOR ART.

15              MR. MATLOCK:  AND THAT'S TRUE.  AND THE BROWN PATENT

16   WAS BEFORE THE EXAMINER DURING PROSECUTION.  AND THE EXAMINER

17   SPECIFICALLY DID NOT REJECT CLAIMS 4 AND 5 IN LIGHT OF BROWN.

18   FOR ONE REASON BECAUSE THE POINT OF ATTACHMENT IN BROWN '211 IS

19   IN THE MIDDLE.  WHERE THE ACCUSED DEVICE IS LIKE OUR DEVICE,

20   IT'S ON THE END.  AND THE POINT OF ATTACHMENT BEING IN THE

21   MIDDLE THE BROWN METHOD WOULD NOT READ ON THE METHOD AS OUTLINED

22   IN CLAIM 4.

23              AND THAT'S THE SPECIFIC REASON THE EXAMINER LOOKED AT

24   THE PRIOR ART, BROWN IN PARTICULAR, AND ELECTED NOT TO REJECT

25   THE METHOD CLAIM 4.  BUT DID ELECT TO REJECT CLAIMS 1, 2 AND 3,
```

1    DRAWN TO AN APPARATUS, A VERY DIFFERENT DISCUSSION.

2              AND SINCE THE APPARATUS CLAIMS ARE NOT AT ISSUE IN

3    THIS CASE, HAVING BEEN DISMISSED, WE WOULD ARGUE THE PRESUMPTION

4    THAT THE EXAMINERS VIEWED THE PRIOR ART THAT BROWN DOES NOT

5    ANTICIPATE THE METHOD CLAIM OF CLAIM 4 IS TRUE.

6              BUT ON THE OTHER HAND, JUST BECAUSE THE DEFENDANTS

7    HAVE A LICENSE FROM BROWN DOES NOT MEAN THAT THEY DON'T NEED ONE

8    TO PRACTICE OUR METHOD AS DEFINED IN CLAIM 4.

9              **THE COURT:**  YOUR NUMBER FOUR SAYS:

10                  "A HAIR BINDING METHOD," BLAH, BLAH, BLAH, "USING

11                  A DEVICE COMPRISING" -- AND THEN YOU SAY -- "AN

12                  ELASTIC BAND."

13              SO IT'S A METHOD THAT IS SPECIFIC TO A SPECIFIC

14    DEVICE THAT'S DESCRIBED HERE. SO EVEN IF THE OTHER STEPS ARE THE

15    SAME, ENCIRCLING THE PONYTAIL, TENSION AND SO FORTH, YOU

16    STILL -- YOUR METHOD IS NOT VIOLATED UNLESS A DEVICE MEETING

17    THAT VERY DESCRIPTION IS USED.

18              **MR. MATLOCK:**  YES, SIR, THAT'S CORRECT. AND THERE ARE

19    A NUMBER OF DEVICES THAT COULD MEET THE DESCRIPTION.  IT'S DOWN

20    IN THE PREAMBLE OF CLAIM 4.

21              IT'S POSSIBLE.  AS WE SAY IN OUR SUMMARY OF THE

22    INVENTION ITSELF, WE REFER TO ONE OBJECT.  WE CALL IT:

23                  "AN OBJECT OF THE INVENTION."

24              AND THEN, WE REFER TO ANOTHER OBJECT WHICH WE SAY IS:

25                  "A FURTHER OBJECT."

```
 1                SO OUR PATENT CONTEMPLATES MULTIPLE EMBODIMENTS.  WE

 2   HAVE A NUMBER OF DEVICES.

 3                THE COURT:  SO YOU'RE SAYING YOU TOOK THE BROWN --

 4   LET'S SAY YOU HAD SOMETHING CLEARLY THE BROWN DEVICE.

 5                MR. MATLOCK:  RIGHT.

 6                THE COURT:  RIGHT OUT OF THE PATENT.  AND THAT YOU

 7   THEN USED THE BROWN DEVICE IN THESE STEPS, ENCIRCLING THE

 8   PONYTAIL WITH TENSIONING, DID EXACTLY THESE THREE STEPS.  YOU

 9   WOULD SAY THAT THAT WOULD BE VIOLATING YOUR METHOD; IS THAT WHAT

10   YOU'RE SAYING?

11                MR. MATLOCK:  WHAT I SAID WAS THAT WHEN THIS

12   PATENT --

13                THE COURT:  WELL, ANSWER MY QUESTION.  WOULD IT OR

14   NOT?

15                MR. MATLOCK:  YES.  THE ANSWER IS THAT BECAUSE THE

16   EXAMINER DIDN'T BELIEVE THAT BROWN ANTICIPATED OUR CLAIM, I

17   WOULD SAY THAT BECAUSE IT ATTACHES IN THE MIDDLE THE BROWN

18   METHOD IS SLIGHTLY DIFFERENT THAN OUR METHOD.

19                HOWEVER, UNLIKE THE ACCUSED DEVICE WHICH IS VERY MUCH

20   LIKE OUR METHOD, AND THE BASIS UPON WHICH IT READS ON OUR DEVICE

21   WHICH THE CLAIMS ARE CONSTRUED AND IN ACCORDANCE WITH THE FILE

22   HISTORY, WHICH IS NOT AT ALL RELATED TO THE WORDS "PERMANENTLY,"

23   AND WHEN RELATED TO THE ENTIRE SPECIFICATION OF THE '884 PATENT,

24   AND READ IN CONCERT WITH THE ORDINARY AND UNAMBIGUOUS PLAIN

25   MEANING OF THE TERM OR THE CLAIM ELEMENTS, THE SCOPE OF THAT
```

1    CLAIM, INDEED, DOES ENCOMPASS THE ACCUSED DEVICE.

2              ACCORDING TO THE DEFENDANTS' ARGUMENT, YOUR HONOR,

3    THE DEFENDANTS' METHOD WOULD NEVER WORK BECAUSE IT WOULD NOT

4    BIND THE HAIR AND KEEP THE PONYTAIL IN PLACE AT ALL.

5              AND WE REFER TO A TWISTING AND DOUBLING, YOUR HONOR,

6    AS ONE OF THE STEPS.  THAT TWISTING AND DOUBLING IS THE THING

7    THAT DOES FORM A CLOSED LOOP.  AND IT FORMS TO YOUR POINT MORE

8    THAN ONE CLOSED LOOP.  BUT IT CERTAINLY FORMS A CLOSED LOOP, AND

9    WOULD READ ON FORMING A CLOSED LOOP.

10             BUT THE DEFENDANTS' PROPOSED CONSTRUCTION WOULD BE

11   INCONSISTENT WITH OUR DEVICE AS PRACTICED AND SHOWN IN FIGURE 3

12   AND 4 WHERE WE SHOW THE SIDE VIEW OF THE TWISTING AND DOUBLING.

13             AND, YOUR HONOR, IN GENERAL, IF WE -- WE POINT TO THE

14   CLAIM LANGUAGE.  WE BELIEVE THE CLAIM IS UNAMBIGUOUS.  AND WHEN

15   YOU LOOK AT THE CLAIM TERMS THERE THEY ARE ORDINARY AND PLAIN

16   MEANING OF THE TERMS LEND THEMSELVES TO BEING CONSTRUED

17   ACCORDING TO THEIR ORDINARY MEANING.

18             WHEREAS, IF WE TOOK THE DEFENDANTS' CONSTRUCTION, WE

19   WOULD BE COMPLETELY REWRITING THE CLAIM. WE LOOK AT COMPLETELY

20   REWORKING THE ELASTIC CORD WHOSE TWO ENDS ARE NOT JOINED TO ONE

21   ANOTHER.  SYNTHETIC HAIR FIBERS WHOSE TWO ENDS ARE NOT JOINED TO

22   ONE ANOTHER.

23             THAT'S IMPROPERLY IMPORTING LIMITATIONS FROM THE

24   APPARATUS CLAIM 1, THAT IS NOT EVEN AT ISSUE HERE IN THIS

25   PROCEEDING TODAY.

```
 1              AND FURTHER, THE THIRD ELEMENT IS COMPLETELY
 2   DIFFERENT:
 3                  "WHEREIN ONE OF THE ELASTIC BAND ENDS IS
 4              PERMANENTLY JOINED WITH ONE OF THE SYNTHETIC HAIR" --
 5   AND IT GOES ON.  IT'S COMPLETELY DIFFERENT WORDING FROM THE
 6   CLAIM ITSELF, WHICH IS NOT A PROPER CLAIM CONSTRUCTION.  AND IT
 7   WOULD BE TOTALLY OUTSIDE THE SPIRIT OF THE ORDINARY MEANING OF
 8   THE TERM.
 9              CERTAINLY, THE TERM "TO FORM A SINGLE UNBROKEN RING"
10   ALSO IS NOT SUPPORTED IN THE CLAIM HISTORY AND IN THE
11   SPECIFICATION.
12              I WOULD LIKE TO RESERVE THE REST OF OUR TIME.
13              THE COURT:  ALL RIGHT. OKAY. THANK YOU.
14              YOU HAVE GOT ABOUT FIVE MORE MINUTES. LET'S HEAR --
15              MR. FITZPATRICK:  THANK YOU, YOUR HONOR.  YOUR HONOR,
16   IF YOUR HONOR WOULD TURN --
17              THE COURT:  WHAT DO YOU SAY TO COUNSEL'S POINT THAT
18   CLAIM 4 WAS NEVER -- NEVER REJECTED BY THE EXAMINER AND SO BROWN
19   MUST NOT APPLY?
20              MR. FITZPATRICK:  WELL, IN THAT CASE I WOULD ASK THE
21   COURT TO LOOK AT TWO THINGS.  ONE WOULD BE CLAIM 4 ITSELF AND
22   TRY TO DETERMINE WHAT THE POINT OF NOVELTY THERE WAS.  BECAUSE I
23   WOULD POSIT THE POINT OF NOVELTY OF CLAIM 4 WAS IN USING THE
24   DEVICE IT SPECIFICALLY REFERRED TO.  NOT JUST THERE, BUT ALSO IN
25   CLAIM 1 AND ALSO THROUGHOUT THE SPEC UNIFORMLY.
```

1          THEY ARE NOT DESCRIBING A SEPARATE DEVICE.   THEY ARE

2     DESCRIBING THE SAME DEVICE.

3          **THE COURT:**  WELL, TELL ME THIS:   WHY IS CLAIM 1, 2

4     AND 3 NOT ASSERTED HERE AGAINST YOU?

5          **MR. FITZPATRICK:**  I'M ASSUMING IT'S NOT ASSERTED

6     SPECIFICALLY BECAUSE CLAIM 1, THERE'S NO WAY THAT THEY COULD

7     READ THAT ON OUR DEVICE BECAUSE OF WHAT HAPPENED IN THE CLAIM

8     SPECIFICATION DISAVOWAL, BECAUSE OF WHAT HAPPENED IN THE

9     PROSECUTION HISTORY.

10          BECAUSE, FOR EXAMPLE, YOUR HONOR, THAT'S NOT

11     PERMANENTLY JOINED TO -- IT'S REALLY THE SAME REASONS THAT WE

12     DON'T INFRINGE CLAIM 4 AND CLAIM 5.  THE DEVICE IS THE SAME

13     WHETHER YOU'RE TALKING ABOUT THE APPARATUS OR THE METHOD CLAIMS.

14          THE METHOD IS EMPLOYING THE SAME DEVICE. WITHOUT THAT

15     DEVICE, YOU DON'T HAVE THE METHOD.

16          **THE COURT:**  ARE ALL THE ELEMENTS OF NUMBER ONE

17     EMBEDDED IN NUMBER FOUR?

18          **MR. FITZPATRICK:**  WE WOULD SAY THAT BY IMPLICATION

19     THEY ARE. THAT THE DIFFERENCE IS THIS, YOUR HONOR:   IN CLAIM

20     4 -- AND THIS WOULD GO TO -- GO TO PERMANENTLY.

21          THE DIFFERENCE I THINK IS HERE.  AND THAT IS WHEN THE

22     PATENTEE APPLIED FOR THE PATENT AND THE APPARATUS WAS REJECTED,

23     THE EXAMINER REJECTED, I BELIEVE, CLAIM 1 AND 2.

24          AND I KNOW FOR PURPOSES OF THIS ARGUMENT I KNOW CLAIM

25     1 WAS REJECTED FOR OBVIOUSNESS IN LIGHT OF BROWN AND NAIDOR.

1          NOW, TO GET OVER THAT THEY HAD TO ADD THE WORDS

2   "PERMANENT" TO MAKE IT VERY CLEAR THAT THEY WEREN'T TALKING

3   ABOUT BROWN.

4          THEY WERE PERMANENTLY JOINING THESE ELASTIC BAND ENDS

5   TO THE SYNTHETIC HAIR FIBERS ENDS TO FORM A CLOSED LOOP. AND

6   WHEN YOU LOOK AT CLAIM 4, WHICH SHOULD BE READ -- AND CLAIM 1 IS

7   STILL PART OF THE PATENT.  IT'S STILL PART OF THE SPECIFICATION

8   IN TERMS OF HOW WE READ CLAIM 4.

9          CLAIM 4 SAYS:

10         "USING A DEVICE COMPRISING AN ELASTIC BAND

11         HAVING A PAIR OF ELASTIC BAND ENDS, SYNTHETIC HAIR

12         FIBERS HAVING AN APPEARANCE SIMILAR TO THE PONYTAIL

13         AND HAVING A PAIR OF SYNTHETIC HAIR FIBERS ENDS.  THE

14         SYNTHETIC HAIR FIBER ENDS JOINED TO THE ELASTIC BAND

15         ENDS TO FORM A CLOSED LOOP."

16         THE ONLY THING THAT'S MISSING FROM THERE, YOUR HONOR,

17   IS "PERMANENTLY."

18         AND LET'S TAKE A LOOK AT HOW THE SPECIFICATION DEALS

19   WITH THAT DIFFERENCE. SO I SUBMIT TO YOU THAT IT DOESN'T.

20         THE SPECIFICATION ONLY DISCLOSES ONE EMBODIMENT.  AND

21   EACH TIME, WHETHER IT'S IN SPECIFICATION OR THE PROSECUTION

22   HISTORY, EACH TIME THAT YOU'RE TALKING ABOUT JOINING THOSE

23   SYNTHETIC HAIR FIBER ENDS TO THOSE ELASTIC BAND ENDS THEY ARE

24   TALKING ABOUT JOINING THEM PERMANENTLY.

25         WHAT THE DEFENDANT -- WHAT THE PLAINTIFFS ARE RELYING

1    ON TO SUGGEST THAT THERE'S TWO SEPARATE EMBODIMENTS IS ONE

2    SENTENCE IN THE SPECIFICATION THAT SAYS -- INSTEAD OF SAYING

3    "PERMANENTLY" IT SAYS:

4                    "IT'S JOINED WITH A PAIR OF CONNECTORS."

5            AND THEN, LATER ON IN THE SPECIFICATION IT DESCRIBES

6    EXACTLY HOW TO USE THOSE CONNECTORS.  AND THE WAY -- INSTEAD OF

7    SAYING "PERMANENTLY JOINED," IT SAYS "FUSES," YOUR HONOR.

8            "FUSES" IS USED INTERCHANGEABLY WITH "PERMANENTLY

9    JOINED."

10           SO IT'S EITHER "PERMANENTLY JOINED" OR "FUSED."

11           BUT WHAT WE KNOW IS THAT IT'S NOT FREE AT ONE END

12   THAT CAN BE TEMPORARILY OR SELECTIVELY ATTACHED.  AND BESIDES

13   WHICH THIS ISN'T JOINED TO THE ELASTIC BAND ENDS AT EACH END OF

14   THE SYNTHETIC HAIR FIBER ENDS.

15           BUT IN TERMS OF YOU ASKED HOW I RESPOND TO THAT

16   ARGUMENT, THAT'S OUR RESPONSE. SO IF WE GO THROUGH THE PROPOSED

17   CONSTRUCTION FOR "JOINED" WE SEE THAT OUR PROPOSED CONSTRUCTION

18   QUOTES VERBATIM THE PATENTEE'S OWN WORDS TO THE PATENT OFFICE.

19           NOW, THEY USE THAT AGAIN IN THE NEXT SLIDE.  THE

20   COURT'S ALREADY SEEN THIS IN RESPONSE TO THE OFFICE ACTION AND

21   THE REMARKS DURING PROSECUTION.

22           AND THEN, ANY TIME IN THE SPEC WHERE THEY WERE

23   TALKING ABOUT -- IN HERE WE'RE TALKING ABOUT CLAIM 1 WHERE IT

24   SAYS "PERMANENTLY JOINED."

25           THE NEXT SLIDE WE'RE ALSO TALKING ABOUT CLAIM 1 WHERE

1    IT'S PERMANENTLY JOINED.  THEN WHEN WE LOOK AT THE SPECIFICATION

2    IN COLUMN ONE WE SEE THAT IT'S TO FORM A CLOSED LOOP.  AND THEY

3    ARE JOINED WITH A PAIR OF CONNECTORS.

4              AND COURT HAS GOT TO ASK ITSELF:

5                   "WHAT DO THEY MEAN BY 'A PAIR OF CONNECTORS'?"

6              WELL, THEY SHOW YOU EXACTLY WHAT THEY MEAN, AND THEY

7    SHOW YOU WHAT THOSE CONNECTORS ARE AND WHAT THEY LOOK LIKE.

8    THAT'S 16.

9              THIS ISN'T OUR WRITING.  THAT'S THE PATENTEE'S

10   WRITING.  THAT'S THE PATENT LANGUAGE.  AND IT SAYS:

11                   "THESE CONNECTORS ARE USED TO PERMANENTLY JOIN

12                   EACH ONE OF THE ELASTIC BAND ENDS TO ONE OF THE HAIR

13                   FIBER ENDS."

14             AND THAT'S HOW YOU FORM A CLOSED LOOP. AND THE ONLY

15   TIME THEY DON'T SAY THAT IS WHEN THEY SAY:

16                   "HERE, ONCE INSIDE THE COLLECTOR THE SYNTHETIC

17                   HAIR FIBERS AND ELASTIC BAND ARE FUSED THEREIN."

18             THERE'S ONLY ONE WAY TO DESCRIBE THIS, AND THAT'S

19   "PERMANENTLY JOINED."

20             IF I COULD, YOUR HONOR, JUST MOVE QUICKLY TO THE VERY

21   LAST OF, I THINK, OUR MOST CONSEQUENTIAL CLAIM TERMS.  AND THAT

22   IS "FORM CLOSED LOOP."

23             THE PLAINTIFFS HAVE ASKED YOU TO DEFINE THIS AS TO --

24   INSTEAD OF "TO FORM A CLOSED LOOP," IT WOULD BE:

25                   "TO TAKE ON A CLOSED LOOP SHAPE."

```
 1              SO THEY ARE NOT ONLY ASKING YOU TO CHANGE A NOUN

 2    "CLOSED LOOP" TO AN ADJECTIVE, "CLOSED LOOP SHAPE," THEY ARE

 3    DOING IT IN AN IMPERMISSIBLE WAY TO TRY TO GAIN, TO RECAPTURE

 4    WHAT THEY ALREADY GAVE UP.

 5              OUR PROPOSED CONSTRUCTION WHICH TRACKS THE LANGUAGE

 6    OF THE SPECIFICATION, AT LEAST BY IMPLICATION -- YOU WON'T SEE

 7    THE WORD "SINGLE" OR "UNBROKEN" OR "RING" IN THE PATENT. I

 8    SUBMIT THAT, YOUR HONOR.

 9              BUT IN TERMS OF "SINGLE" LET'S BREAK IT DOWN.  THE

10    METHOD CONTEMPLATES ONE AND ONLY ONE CLOSED LOOP.

11              THE COURT:  WELL, WHY DIDN'T YOU JUST SAY:

12                  "TO FORM ONE UNBROKEN RING," OR A --

13              MR. FITZPATRICK:  WE WANTED TO MAKE SURE A --

14              THE COURT:  HERE WE ARE DOWN TO DEFINING THE WORD

15    "A."

16              MR. FITZPATRICK:  WE WOULD BE HAPPY TO SUBMIT "A,"

17    INSTEAD OF "SINGLE" IF WE DIDN'T THINK THE PLAINTIFFS WERE GOING

18    TO SAY:

19                  "WELL, IF THEY THOUGHT 'A CLOSED LOOP' MEANT

20                  MULTIPLE CLOSED LOOPS," SO WE DIDN'T WANT THAT. THAT

21    WAS MORE OF A REACTION, YOUR HONOR.

22                  IN TERMS OF "UNBROKEN" --

23              THE COURT:  IT'S KIND OF LIKE THIS:  AN AUTOMOBILE --

24    THIS ARGUMENT:  AN AUTOMOBILE HAS A WHEEL. IT ALSO HAPPENS TO

25    HAVE FOUR WHEELS, BUT IT DOES HAVE A WHEEL.
```

 1          **MR. FITZPATRICK:**  THAT'S CORRECT, YOUR HONOR.  BUT IN

 2   THIS PATENT YOU WON'T SEE MORE THAN ONE CLOSED LOOP.  YOU'LL SEE

 3   SECONDARY LOOPS.  THE PATENTEE KNEW WHAT IT WAS SAYING.

 4          EVERY SO OFTEN IT WILL SAY:

 5              "AND THEN, YOU CAN FORM A SECONDARY LOOP."

 6          BUT IT MAKES IT VERY CLEAR THAT'S NOT ANOTHER CLOSED

 7   LOOP.  THERE'S ONE SINGLE CLOSED LOOP HERE.  BUT WE WOULD BE

 8   HAPPY IF THE COURT SAID THERE WAS ONE UNBROKEN RING.  I THINK

 9   THAT GETS THE SAME JOB DONE.

10          **THE COURT:**  ALL RIGHT. OKAY. TIME IS UP. I GOT TO

11   GIVE MR. MATLOCK A FEW MOMENTS RESPOND.

12          **MR. MATLOCK:**  THANK YOU.  I'LL START OUT BY NOTING,

13   YOUR HONOR, THAT THE DEFENDANT WOULD LIKE A SECONDARY LOOP TO

14   NOW BE SOMETHING DEFINED DIFFERENTLY FROM "A CLOSED LOOP."

15          I SUPPOSE THAT A SECONDARY LOOP WOULD NOT BE A CLOSED

16   LOOP IN THE DEFENDANTS' WORLD.

17          THE DEFENDANTS, YOUR HONOR -- THIS IS A CASE ABOUT

18   CLEVER INNOVATORS AT A FORTUNE 500 COMPANY WITH A HOPEFULLY

19   NARROW VIEW OF THE PLAINTIFF'S PATENTED METHODS.

20          THE DEFENDANTS WANT TO REWRITE THE '884 CLAIMS 4 AND

21   5 TO A METHOD TO COMPORT TO ITS DESIRE TO AVOID PAYING ROYALTY

22   TO MS. MINNELLI BY PRODUCING A KNOCKOFF PRODUCT THAT CAREFULLY

23   ATTEMPTS TO AVOID DEFENDANTS' CAREFULLY CRAFTED REWRITTEN NARROW

24   CLAIM.

25          BUT DEFENDANTS' SUPPORTIVE ARGUMENTS HAVE NO MERIT,

1    AND THEY ARE NOT SUPPORTED BY THE INTRINSIC RECORD.

2           THEY ERRONEOUSLY ARGUE THAT THERE'S ONLY ONE

3    EMBODIMENT WHERE THE CLAIMS, THE SPECIFICATION, THE PROSECUTION

4    HISTORY AND PRACTICE OF THE METHOD DEMONSTRATES MORE THAN ONE

5    EMBODIMENT.

6           AS I POINTED OUT, YOUR HONOR, IN THE SUM OF THE

7    INVENTION WE REFER TO AN OBJECT," AND THEN IN A SEPARATE

8    PARAGRAPH WE REFER TO "A FURTHER OBJECT."

9           THAT WOULD CLEARLY SUGGEST THAT THERE'S MULTIPLE

10   EMBODIMENTS AT PLAY HERE IN THE '884 PATENT.

11          FURTHER, WE TALK ABOUT A SYSTEM, A SYSTEM THAT'S

12   DIRECTED TO AN APPARATUS AND TO METHODS. AND A METHOD CAN BE

13   PRACTICED BY MULTIPLE DEVICES, AS WE DISCUSSED EARLIER.

14          SECONDLY, DEFENDANTS WOULD LIKE US TO TAKE TWO

15   DIFFERENT TERMS, THE TERM "PERMANENTLY JOINED" FOUND IN CLAIMS

16   THAT ARE NOT EVEN AT ISSUE HERE TODAY, APPARATUS CLAIMS 1, 2 AND

17   3.  AND THEY WOULD LIKE TO SOMEHOW TRANSPORT THAT "PERMANENTLY

18   JOINED" TERM INTO ANOTHER TERM IN CLAIM 4, THE TERM "JOINED."

19          AND IN THE DEFENDANTS' WORLD "PERMANENTLY JOINED" NOW

20   EQUALS "JOINED."

21          BUT IT WOULD BE A DIFFICULT WORLD TO LIVE IN WHERE

22   TWO SETS OF WORDS THAT HAVE DIFFERENT WORDS SUPPOSEDLY MEAN THE

23   SAME THING. THERE'S AN INTENDED DIFFERENCE IN SCOPE, WHICH IS

24   EXACTLY THE REASON WHY THE EXAMINER WHEN LOOKING AT THE METHOD

25   CLAIM 4 AND LOOKING AT BROWN CHOSE NOT ISSUE A REJECTION. BUT HE

1   RATHER INSTEAD MADE A REJECTION IN CLAIMS 1 THROUGH 3 AND

2   ALLOWED CLAIMS 4 AND 5.

3            I READ DIRECTLY FROM THE FILE HISTORY WHERE IT SAYS:

4                 "CLAIMS 4 THROUGH 5 ARE ALLOWED IN LIGHT OF THE

5                 PRIOR ART."

6            BUT EVEN THOUGH THE ACCUSED DEVICE HAS A LICENSE FROM

7   BROWN, THE PRIOR ART, THAT DOES NOT SAVE THEM FROM READING ON

8   CLAIM 4 OF THE PLAINTIFF'S PATENTED METHOD.

9            AN ELEMENT IN THE BROWN '211 PATENT NARROWS CLAIM 4

10   IS THEIR ARGUMENT.  BUT THERE'S NO CLEAR AND DELIBERATE

11   DISAVOWAL OF THAT ELEMENT IN THE SPECIFICATION CLAIM OR

12   PROSECUTION HISTORY AS DEFENDANTS WOULD LIKE YOU TO BELIEVE.

13            EVERYTHING THEY ARE QUOTING FROM IS FOUND IN CLAIM 1,

14   YOUR HONOR, WHICH IS NOT AT ISSUE IN THIS CASE.

15            AND, IN FACT, THE TONYTAIL --

16            **THE COURT:**  WELL, IN ADDITION TO SAYING "A CLOSED

17   LOOP," STEP -- ONE OF THE STEPS IN THE METHOD PART REFERS TO:

18                 "BY INSERTING THE PONYTAIL IN THROUGH THE CLOSED

19                 LOOP."

20            **MR. MATLOCK:**  YES, SIR.

21            **THE COURT:**  THE WORD "THE," DOESN'T THAT REINFORCE

22   THE IDEA WE'RE ONLY TALKING ABOUT ONE LOOP?

23            **MR. MATLOCK:**  WELL, WITH RESPECT TO THAT PARTICULAR

24   LOOP THAT THE PONYTAIL IS INSERTED INTO, MEANING THAT'S THE LOOP

25   UPON WHICH THE PONYTAIL IS BEING INSERTED INTO. IT CAN ONLY BE

1    INSERTED INTO ONE LOOP AT A TIME. PRESUMABLY YOU COULD -- YOU

2    COULD INSERT IT THROUGH TWO LOOPS, BUT YOU WOULD DO IT THROUGH

3    ONE, AND THEN THROUGH THE OTHER.

4            THE SUMMARY OF THE INVENTION CLEARLY SAYS THAT THERE

5    IS AN OBJECT, AND THEN A FURTHER OBJECT.  THERE IS AMPLE SUPPORT

6    THROUGHOUT THE '884 SPECIFICATION FOR MULTIPLE EMBODIMENTS AS WE

7    DESCRIBED IN TWO SEPARATE OBJECTS OF THE INVENTION AND BY USING

8    THE WORD "JOINED" IN THE SUMMARY OF THE INVENTION.

9            NOWHERE WITHIN THE SUMMARY OF THE INVENTION IS FOUND

10   THE WORD "PERMANENTLY JOINED." ALTHOUGH, IN THE DISCUSSION OF

11   ONE EMBODIMENT, THE PREFERRED EMBODIMENT FOUND IN THE DETAILED

12   DESCRIPTION OF THE '884 PATENT, IT DOES REFER TO "PERMANENTLY"

13   WITH RESPECT TO HOW THINGS MIGHT BE JOINED.  CERTAINLY, IN ONE

14   EMBODIMENT IT COULD BE PERMANENTLY JOINED.

15           BUT THERE'S NO SUPPORT FOR NARROWING THE ENTIRE

16   DISCLOSURE NOR NARROWING CLAIM 4 IN THAT MANNER.

17           **THE COURT:**  THANK YOU.

18           **MR. MATLOCK:**  THANK YOU.

19           **THE COURT:**  ALL RIGHT.  UNDER SUBMISSION.  I VERY

20   MUCH FOUND THIS INTERESTING, AND I WANT TO THANK THE INVENTOR

21   FOR COMING TODAY AND GIVING A DEMONSTRATION.

22           **MS. MINNELLI:**  YOU'RE WELCOME.

23           **THE COURT:**  ALL RIGHT.  I'LL GET AN ORDER OUT IN DUE

24   COURSE.

25           **MR. FITZPATRICK:**  THANK YOU, YOUR HONOR.

1        **THE COURT:**  YOU WANT ME TO KEEP THESE OR --

2        **MR. FITZPATRICK:**  THOSE ARE FOR THE COURT.

3        **THE COURT:**  ALL RIGHT.  IS THAT OKAY WITH YOU?

4        **MR. MATLOCK:**  YES, YOUR HONOR.

5        **THE COURT:**  GOOD. ALL RIGHT. UNDER SUBMISSION.

6        **MR. FITZPATRICK:**  THANK YOU, YOUR HONOR.

7        (THEREUPON, THIS HEARING WAS CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25